**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| GRANTING HANDS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| RAD EXOTICS LLC, JUSTIN SPENCER, | § | |
| and DAVID SIGLER, | § | |
| | § | |
| Defendants. | § | |

---

## APPENDIX TO DEFENDANT JUSTIN SPENCER'S NOTICE OF REMOVAL

---

1.   State Court Docket Sheet .................................................................................. App. 1-7

2.   Verified Original Petition.............................................................................. App. 8-107

3.   Proposed Order for Expedited Discovery and Setting
     Temporary Injunction Hearing.................................................................. App. 108-109

4.   Request for Service on RAD Exotics, Justin Spencer & David Sigler .. App. 110-112

5.   Request for Service Justin Spencer ........................................................... App 113-114

6.   Request for Service RAD Exotics & David Sigler.................................. App. 115-116

7.   Citation to David Sigler............................................................................ App. 117-118

8.   Citation to RAD Exotics ........................................................................... App. 119-120

9.   Citation to Justin Spencer (Veterans Square).......................................... App. 121-122

10.  Citation to Justin Spencer (Chapin Terrace)............................................ App. 123-124

11.  Notice of Zoom Hearing ........................................................................... App. 125-127

---

12.     Citation to RAD Exotics (Texas Sec. of State) .......................................... App. 128-129

13.     Citation to Justin Spencer (Texas Sec. of State)...................................... App. 130-131

14.     Citation to David Sigler (Texas Sec. of State).......................................... App. 132-133

15.     Notice of Initial Dismissal Hearing .......................................................... App. 134-135

DATE: October 30, 2023                    Respectfully submitted,

                                          */s/ Christopher J. Schwegmann*
                                          Christopher J. Schwegmann
                                          Texas Bar No. 24051315
                                          cschwegmann@lynnllp.com
                                          Leo Park
                                          Texas Bar No. 24122983
                                          lpark@lynnllp.com
                                          **LYNN PINKER HURST & SCHWEGMANN, LLP**
                                          2100 Ross Avenue, Suite 2700
                                          Dallas, Texas 75201
                                          (214) 981-3800 – Telephone
                                          (214) 981-3829 – Facsimile

                                          **ATTORNEYS FOR DEFENDANT
                                          JUSTIN SPENCER**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served via ECF on counsel of record on October 30, 2023.

                                          */s/ Christopher J. Schwegmann*
                                          Christopher J. Schwegmann

## Case Information

DC-23-17220 | GRANTING HANDS LLC, et al vs. RAD EXOTICS LLC, et al

| Case Number | Court | Judicial Officer |
|---|---|---|
| DC-23-17220 | 193rd District Court | WHITMORE, BRIDGETT |
| File Date | Case Type | Case Status |
| 10/06/2023 | CNTR CNSMR COM DEBT | OPEN |

## Party

PLAINTIFF
GRANTING HANDS LLC

Active Attorneys ▾
Lead Attorney
CANADA, W. RALPH
Retained

Attorney
LEE, DONNA
Retained

PLAINTIFF
Granting Hands LLC

Active Attorneys ▾
Attorney
CANADA, W. RALPH
Retained

PLAINTIFF
Granting Hands LLC

Active Attorneys ▾
Attorney
CANADA, W. RALPH
Retained

**App. 001**

DEFENDANT
RAD EXOTICS LLC

DEFENDANT
SPENCER, JUSTIN

DEFENDANT
SIGLER, DAVID

DEFENDANT
RAD Exotics LLC

DEFENDANT
RAD Exotics LLC

## Events and Hearings

10/06/2023 NEW CASE FILED (OCA) - CIVIL

10/06/2023 ORIGINAL PETITION ▾

ORIGINAL PETITION

10/10/2023 MISCELLANOUS EVENT ▾

Comment
LOCAL RULE 2.02 CERT

10/10/2023 NON-SIGNED PROPOSED ORDER/JUDGMENT ▾

**App. 002**

HEARING

> Comment
> PROPOSED ORDER FOR EXPEDITED DISCOVERY AND SETTING TEMPORARY INJUNCTION
> HEARING

---

10/19/2023 REQUEST FOR SERVICE ▾

REQUEST FOR SERVICE

> Comment
> REQ SOS - RAD EXOTICS LLC, JUSTIN SPENCER, and DAVID SIGLER

---

10/19/2023 REQUEST FOR SERVICE ▾

REQUEST FOR SERVICE

> Comment
> REQ CIT - JUSTIN SPENCER

---

10/20/2023 REQUEST FOR SERVICE ▾

REQUEST FOR SERVICE

> Comment
> REQ CIT - RAD EXOTICS LLC and DAVID SIGLER

---

10/20/2023 ISSUE CITATION ▾

ISSUE CITATION - 4. DAVID SIGLER

ISSUE CITATION - 3. RAD EXOTICS LLC

ISSUE CITATION - 2. JUSTIN SPENCER ( 12 VETERANS SQUARE)

ISSUE CITATION - 1. JUSTIN SPENCER (78 CHAPIN TERRACE)

---

10/24/2023 NOTICE OF HEARING / FIAT ▾

NOTICE OF HEARING RE: PLAINTIFF MTN EXPEDITED DISCVY

> Comment
> RE: PLAINTIFF MTN EXPEDITED DISCVY

---

10/28/2023 ISSUE CITATION COMM OF INS OR SOS ▾

ISSUE CITATION SOS - - 5. RAD EXOTICS LLC (SOS)

ISSUE CITATION SOS - 6. JUSTIN SPENCER (SOS)

ISSUE CITATION SOS - 7. DAVID SIGLER (SOS)

---

10/28/2023 CITATION▾

Unserved

**App. 003**

ESERVE

Anticipated Method
Comment
JUSTIN SPENCER (78 CHAPIN TERRACE)

---

10/28/2023 CITATION ▾

Unserved

Anticipated Server
ESERVE

Anticipated Method
Comment
JUSTIN SPENCER (12 VETERANS SQUARE)

---

10/28/2023 CITATION ▾

Unserved

Anticipated Server
ESERVE

Anticipated Method
Comment
RAD EXOTICS LLC

---

10/28/2023 CITATION ▾

Unserved

Anticipated Server
ESERVE

Anticipated Method
Comment
DAVID SIGLER

---

10/28/2023 CITATION SOS/COI/COH/HAG ▾

Unserved

Anticipated Server
ESERVE

Anticipated Method
Comment
RAD EXOTICS LLC

---

10/28/2023 CITATION SOS/COI/COH/HAG ▾

Unserved

Anticipated Server
ESERVE

**App. 004**

Case 3:23-cv-02408-L    Document 2    Filed 10/30/23     Page 8 of 138    PageID 18

Anticipated Method
Comment
JUSTIN SPENCER

---

10/28/2023 CITATION SOS/COI/COH/HAG ▾

Unserved

Anticipated Server
ESERVE

Anticipated Method
Comment
DAVID SIGLER

---

11/01/2023 MOTION HEARING ▾

ORIGINAL PETITION

NOTICE OF HEARING RE: PLAINTIFF MTN EXPEDITED DISCVY

Judicial Officer
WHITMORE, BRIDGETT

Hearing Time
10:00 AM

Comment
(VIA ZOOM) 15M MTN EXPEDITED DISCVY JANET NAILEY 214-572-1718

---

11/29/2023 DISMISSAL FOR WANT OF PROSECUTION ▾

193rd Initial DWOP Notice

Judicial Officer
WHITMORE, BRIDGETT

Hearing Time
1:30 PM

---

## Financial

GRANTING HANDS LLC

| | |
|---|---|
| Total Financial Assessment | $418.00 |
| Total Payments and Credits | $418.00 |

**App. 005**

| Date | Description | Receipt | Party | Amount |
|------|-------------|---------|-------|--------|
| 10/9/2023 | Transaction Assessment | | | $350.00 |
| 10/9/2023 | CREDIT CARD - TEXFILE (DC) | Receipt # 68992-2023-DCLK | GRANTING HANDS LLC | ($213.00) |
| 10/9/2023 | STATE CREDIT | | | ($137.00) |
| 10/27/2023 | Transaction Assessment | | | $36.00 |
| 10/27/2023 | CREDIT CARD - TEXFILE (DC) | Receipt # 72814-2023-DCLK | GRANTING HANDS LLC | ($36.00) |
| 10/27/2023 | Transaction Assessment | | | $16.00 |
| 10/27/2023 | CREDIT CARD - TEXFILE (DC) | Receipt # 72826-2023-DCLK | GRANTING HANDS LLC | ($16.00) |
| 10/27/2023 | Transaction Assessment | | | $16.00 |
| 10/27/2023 | CREDIT CARD - TEXFILE (DC) | Receipt # 72860-2023-DCLK | GRANTING HANDS LLC | ($16.00) |

## Documents

ORIGINAL PETITION

PROPOSED ORDER FOR EXPEDITED DISCOVERY AND SETTING TEMPORARY INJUNCTION HEARING

193rd Initial DWOP Notice

NOTICE OF HEARING RE: PLAINTIFF MTN EXPEDITED DISCVY

REQUEST FOR SERVICE

REQUEST FOR SERVICE

REQUEST FOR SERVICE

ISSUE CITATION - 4. DAVID SIGLER

ISSUE CITATION - 3. RAD EXOTICS LLC

ISSUE CITATION - 2. JUSTIN SPENCER ( 12 VETERANS SQUARE)

ISSUE CITATION - 1. JUSTIN SPENCER (78 CHAPIN TERRACE)

ISSUE CITATION SOS - - 5. RAD EXOTICS LLC (SOS)

ISSUE CITATION SOS - 6. JUSTIN SPENCER (SOS)

ISSUE CITATION SOS - 7. DAVID SIGLER (SOS)

**App. 006**

FILED
10/6/2023 3:40 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Christi Underwood DEPUTY

DC-23-17220

CAUSE NO. _____

| | | |
|---|---|---|
| **GRANTING HANDS LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **RAD EXOTICS LLC, JUSTIN** | § | 193rd |
| **SPENCER, and DAVID SIGLER,** | § | |
| | § | |
| *Defendants.* | § | **_____ JUDICIAL DISTRICT** |

**VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION,
AND MOTION FOR EXPEDITED DISCOVERY**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Granting Hands LLC ("Granting Hands"), by and through its undersigned attorneys, files this Verified Original Petition, Application for Temporary Injunction, and Motion for Expedited Discovery against Defendant RAD Exotics LLC ("RAD Exotics"), Justin Spencer (Spencer") and David Sigler ("Sigler") (herein sometimes collectively referred to as "Defendants"), and states as follows:

**I.**

**NATURE OF THE ACTION**

Granting Hands and RAD Exotics entered into and executed a March 19, 2021 Promissory Note pursuant to which Granting Hands agreed to loan $3 million to RAD Exotics; this Note was subsequently amended to increase the amount to $4 million. The purpose of the loan was to finance high-end automobiles to be sold (and serviced) by RAD Exotics at a facility in Southborough, Massachusetts.   RAD Exotics, Spencer, and Sigler each agreed that the loan would be collateralized *inter alia* by the automobiles in inventory and, as those cars were sold, the proceeds thereof would be re-paid to Granting Hands. Granting Hands provided the promised funding, but

RAD Exotics, Spencer and Sigler have failed to make required payments, provide required financial reports, and protect Granting Hands' collateral interest in the automobiles and their proceeds.  The Southborough facility has now been closed, the automobiles disposed of without repayment of the proceeds to Granting Hands, and the loan is due in its entirety. Despite demand, these defaults and the conversion of the Collateral and the proceeds have not been remedied.

## II.

## DISCOVERY CONTROL LEVEL

Plaintiff requests that discovery be conducted in accordance with a scheduling order pursuant to Discovery Control Level 3, as provided by Rule 190.4 of the Texas Rules of Civil Procedure.

## III.

## RULE 47 STATEMENT

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000.

## IV.

## PARTIES

1.      Granting Hands is a Texas limited partnership, with its principal place of business located at 14801 Quorum Drive #300, Dallas, Texas 75254.

2.      RAD Exotics is a Nevada limited liability company. Its registered agent is AT, Inc., Attn: Michael Chivell, 3770 Howard Hughes Pkwy, Ste 200, Las Vegas, NV 89169, to which service may be forwarded as required by statute.

3.      Spencer is an individual resident of New Hampshire and resides at 78 Chapin Terrace, Laconia, NH 03246-2306, to which service may be forwarded as required by statute.

4.      Sigler is an individual resident of Massachusetts and resides at 17 Clifford Rd, Southborough, MA 01772-1501, to which service may be forwarded as required by statute. Spencer and Sigler are sometimes collectively referred to herein as the "Individual Defendants."

## V.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over the Defendants and all causes of action asserted herein, as the damages to Plaintiff are within the jurisdictional limits of this Court.  The Court also has personal jurisdiction over each of the Defendants because they each conduct business in Texas and have minimum contacts with Texas, and the claims asserted herein arise out of their conduct in Texas and damages suffered in Texas.  In addition, the Note (as hereafter defined) provides at paragraph 10 that each of the Defendants hereto "irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas … located within Dallas (Dallas County) Texas."

6.      Although RAD Exotics does not maintain a regular place of business in Texas or have a registered agent for service of process, it may be served with citation through the Secretary of State of Texas as its agent for service of process since it engages in business in Texas, and this suit arose from its business in Texas. *See* Tex. Civ. Prac. Rem. Code § 17.044 *et. seq.* RAD Exotics is continuously and systematically engaged in business and/or was continuously and systematically engaged in business in Texas, committed tortious acts in Texas, and entered into contracts with Texas residents.

7.      Although Spencer does not maintain a regular place of business in Texas or have a registered agent for service of process, he may be served with citation through the Secretary of State of Texas as his agent for service of process since he engages in business in Texas, and this suit arose from his business in Texas. *See* Tex. Civ. Prac. Rem. Code § 17.044 *et. seq.*  Spencer is

continuously and systematically engaged in business and/or was continuously and systematically engaged in business in Texas, committed tortious acts in Texas, and entered into contracts with Texas residents.

8.     Although Sigler does not maintain a regular place of business in Texas or have a registered agent for service of process, he may be served with citation through the Secretary of State of Texas as his agent for service of process since he engages in business in Texas, and this suit arose from his business in Texas. *See* Tex. Civ. Prac. Rem. Code § 17.044 *et. seq.*  Spencer is continuously and systematically engaged in business and/or was continuously and systematically engaged in business in Texas, committed tortious acts in Texas, and entered into contracts with Texas residents.

9.     Venue is proper in Dallas County, Texas pursuant to Texas Civil Practices and Remedies Code § 15.002 *et. seq.* because it is the county in which all or a substantial part of the events giving rise to the claims asserted herein occurred, including that it is the place of payment under the Promissory Note that is the subject of this suit.  In addition, the Note (as hereafter defined) provides at paragraph 10 that each of the Defendants hereto "irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas … located within Dallas (Dallas County) Texas."  Finally, certain others of the Loan Documents (as defined herein) including but not limited to the Pledge Agreements, also provide that performance is to be in Dallas County, Texas.

## VI.

## FACTUAL ALLEGATIONS

10.     On or about March 21, 2021, for valuable consideration, RAD Exotics executed and delivered to Granting Hands a promissory note in the original principal amount of Three

Million Dollars ($3,000,000.00).  A true and correct copy of the promissory note is attached hereto as Exhibit 1 and is incorporated herein by reference for all purposes.  On or about December 31, 2021, the parties entered into a First Amendment to Promissory Note, which increased the amount of the indebtedness to Four Million Dollars ($4,000,000.00) but otherwise did not change any of the terms of the March 21, 2021, promissory note.  The promissory note, as amended (hereinafter, the "Note") was one of several documents executed contemporaneously to document the indebtedness and its terms; these included:

a.   a Loan and Security Agreement between RAD Exotics and Granting Hands dated effective February 2021 and amended by the First Amendment to Loan and Security Agreement dated effective March 19, 2021 (the "Loan Agreement");

b.   a Closing Certificate executed by RAD Exotics (the "Closing Certificate");

c.   an Irrevocable Power of Attorney executed by RAD Exotics (the "Irrevocable Power of Attorney");

d.   that certain Pledge Agreement between David Sigler as Grantor and Granting Hands (the "Pledge Agreement - Sigler"); and

e.   that certain Pledge Agreement between Justin Spencer as Grantor and Granting Hands (the "Pledge Agreement - Spencer").

11.   All these documents, together with the Note, are sometimes referred to herein as the "Loan Documents."  A true and correct copy of each of the Loan Documents and the amended note is attached hereto, as Exhibits 2-8 respectively, and is incorporated herein by reference for all purposes.

12.     The funds under the Loan Documents were advanced to RAD Exotics to "finance floor plan inventory in the ordinary course of business."  In the case of RAD Exotics, the inventory was high-priced exotic cars to be sold and serviced at a dealership located in Southborough, Massachusetts.  Under the Loan Agreement, Granting Hands was given a security interest in all the exotic cars and the proceeds therefrom (collectively the "Collateral") to secure the payments due under the Note and the Loan Documents; as the Collateral was sold off, payments of the amounts received were to be sent to Granting Hands.  To perfect the security interest in the Collateral, RAD Exotics delivered to Granting Hands an Irrevocable Power of Attorney authorizing it to enforce its security interests directly against the Collateral.

13.     In connection with the execution and delivery of the Note and as an inducement to Granting Hands to make the loan evidenced by the Note and to enter other transactions with Defendants, and to secure payment and performance in full of its obligations to Granting Hands under the Note, Sigler and Spencer each, in their respective Pledge Agreement, granted to Granting Hands a continuing security interest in all of their outstanding equity interests in RAD Exotics, together with all proceeds therefrom.  As a result, Granting Hands has a valid and subsisting security interest in all the outstanding equity of RAD Exotics (the "Equity Interest Collateral").

14.     The entire principal amount of the Note was payable on March 21, 2023, unless earlier accelerated pursuant to the Loan Documents.  However, pursuant to the Loan Documents, payments of principal were due were also due as Collateral was disposed of.  Those principal payments, along with accrued interest, were due and payable weekly, at the rates set forth in the Note.  The Note provides for all payments to be made to Granting Hands at 14801 Quorum Drive #300, Dallas, Texas 75254.  The amount due under the Note was not paid on March 21, 2023, as required, and in addition, recent communications have revealed that amounts advanced under the

VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY
INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY

Note were apparently used by Defendants for purposes other than "financ[ing] floor plan inventory," such as a number of large payments made to the individual Defendant David Sigler.

15.     On or about February 27, 2023, Granting Hands, through its attorneys, sent notice of default under the Loan Documents to the Defendants, claiming that:

      a.     Granting Hands had repeatedly requested monthly financial statements, which RAD Exotics had failed to provide in violation of the Loan Documents; and

      b.     RAD Exotics had disposed of Collateral without paying the proceeds to Granting Hands as required.

Demand was made that these defaults be cured within fifteen days, *i.e.*, by March 14, 2023.  To date, none of the Defendants have done so.

16.     On August 3, 2023, Defendant Spencer admitted to taking out at least one additional credit line, which was in clear violation of the Loan documents.

17.     Following this, on or about September 26, 2023, Granting Hands, through its attorneys, sent an amended notice of default under the Loan Documents to the Defendants, giving notice of the following defaults:

      a.     Failure to cure the defaults stated in the February 27, 2023 notice of default;

      b.     The continuing failure to furnish monthly financial statements, in violation of the Loan Documents;

      c.     The disposition of Collateral without paying the proceeds to Granting Hands, as required; and

      d.     Failure to pay the balance of the Note, when due in full, on March 1, 2023.

18.    As a result, Defendants were put on notice that Granting Hands intended to proceed against Defendants by instituting litigation, attempting to collect on the Collateral, and any other lawful means by which they might collect the amounts due under the Note.

19.    As of the date of filing this Petition, Defendants have failed to respond in any way to the February 27, 2023 notice of default or the September 26, 2023 amended notice of default. The Southborough facility has been closed, Granting Hands is not aware of the current location of the Collateral, and no funds have been received in satisfaction of the amounts owed.

### CONDITIONS PRECEDENT

20.    All conditions precedent to the right of Plaintiff to recover herein have been performed, have occurred, or have been waived.

### VII.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### (Breach of Contracts and Foreclosure)

21.    Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

22.    Plaintiff is the lawful owner and holder of the Note.  Although demand for payment of the note was made on or about February 27, 2023, and again on September 26, 2023, RAD Exotics has failed and refused and continues to fail and refuse to pay the amount due thereunder. In addition, pursuant to the express terms of the Note, the entire principal balance and accrued interest was due on or before March 1, 2023, and has not been paid.  After allowing for all payments and credits, there remains due and owing on September 26, 2023, unpaid balance of principal and accrued interest, attorney's fees and expenses outstanding under the Note in the

amount of One Million Three Hundred Ninety-Two Thousand and Three Hundred Dollars ($1,392,300.00), which Plaintiff is therefore entitled to recover from RAD Exotics, together with any and all delinquency and other charges provided for in the Loan Documents.

23.     RAD Exotics' failure to pay the amounts due under the Note constitutes an event of default under the Loan Documents.  Plaintiff is therefore entitled to have its security interest determined to be valid and subsisting and to have the liens created thereby foreclosed by sale of the Collateral according to law.

24.     In addition, Defendants have disregarded their obligations under the Loan Documents by disposing of collateral in violation of its terms and failing to deliver the proceeds to Plaintiff.  Defendants agreed to receive any proceeds from the sale of Collateral on behalf of Plaintiff and to deliver such proceeds to Plaintiff, but they have failed and refused to do so.  In addition, Defendants have apparently used the loan proceeds for purposes other than financing inventory.  Plaintiff has suffered damages as a result of these breaches.

## SECOND CAUSE OF ACTION

### (Conversion)

25.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

26.     Pursuant to the Loan Documents, RAD Exotics was in possession of or had the right to possession or the benefit of the Collateral.  Defendants unlawfully and without authority assumed dominion and control over such property and/or its proceeds, including the assets and business operations of RAD Exotics located in Massachusetts, to the exclusion of or inconsistent with the rights of Plaintiff.  In particular, Granting Hands was entitled to be paid any proceeds from disposition of the Collateral and, as such, these proceeds are identifiable collateral capable

of conversion and Granting Hands' security interests continued in and attached to the proceeds from the disposition of the Collateral and the proceeds.  By virtue of such taking by Defendants and the continued possession of such property by them, Plaintiff is entitled to recover judgment against Defendants ordering them to return such property to Plaintiff.  In the alternative, Plaintiff is entitled to recover from Defendants, jointly and severally, actual damages, pre-judgment and post-judgment interest and reasonable attorney's fees.

### THIRD CAUSE OF ACTION

### (Fraudulent Conveyance)

27.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

28.     At times and to persons unknown, RAD Exotics, directly and/or through its subsidiaries, sold, transferred or otherwise conveyed all or substantially all of its assets to the Individual Defendants or other persons unknown.  These transfers were made with actual intent to hinder, delay, or defraud creditors, including Plaintiff, and therefore constitute fraudulent transfers under Tex. Bus. & Com. Code §§ 24.005 and 24.006.  Plaintiff is therefore entitled to the following relief provided by Tex. Bus. & Com. Code § 24.008:

a.     avoidance of the transfers to the extent necessary to satisfy Plaintiff's claim;

b.     attachment against all assets transferred or other property of the transferees;

c.     an injunction against further disposition by the debtor or a transferee, or both, of the assets transferred or of other property;

d.     appointment of a receiver to take charge of the assets transferred or of other property of the transferees; and/or

e.     any other relief the circumstances may require.

29.     Plaintiff is also entitled to recover all costs and reasonable and necessary attorney's fees incurred in this proceeding pursuant to Tex. Bus. & Com. Code § 24.013.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment)

30.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

31.     There is a controversy regarding the security interest and rights in the Collateral that have been granted to Plaintiff under the terms of the Loan Documents and, accordingly, Plaintiff hereby seeks a declaratory judgment pursuant to the provisions of Tex. Civ. Prac. & Rem. Code §§ 37.001, *et seq*, that Plaintiff has a valid, binding, subsisting and enforceable security interest in and to all of the Collateral and the proceeds thereof, that Plaintiff enjoys all of the rights and privileges that the security agreement purports to grant and that Plaintiff is entitled to possession of the Collateral and/or its proceeds.

32.     Plaintiff is entitled to recover all costs and reasonable and necessary attorney's fees incurred in this proceeding pursuant to Tex. Civ. Prac. & Rem. Code § 37.009.

## FIFTH CAUSE OF ACTION

### (Fraud and Disgorgement)

33.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

34.     Based on the conduct outlined above, the Defendants committed fraud.  The elements of common law fraud are the following: 1) defendant made a representation to the plaintiff or omitted to state a material fact; 2) that representation or omission was material; 3) that representation was false; 4) when defendant made the representation, the defendant either knew

the representation was false or made the representation recklessly, as a positive assertion, and without knowledge of its truth; 5) defendant made the representation with the intent the plaintiff act on it; 6) plaintiff relied on the representation; and 7) the representation caused the plaintiff injury. The Defendants' actions met all these elements, in *inter alia* (i) promising to repay the Note as Collateral was sold but then deliberately not doing so, (ii) diverting the loan proceeds to their personal accounts, and (iii) attempting to conceal their activities by failing to furnish accounting records pursuant to the Loan Documents.

35. In addition to actual damages, this Court should prevent the Defendants from retaining the benefits of their fraud by ordering Defendants to disgorge those amounts unlawfully taken along with any profits earned on those sums.

### SIXTH CAUSE OF ACTION

### (Concerted Action to Commit Conversion and Conspiracy to Defraud)

36. Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

37. Defendants jointly participated in concerted action to commit the tort of conversion of property, assets and business operations. Furthermore, Defendants entered an agreement among themselves to divert loan proceeds to purposes other than "financ[ing] floor plan inventory" and for the unlawful purpose of converting the Collateral and/or the proceeds of such property, including the assets and business operations of RAD Exotics. Such conduct constitutes concerted action and/or a conspiracy to defraud which proximately caused the injuries made the basis of this suit. Plaintiff is therefore entitled to recover the actual and consequential damages sustained from Defendants, jointly and severally.

## SEVENTH CAUSE OF ACTION

### (Exemplary Damages)

38.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

39.     The above-described conduct of each of the Defendants was intentional, willful and wonton.  Such conduct was committed by each of the Defendants with malice, with evil intent to harm Plaintiff and with gross indifference to Plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages from Defendants, and each of them.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment, Constructive Trust, and Disgorgement)

40.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

41.     As a result of the conduct of Defendants described above, said Defendants have been unjustly enriched.  Defendants have received the Collateral and the Equity Interest Collateral, and/or the proceeds of such collateral, including the assets and business operations of RAD Exotics, which in equity and good conscience ought to be available to Plaintiff to repay the amounts due under the Note.  It would be unconscionable for Defendants to retain such property unlawfully taken by them.  Accordingly, Plaintiff is entitled to recover from Defendants, jointly and severally, the actual damages sustained and Defendants should be required to disgorge those amounts unlawfully taken along with any profits earned on those sums.  Plaintiff further requests that the court impose a constructive trust for the benefit of Plaintiff upon the Collateral, the Equity Interest Collateral and/or the proceeds of such Collateral, including the assets and business

operations of RAD Exotics, which were taken by Defendants or which are within such Defendants' possession, custody or control.

## NINTH CAUSE OF ACTION

### (Attorney's Fees)

42.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

43.     Defendants' failure to pay the amounts due under the Note and/or to deliver the Collateral (or its proceeds) to Plaintiff, despite demands that they do so, has made it necessary for Plaintiff to employ counsel to file and prosecute this suit.  Plaintiff's attorneys have expended and will expend considerable time and effort in bringing this suit against Defendants.  Plaintiff is therefore entitled to recover from Defendants, jointly and severally, reasonable attorney's fees for the services required and expenses involved pursuant to the express provisions of the Note, Tex. Civ. Prac. & Rem. Code Ch. 38, Tex. Civ. Prac. & Rem. Code Ch. 37 and/or Tex. Bus. & Com. Code § 24.013 (2003) and/or any other applicable law or statute.  Alternatively, Plaintiff is entitled to recover contractual attorney's fees pursuant to the terms of the Note.

## TENTH CAUSE OF ACTION

### (Equitable Lien)

44.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

45.     Defendants misappropriated the Collateral and the Equity Interest Collateral, and any proceeds of such collateral, which in equity and good conscience ought to have been repaid or turned over to Plaintiff to repay the Note.

46.     An equitable lien arises when the surrounding circumstances indicate the parties to the transaction intended that certain property would secure the payment of a debt.  It is not necessary that a lien is created by express contract or by operation of statute.  In this circumstance, this Court should apply the rules of equity, based on the relations of the parties and the circumstances of their dealings, to establish a lien based on right and justice upon the Collateral and the Equity Interest Collateral, any proceeds of such collateral, any loan proceeds diverted from RAD Exotics to the Individual Defendants, and any profits earned by Defendants on the sale of the Collateral.

## *ELEVENTH CAUSE OF ACTION*

### **(Alter Ego)**

47.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

48.     At all relevant times, Defendants Spencer and/or Sigler were alter egos of RAD Exotics, which justifies the Court's disregard of RAD Exotics' entity protection so as to hold Defendants Spencer and Sigler also liable for each Defendant's misconduct as alleged herein. Specifically, Defendants Spencer and Sigler used Defendant RAD Exotics:

> a.     as part of a basically unfair device to achieve an inequitable result;
>
> b.     as a means of perpetrating a fraud;
>
> c.     as a mere tool or business conduit for their own personal fraudulent business dealings to the extent that Defendants RAD Exotics, Spencer and/or Sigler are, in essence, one and the same;
>
> d.     as a means to evade existing legal obligations to Plaintiff Granting Hands; and

     e.    as a means to protect themselves from the consequences of committing fraud and to otherwise justify a wrong.

49.    Upon information and belief, Defendant RAD Exotics failed to conduct regular meetings of members or officers and failed to maintain entity records.  In addition, Defendants caused the property and funds of RAD Exotics to be used to benefit the individual Defendants without remitting payment for such benefits to the entity or to the Plaintiff as repayment for monies loaned.  There is such a unity between all the Defendants that the separateness of RAD Exotics has ceased and holding only Defendant RAD Exotics liable for the claims asserted herein would result in injustice.

50.    Displaying a total disregard for their obligations in dealing with loan proceeds and Collateral in which Plaintiff Granting Hands had a security interest, the Individual Defendants made no effort to properly account for the loan proceeds and Collateral (and proceeds) made the subject of this suit.  RAD Exotics has no independent will separate and apart from the Individual Defendants and is the mere alter ego of the Individual Defendants.  Moreover, Defendant RAD Exotics has been used by the Individual Defendants as an engine of fraud in the instant case.  For these reasons, the entity should be disregarded and any and all liability of Defendant RAD Exotics should also attach to the Individual Defendants.  Holding only RAD Exotics liable would promote injustice.

### *TWELFTH CAUSE OF ACTION*

#### **(Accounting)**

51.    Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

52.     Plaintiff demands an accounting of all sales, transfers, and other dispositions of its Collateral, and of any resulting proceeds or profits, by Defendants.  The facts at issue are so complex that adequate relief may not be obtained by law and the use of standard discovery procedures is inadequate to trace all the sales, transfers, and dispositions of Plaintiff's Collateral and of any resulting proceeds.

53.     In connection with the accounting, Plaintiff demands that Defendants deliver copies of all books and records relating to its Collateral, including but not limited to those concerning the Collateral's disposition, the receipt, transfer, use, or other application of proceeds of Collateral, and the location of the Collateral and any proceeds or profits.

### THIRTEENTH CAUSE OF ACTION

### (Application for Temporary Injunction)

54.     Plaintiff repeats and re-alleges all previous allegations and incorporates same herein by reference as if set forth in full.

55.     Plaintiff requests injunctive relief from the Court in support of its (i) claim for accounting and (ii) its claims seeking recovery of Collateral and the Equity Interest Collateral, and collateral proceeds, improperly disposed of and/or retained by Defendants.  Plaintiff's Collateral is in danger of being further disposed of by Defendants in violation of the parties' agreements and in contravention of Plaintiff's rights as a secured creditor.  Immediate and irreparable injury or loss will occur, for which there exists no adequate remedy at law, unless a temporary injunction is entered to enforce the provisions of the Loan Documents, including *inter alia*:

   a.      enjoining Defendants from selling, transferring, or otherwise disposing of any loan proceeds, the Collateral and the Equity Interest Collateral, and collateral proceeds;

b.      enjoining Defendants from using, spending, retaining, or otherwise exercising dominion over any loan proceeds or cash proceeds of Collateral previously disposed of;

c.      enjoining Defendants from interfering with Plaintiff's access to the Collateral and their efforts to sell the Collateral, including their taking inventory of the Collateral, preparing it for sale, and conducting such sales;

d.      requiring Defendants to marshal the Collateral for sale, in accordance with Plaintiff's instructions;

e.      requiring Defendants to assemble and deliver to Plaintiff all proceeds of and profits from Collateral now in Defendants' possession or thereafter coming into their possession; and

f.      requiring Defendants to make their books and records relating to Plaintiff's Collateral and its disposition, as well as to the deposit and transfer of cash proceeds of Collateral, and profits therefrom, including but not limited to bank records, available to Plaintiff as requested.

56.     Plaintiff does not have an adequate legal remedy because RAD Exotics is, upon information and belief, no longer in existence and insolvent; thus, damages will not adequately compensate Plaintiff for the loss or impairment of its Collateral.  Plaintiff's security interest in the Collateral offers it a source of recovery of a portion of Defendants' debt, one that diminishes to the extent that Defendants improperly dispose of the Collateral.  Defendants' improper disposition of the Collateral, refusal to allow Plaintiff access to their records regarding the Collateral, and refusal to deliver the Collateral proceeds to Plaintiff jeopardizes Plaintiff's recovery of the amounts owed by Defendants.

57.     Plaintiff is likely to succeed on the merits of its claims.  The parties' agreements clearly have been breached by Defendants, and Plaintiff is entitled to the relief requested herein.

58.     Plaintiff has established a viable cause of action against Defendants, a probable right to recovery, and a probable, imminent, and irreparable injury in the interim.

59.     The temporary injunction requested herein is the only way the Court can maintain the status quo and protect Plaintiff's security interest in the Collateral, and equity warrants the maintenance of the status quo.   Accordingly, Plaintiff seeks immediate entry of a temporary injunction enjoining the actions described above and requiring Defendants to deliver to Plaintiff all Collateral and the Equity Interest Collateral, and proceeds of Collateral now in Defendants' possession or thereafter coming into their possession, and to take all further action requested above.  Plaintiff further requests that Defendants be ordered to certify to it and the Court that they have delivered all proceeds of collateral to Plaintiff, and that the Court require them to produce books and records reflecting the same.

60.     Plaintiff respectfully requests that the Court set a hearing for a temporary injunction.

## VIII.

## MOTION FOR EXPEDITED DISCOVERY

Plaintiff respectfully requests that the Court grant it the opportunity to take expedited discovery in support of its Application for Temporary Injunction. Trial courts frequently order expedited discovery during proceedings relating to requests for temporary relief. *See, e.g., In re Tex. Health Res.*, No. 05–15–00813–CV, 2015 WL 5029272, at *2 (Tex. App.–Dallas Aug. 26, 2015, orig. proceeding) ("The trial court ordered that the discovery take place before the expiration of the temporary restraining order."); *In re MetroPCS Commc'ns, Inc.*, 391 S.W.3d 329, 332 (Tex.

App.–Dallas 2013, orig. proceeding); *In re Meyer*, No. 14–14–00833–CV, 2014 WL 5465621, at *1 (Tex. App.–Houston [14th Dist.] Oct. 24, 2014, orig. proceeding) (mem. op. per curiam) ("On October 14, 2014, Gulfstream filed an original petition, application for temporary restraining order, application for temporary injunction, and motion for expedited discovery against relators in the trial court."); *Miga v. Jensen*, No. 02–11–00074–CV, 2012 WL 745329, at *2 (Tex. App.–Fort Worth Mar. 8, 2012, no pet.) (mem. op.) ("Ten days later, Jensen filed with the trial court an application for a temporary restraining order, injunction, and expedited discovery."). In addition, in this regard, trial courts have discretion to schedule discovery and shorten or lengthen the time for responding. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 943 (Tex. 1998) (orig. proceeding); *In re Exmark Mfg. Co., Inc.*, 299 S.W.3d 519, 532–33 (Tex. App.–Corpus Christi 2009, orig. proceeding); *see, e.g.*, Tex. R. Civ. P. 190.5, 191.1. Good cause exists here considering Plaintiff's pending Application for Temporary Injunction.

Plaintiff requests that the Court set a deadline of five (5) days prior to the hearing on its Application for Temporary Injunction for Defendants to respond to any forthcoming discovery requests from Plaintiff and to produce documents responsive to such requests.

Plaintiff further requests that the Court order RAD Exotics to produce one or more corporate representatives for deposition regarding matters relating to the allegations set forth herein, to be more specifically noticed by Plaintiff, no later than three (3) days prior to the hearing on Plaintiff's Application for Temporary Injunction.

## IX.

## PRAYER

WHEREFORE, Plaintiff Granting Hands requests that the Court enter an order providing that Plaintiff may take expedited discovery in support of its Application for Temporary Injunction,

as set forth above; that, upon hearing, the Court issue a temporary injunction as set forth above; and that after trial, this Court render such injunctive relief to be permanent.

Plaintiff further requests the accounting described above and that Plaintiff have judgment against Defendants for the following:

a.   Actual damages;

b.   Exemplary Damages;

c.   Pre-judgment and post-judgment interest;

d.   Costs of suit;

e.   Attorneys' fees;

f.   Temporary and Permanent Injunctive Relief, as requested herein;

g.   Orders for declaratory judgment, unjust enrichment, disgorgement, an equitable lien, a constructive trust, and all other equitable relief requested herein;

h.   Judgment that RAD Exotics is merely the "alter ego" of the Individual Defendants and that any and all liability of Defendant RAD Exotics should also attach to the Individual Defendants; and

i.   All such other and further relief, in law and in equity, to which Plaintiff may show itself justly entitled.

Date:  October 6, 2023.

Respectfully submitted,


*W. Ralph Canada, Jr.*
W. Ralph Canada, Jr.
Texas State Bar No. 03733800
Donna Lee
Texas State Bar No. 24103439
DEARY RAY LLP
17070 Dallas Parkway, Suite 100
Dallas, Texas 75248
Phone:  214.572.1701
ralphc@dearyray.com
donnal@dearyray.com


Darryl J. Silvera
Texas State Bar. No. 18352280
THE SILVERA FIRM
17070 Dallas Parkway, Suite 100
Dallas, Texas 75248
Phone:  (972) 715-1750
dsilvera@silveralaw.com


*ATTORNEYS FOR PLAINTIFF*

## AFFIDAVIT OF SCOTT EVERETT

THE STATE OF TEXAS

COUNTY OF DALLAS

BEFORE ME, the undersigned authority, on this day personally appeared Scott Everett who, after being by me duly sworn, upon his/her oath deposed and stated as follows:

"My name is Scott Everett. I am over twenty-one years of age, of sound mind, capable of making this affidavit, and fully competent to testify to the matters stated herein. I have never been convicted of any felony. I have personal knowledge of the following facts and statements in this Affidavit and they are true and correct. If called as a witness, I could and would testify competently thereto.

I am the managing member of Granting Hands, LLC and submit this Affidavit in support of Plaintiff's Verified Original Petition, Application for Temporary Injunction, and Motion for Expedited Discovery filed in the above-captioned matter. I have read each and every page of the foregoing Plaintiff's Verified Original Petition, Application for Temporary Injunction, and Motion for Expedited Discovery and the facts contained therein are within my personal knowledge and are true and correct, except those stated to be upon information and belief and as to those, I am so informed and believe. I further state that all exhibits attached to the Petition are true and correct copies of the originals and are kept and maintained by Granting Hands in its ordinary course of business.

FURTHER AFFIANT SAYETH NOT."

SIGNED this 5ᵗʰ day of October, 2023.

SWORN AND SUBSCRIBED before me by Scott Everett on the 5ᵗʰ day of October, 2023.

_____
Notary Public in and for the State of Texas



DONNA ROZENBURG
My Notary ID # 132623589
Expires August 13, 2024

# **Exhibit 1**

## PROMISSORY NOTE

### $3,000,000 Floor Plan Credit Facility

$3,000,000                                                              March 19, 2021

**FOR VALUE RECEIVED**, RAD EXOTICS LLC, a Nevada limited liability company ("Debtor"), unconditionally promise to pay to the order of GRANTING HANDS, LLC, a Texas limited liability company (together with its successors and assigns, "Lender"), without setoff, deduction or recoupment, at its offices at 14801 Quorum Drive, #300, Dallas (Dallas County), Texas 75254, or at such other place as may be designated by Lender, the principal amount of $3,000,000.00, or so much thereof as may be advanced from time to time in immediately available funds, together with interest computed daily on the outstanding principal balance hereunder, at an annual interest rate (the "Rate"), and in accordance with the payment schedule indicated below. This **PROMISSORY NOTE** (this "Note") is executed pursuant to and evidences loans funded and to be funded by Lender under that certain **LOAN AND SECURITY AGREEMENT** dated as of even date herewith (the "Effective Date"), between Debtor and Lender (as amended, restated or otherwise modified from time to time, the "Loan Agreement"), to which reference is made for a statement of the collateral, rights and obligations of Debtor and Lender in relation thereto, but neither this reference to the Loan Agreement nor any provision thereof shall affect or impair the absolute and unconditional obligation of Debtor to pay unpaid principal of and interest on this Note when due. Capitalized terms not otherwise defined herein shall have the same meanings as in the Loan Agreement.

1.    **Rate**. Prior to the Maturity Date or an Event of Default, the Rate shall be the lesser of (a) the Maximum Rate, or (b)(i) **5.0%** from the Effective Date to February 28, 2022, (ii) **7.0%** from March 1, 2022 through September 30, 2022, and (iii) **9.0%** FROM October 1, 2022 through March 1, 2023. Notwithstanding any provision of this Note or any other agreement or commitment between Debtor and Lender, whether written or oral, express or implied, Lender shall never be entitled to charge, receive or collect, nor shall amounts received hereunder be credited so that Lender shall be paid, as interest a sum greater than interest at the Maximum Rate. It is the intention of the parties that this Note, and all instruments securing the payment of this Note or executed or delivered in connection therewith, shall comply with applicable law. If Lender ever contracts for, charges, receives or collects anything of value which is deemed to be interest under applicable law, and if the occurrence of any circumstance or contingency, whether acceleration of maturity of this Note, prepayment of this Note, delay in advancing proceeds of this Note or any other event, should cause such interest to exceed the Maximum Rate, any amount which exceeds interest at the Maximum Rate shall be applied to the reduction of the unpaid principal balance of this Note or any other Indebtedness, and if this Note and such other Indebtedness are paid in full, any remaining excess shall be paid to Debtor. In determining whether the interest exceeds interest at the Maximum Rate, the total amount of interest shall be spread, prorated and amortized throughout the entire term of this Note until its payment in full. The term "Maximum Rate" as used in this Note means the maximum nonusurious rate of interest per annum permitted by whichever of applicable United States federal law or Texas law permits the higher interest rate, including to the extent permitted by applicable law, any amendments thereof hereafter or any new law hereafter coming into effect to the extent a higher Maximum Rate is permitted thereby. If at any time the Rate shall exceed the Maximum Rate, the Rate shall be automatically limited to the Maximum Rate until the total amount of interest accrued hereunder equals the amount of interest which would have accrued if there had been no limitation to the Maximum Rate. To the extent, if any, that Chapter 303 of the Texas Finance Code, as amended, (the "Act") is relevant to Lender for purposes of determining the Maximum Rate, the parties elect to determine the Maximum Rate under the Act pursuant to the "weekly ceiling" from time to time in effect, as referred to and defined in §303.001-303.016 of the Act; subject, however, to any right Lender subsequently may have under applicable law to change the method of determining the Maximum Rate.

2.    **Accrual Method**. Interest on the Indebtedness evidenced by this Note shall be computed on the basis of a **360**-day year and shall accrue on the actual number of days elapsed for any whole or partial month in which interest is being calculated. In computing the number of days during which interest accrues, the day on which funds are initially advanced shall be included regardless of the time of day such advance is made, and the day on which funds are repaid shall be included unless repayment is credited prior to the close of business on the Business Day received as provided herein.

3.    **Reserved**.

PROMISSORY NOTE (FLOOR PLAN) – PAGE 1 of 5

4.      **Payment Schedule.**  All payments under this Note made to Lender shall be made in immediately available funds as set forth in this Note which shall be in Dollars, which shall at the time of payment be legal tender in payment of all debts and dues, public and private.  Payments by check or draft shall not constitute payment in immediately available funds until the required amount is actually received by Lender in full.  Payments in immediately available funds received by Lender in the place designated for payment on a Business Day prior to 11:00 a.m. Dallas, Texas time at said place of payment shall be credited prior to the close of business on the Business Day received, while payments received by Lender on a day other than a Business Day or after 11:00 a.m. Dallas, Texas time on a Business Day shall not be credited until the next succeeding Business Day.  If any payment of principal or interest on this Note shall become due and payable on a day other than a Business Day, such payment shall be made on the next succeeding Business Day.  Any such extension of time for payment shall be included in computing interest which has accrued and shall be payable in connection with such payment.  Except as expressly provided herein to the contrary, all payments on this Note shall be applied in the following order of priority: (a) the payment or reimbursement of any expenses, costs or obligations (other than the outstanding principal balance hereof and interest hereon) for which either Debtor shall be obligated or Lender shall be entitled pursuant to the provisions of this Note or the other Loan Documents, (b) the payment of accrued but unpaid interest hereon, and (c) the payment of all or any portion of the principal balance hereof then outstanding hereunder.  If a Default exists under any of the other Loan Documents, then Lender may, at the sole option of Lender, apply any such payments, at any time and from time to time, to any of the items specified in clauses (a), (b) or (c) above without regard to the order of priority otherwise specified herein and any application to the outstanding principal balance hereof may be made in either direct or inverse order of maturity.  The outstanding principal balance of this Note shall be due and payable on the earlier of (i) the acceleration of the Indebtedness pursuant to the terms of the Loan Documents; or (ii)    **March 1, 2023** (the earliest of such dates being the "<u>Maturity Date</u>").  Accrued and unpaid interest on the outstanding principal balance of this Note <u>plus</u> any payment of principal as may be required under the Loan Agreement shall be due and payable weekly commencing on the first Business Day of the calendar week following the date of this Note and continuing on first Business Day of each calendar week thereafter and on the Maturity Date.  Debtor may borrow, repay and reborrow hereunder at any time, up to a maximum aggregate amount outstanding at any one time equal to the principal amount of this Note, provided that Debtor is not in default under any provision of this Note, any other documents executed in connection with this Note, or any other Loan Documents now or hereafter executed in connection with any other obligation of Debtor to Lender, and provided that the borrowings hereunder do not exceed any borrowing base or other limitation on borrowings by Debtor.  Lender shall incur no liability for its refusal to advance funds based upon its determination that any conditions of such further advances have not been met.  Debtor expressly agrees that Chapter 346 of the Act shall not apply to this Note or to any advances under this Note and that neither this Note or any such advances shall be governed by or subject to the provisions of such Chapter in any manner whatsoever.  Lender's records of the amounts advanced and accrued and unpaid interest thereon from time to time shall be conclusive proof thereof absent manifest error.

5.      **Delinquency Charge.**  In the event any installment owing under this Note, or any part thereof, remains unpaid for **10** or more days past the due date thereof as provided above, Debtor shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable late payment fee equal to **5.00%** of the amount of said installment, which amount is stipulated by Debtor to be reasonable in order to compensate Lender for its additional costs incurred as a result of having to attend to such delinquency.  This late charge should be paid only once as to such amount as is due and owing, but promptly, as to each respective late payment.  It is further agreed that the imposition of any such late payment fee shall in no way prejudice or limit Lender's rights or remedies against Debtor under this Note or any of the other Loan Documents.  In the event any check or other payment item used to make a payment to Lender is dishonored for any reason, Debtor shall pay to Lender, in addition to any other amounts to which Lender may be entitled hereunder, a reasonable processing fee of **$30.00** (or the maximum amount provided from time to time in Section 3.506(b) of the Texas Business and Commerce Code).  This processing fee should be paid once with respect to each dishonor of a check or other payment item.  It is further agreed that the imposition of any such processing fee shall in no way prejudice or limit Lender's rights or remedies against Debtor under this Note or any of the other Loan Documents.

6.      **Obligated Parties' Waivers, Consents and Covenants.**  Debtor, any indorser or guarantor hereof, or any other party hereto (individually an "<u>Obligated Party</u>" and collectively "<u>Obligated Parties</u>") and each of them jointly and severally: (a) waives presentment, demand, protest, notice of demand, notice of intent to accelerate, notice of acceleration of maturity, notice of protest, notice of nonpayment, notice of dishonor, and any other notice required to be given under the law to any Obligated Party in connection with the delivery, acceptance, performance, default or

PROMISSORY NOTE (FLOOR PLAN) – PAGE 2 of 5

enforcement of this Note, any indorsement or guaranty of this Note, or any other documents executed in connection with this Note or any other Loan Documents now or hereafter executed in connection with any obligation of Debtor to Lender; (b) consents to all delays, extensions, renewals or other modifications of this Note or the Loan Documents, or waivers of any term hereof or of the Loan Documents, or release or discharge by Lender of any Obligated Parties, or release, substitution or exchange of any security for the payment hereof, or the failure to act on the part of Lender, or any indulgence shown by Lender (without notice to or further assent from any Obligated Parties); (c) agrees that no such action, failure to act or failure to exercise any right or remedy by Lender shall in any way affect or impair the obligations of any Obligated Parties or be construed as a waiver by Lender of, or otherwise affect, any of Lender's rights under this Note, under any indorsement or guaranty of this Note or under any of the Loan Documents; and (d) agrees to pay, on demand, all costs and expenses of collection or defense of this Note or of any indorsement or guaranty hereof and/or the enforcement or defense of Lender's rights with respect to, or the administration, supervision, preservation, or protection of, or realization upon, any property securing payment hereof, including, without limitation, reasonable attorney's fees, including fees related to any suit, mediation or arbitration proceeding, out of court payment agreement, trial, appeal, bankruptcy proceedings or other proceeding, in such amount as may be determined reasonable by any arbitrator or court, whichever is applicable.

7.   **Prepayments**.  Prepayments may be made in accordance with the Loan Agreement.

8.   **Remedies Upon Default**.  Whenever (a) Lender, in its sole and absolute discretion, deems prospect of payment of the obligations evidenced by this Note or resort to Collateral to be impaired or in jeopardy, or (b) there is an Event of Default under the Loan Documents, the entire balance owing on this Note and all other obligations of any Obligated Party to Lender (however acquired or evidenced) shall (unless otherwise agreed in writing by Lender) be immediately due and payable without prior notice or demand and any obligation of Lender to permit further borrowing under this Note shall immediately cease and terminate.  All amounts owing on this Note shall immediately become due and payable, without notice or demand, upon the appointment of a receiver or a liquidator, whether voluntary or involuntary, for Debtor or for any of Debtor's property or assets or upon the commencement of any proceeding under any bankruptcy or insolvency law by or against any Obligated Party.  From and after (a) a Default, or (b) the Maturity Date (whether by acceleration or otherwise), the Rate on the unpaid principal balance of this Note shall be increased at Lender's discretion up to the lesser of (i) **18.00%**, or (ii) the Maximum Rate (the "Maturity Rate").  All past due principal and interest on this Note shall bear interest from maturity until paid at the Maturity Rate.  The provisions herein for a Maturity Rate (a) shall not be deemed to extend the time for any payment hereunder or to constitute a "grace period" giving Obligated Parties a right to cure any default, and (b) shall be deemed the contract rate of interest applicable to the outstanding principal balance of the Note from and after the occurrence of one of the events set forth in this Section.  At Lender's option, any accrued and unpaid interest, fees or charges may, for purposes of computing and accruing interest on a daily basis after the due date of this Note or any installment thereof, be deemed to be a part of the principal balance, and interest shall accrue on a daily compounded basis after such date at the Maturity Rate provided in this Note until the entire outstanding balance of principal and interest is paid in full.  Upon an Event of Default, Lender is hereby authorized at any time, at its option and without notice or demand, to set off and charge against any deposit accounts of any Obligated Party (as well as any money, instruments, securities, documents, chattel paper, credits, claims, demands, income and any other property, rights and interests of any Obligated Party), which at any time shall come into the possession or custody or under the control of Lender or any of its agents, affiliates or correspondents, any and all obligations due hereunder.  Additionally, Lender shall have all rights and remedies available under each of the Loan Documents, as well as all rights and remedies available at law or in equity.

9.   **No Waiver**.  The failure, delay or omission at any time of Lender to exercise any of its options or any other rights, options, powers or remedies hereunder shall not constitute a waiver thereof, nor shall it be a bar to the exercise of any of its rights, options, powers or remedies at a later date.  All rights, options, powers and remedies of Lender shall be cumulative and may be pursued singly, successively or together, at the option of Lender.  The acceptance by Lender of any partial payment shall not constitute a waiver of any default or of any of Lender's rights under this Note.  No waiver of any of its rights hereunder, and no modification or amendment of this Note, shall be deemed to be made by Lender unless the same shall be in writing, duly signed on behalf of Lender; each such waiver shall apply only with respect to the specific instance involved, and shall in no way impair the rights of Lender or the obligations of Obligated Parties to Lender in any other respect at any other time.

PROMISSORY NOTE (FLOOR PLAN) – PAGE 3 of 5

10.     **Applicable Law, Venue and Jurisdiction**.  Debtor agrees that this Note shall be deemed to have been made in the State of Texas at Lender's address indicated at the beginning of this Note and shall be governed by, and construed in accordance with, the laws of the State of Texas and is performable in the City and County of Texas indicated at the beginning of this Note.  In any litigation in connection with or to enforce this Note or any indorsement or guaranty of this Note or any Loan Documents, Obligated Parties, and each of them, irrevocably consent to and confer personal jurisdiction on the courts of the State of Texas or the United States courts located within Dallas (Dallas County), Texas.  Nothing contained herein shall, however, prevent Lender from bringing any action or exercising any rights within any other state or jurisdiction or from obtaining personal jurisdiction by any other means available under applicable law.

11.     **Partial Invalidity**.  The unenforceability or invalidity of any provision of this Note shall not affect the enforceability or validity of any other provision herein and the invalidity or unenforceability of any provision of this Note or of the Loan Documents to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

12.     **Binding Effect**.  This Note shall be binding upon and inure to the benefit of Obligated Parties and Lender and their respective successors, assigns, heirs and personal representatives, provided, however, that no obligations of Obligated Parties hereunder can be assigned without prior written consent of Lender.

13.     **Controlling Document**.  To the extent that this Note conflicts with or is in any way incompatible with any other document related specifically to the loan evidenced by this Note, this Note shall control over any other such document, and if this Note does not address an issue, then each other such document shall control to the extent that it deals most specifically with an issue.  The **"NOTICE OF FINAL AGREEMENT"** as set forth in the Loan Agreement is hereby incorporated by reference.

14.     **Commercial Purpose**.  **DEBTOR REPRESENTS TO LENDER THAT THE PROCEEDS OF THIS LOAN ARE TO BE USED PRIMARILY FOR BUSINESS, COMMERCIAL OR AGRICULTURAL PURPOSES. DEBTOR ACKNOWLEDGES HAVING READ AND UNDERSTOOD, AND AGREES TO BE BOUND BY, ALL TERMS AND CONDITIONS OF THIS NOTE.**

15.     **Collection**.  If this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceeding at law or in equity or in bankruptcy, receivership or other court proceedings, Debtor agrees to pay all costs of collection, including, but not limited to, court costs and reasonable attorneys' fees.

16.     **Notice of Balloon Payment**.  At maturity (whether by acceleration or otherwise), Debtor must repay the entire principal balance of this Note and unpaid interest then due.  Lender is under no obligation to refinance the outstanding principal balance of this Note (if any) at that time.  Debtor will, therefore, be required to make payment out of other assets Debtor may own; or Debtor will have to find a lender willing to lend Debtor the money at prevailing market rates, which may be higher than the interest rate on the outstanding principal balance of this Note.  If Obligated Parties have guaranteed payment of this Note, Obligated Parties may be required to perform under such guaranty.

17.     **Waiver of Jury Trial**.  **DEBTOR HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF THIS NOTE OR ANY OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS NOTE OR THE OTHER LOAN DOCUMENTS.**

*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*

PROMISSORY NOTE (FLOOR PLAN) – PAGE 4 of 5

**App. 036**

**EXECUTED** as of the Effective Date.

**DEBTOR:**

RAD EXOTICS LLC

By: _____
Name:  Justin Spencer
Title:  Manager

**ADDRESS:**

251 Turnpike Rd
Southborough, MA 01772

PROMISSORY NOTE (FLOOR PLAN) – PAGE 5 of 5

# **<u>Exhibit 2</u>**

## FIRST AMENDMENT TO PROMISSORY NOTE

### $4,000,000 Floor Plan Credit Facility

$4,000,000                                                          December 31, 2021

This FIRST AMENDMENT TO PROMISSORY NOTE (as amended, modified, or restated from time to time, this "First Amendment") is entered into and effective as of December 31, 2021 (the "Effective Date"), by RAD Exotics LLC, a Nevada limited liability company ("Debtor")

WHEREAS, effective on or about March 19, 2021, Debtor, the Grantors, and Granting Hands, LLC, a Texas limited liability company (together with its successors and assigns, "Lender"), entered into certain Loan Documents in connection with a $3,000,000 Floor Plan Credit Facility (the "Credit Facility"), including without limitation the following:

1. that certain Loan and Security Agreement between Debtor and Lender (the "Loan Agreement");

2. that certain Promissory Note executed by Debtor (the "Note");

3. that certain Closing Certificate executed by Debtor (the "Closing Certificate");

4. that certain Irrevocable Power of Attorney executed by Debtor (the "Irrevocable Power of Attorney");

5. that certain Pledge Agreement between David Sigler (as the "Grantor") and Lender (the "Pledge Agreement -- Sigler");

6. that certain Pledge Agreement between Justin Spencer (as the "Grantor") and Lender (the "Pledge Agreement -- Spencer" and together with the Loan Agreement, the Note, the Closing Certificate, the Irrevocable Power of Attorney, and the Pledge Agreement -- Sigler, the "Loan Documents"); and

WHEREAS, Debtor, Lender, and the Grantors desire to amend certain of the Loan Documents, including the Promissory Note, (i) to increase the principal amount of the Floor Plan Credit Facility from $3,000,000 to $4,000,000 and (ii) to establish a collateral processing fee payable by Debtor to Lender for each vehicle against which a Floor Plan Advance is made; and

WHEREAS, capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Loan Agreement or such other Loan Document, as applicable.

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual covenants and undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor hereto, intending to be legally bound, agrees as follows:

1.      **<u>Principal Amount</u>**.

The Note is amended to change the Principal Amount from $3,000,000 to $4,000,000.

2.      **<u>Miscellaneous</u>**.

Except as expressly provided herein, the terms, conditions, covenants, promises, representations, warranties, and other provisions of the Note and the other Loan Documents remain in full force and effect, are reaffirmed by the Debtor, and remain unchanged.  This First Amendment is incorporated into and made a part of the Note, and all references to the Note hereafter shall include this First Amendment.

*[Remainder of page intentionally blank.  Signature page follows.]*

In WITNESS WHEREOF, the undersigned has executed and delivered this First Amendment as of the Effective Date.

**DEBTOR:**                                          **ADDRESS:**

RAD EXOTICS LLC                                      251 Turnpike Road
                                                     Southborough, MA 01772

By: _____
Name: Justin Spencer
Title:   Manager

# **<u>Exhibit 3</u>**

## LOAN AND SECURITY AGREEMENT

### $3,000,000 Floor Plan Credit Facility

This **LOAN AND SECURITY AGREEMENT** (as amended, modified or restated from time to time, this "Agreement") dated effective as of **FEBRUARY __, 2021** (the "Effective Date"), is between (a) **GRANTING HANDS, LLC**, a Texas limited liability company (together with its successors and assigns, "Lender") and (b) **RAD EXOTICS LLC**, a Nevada limited liability company ("Debtor").

### RECITALS

**WHEREAS**, Debtor has requested that Lender extend the Credit Facility to Debtor on the terms described in this Agreement.

**WHEREAS**, Lender is willing to make the Credit Facility available to Debtor upon and subject to the provisions, terms and conditions set forth in the Loan Documents.

**NOW THEREFORE**, the parties hereto, intending to be legally bound, agree as follows:

1.       **Definitions**. As used in this Agreement, all exhibits, appendices and schedules hereto, and in any other Loan Documents made or delivered pursuant to this Agreement, the following terms will have the meanings given such terms in this Section 1 or in the provisions, sections or recitals herein:

"Affiliate" means, with respect to a specified Person, another Person that directly or indirectly through one or more intermediaries, Controls or is Controlled by or is under common Control with the Person specified.

"Business Day" means any day other than a Saturday, Sunday or any other day on which the Federal Reserve Bank of Dallas, Texas, is closed.

"Code" means the Uniform Commercial Code as the same may, from time to time, be enacted and in effect in the State of Texas; provided, that to the extent that the Code is used to define any term herein or in any Loan Document and such term is defined differently in different articles or divisions of the Code, the definition of such term contained in Article 9 shall govern; provided further, that in the event that, by reason of mandatory provisions of law, any or all of the attachment, perfection or priority of, or remedies with respect to, Lender's lien on any Collateral is governed by the Uniform Commercial Code as enacted and in effect in a jurisdiction other than the State of Texas, the term "Code" shall mean the Uniform Commercial Code as enacted and in effect in such other jurisdiction solely for purposes of the provisions thereof relating to such attachment, perfection, priority or remedies and for purposes of definitions related to such provisions.

"Collateral" means:

(a)       Any property or asset, whether real or personal, pledged by a Grantor to secure the Indebtedness, including, but not limited to, the equity interest in the Debtor.

(b)       All present and future accounts, chattel paper (including electronic chattel paper), commercial tort claims, commodity accounts, commodity contracts, deposit accounts, documents, financial assets, general intangibles, health care insurance receivables, instruments, Intellectual Property, investment property, letters of credit, letter of credit rights, payment intangibles, securities, security accounts and security entitlements now or hereafter owned, held or acquired.

(c)       All present and hereafter acquired inventory (including without limitation, motor vehicles) and goods (including without limitation, all raw materials, work in process and finished goods) held, possessed, owned, held on consignment or held for sale, lease, return or to be furnished under contracts of services, in whole or in part, wherever located.

(d)     All equipment and fixtures of whatsoever kind and character now or hereafter possessed, held, acquired, leased or owned, together with all replacements, accessories, additions, substitutions and accessions to all the foregoing, and all records relating in any way to the foregoing.

(e)     All books, records, data, plans, manuals, computer software, computer tapes, computer systems, computer disks, computer programs, source codes and object codes containing any information pertaining directly or indirectly to the Collateral and all rights to retrieve data and other information pertaining directly or indirectly to the Collateral from third parties.

The term "Collateral," as used herein, shall also include (a) any other property or assets, real or personal, tangible or intangible, now existing or hereafter acquired, of any Obligor that may at any time be or become subject to a security interest or lien in favor of Lender as security for the Indebtedness, and (b) all **SUPPORTING OBLIGATIONS, PRODUCTS** and **PROCEEDS** of all of the foregoing (including without limitation, insurance payable by reason of loss or damage to the foregoing property) and any property, assets securities, guaranties or monies of Debtor which may at any time come into the possession of Lender.  The designation of proceeds does not authorize Debtor to sell, transfer or otherwise convey any of the foregoing property except in the ordinary course of Debtor's business or as otherwise provided herein.  For the avoidance of doubt, any personal property of Debtor or Grantor which is not pledged to Lender as Collateral must be specifically set forth in Exhibit II.

"Compliance Certificate" means a certificate in the form attached hereto as Exhibit III.

"Constituent Documents" means (a) in the case of a corporation, its articles or certificate of incorporation and bylaws; (b) in the case of a general partnership, its partnership agreement; (c) in the case of a limited partnership, its certificate of limited partnership and partnership agreement; (d) in the case of a trust, its trust agreement; (e) in the case of a joint venture, its joint venture agreement; (f) in the case of a limited liability company, its articles of organization or certificate of formation and operating agreement or regulations; and (g) in the case of any other entity, its organizational and governance documents and agreements.

"Control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.  "Controlling" and "Controlled" have meanings correlative thereto.

"Credit Facility" has the meaning stated in Section 2(a).

"Debt" means as to any Person at any time (without duplication) all items of indebtedness, obligation or liability of a Person, whether mature or unmatured, liquidated or unliquidated, direct or indirect, absolute or contingent, joint or several, that should be classified as liabilities in accordance with GAAP.

"Default" means any Event of Default or event which with notice and/or the passage of time would be an Event of Default.

"DMS" means a Dealer Management System set forth in Exhibit II.

"Documented Reconditioning Costs" or "Make Ready Costs" means Debtor's direct costs to bring a vehicle into retail sales-ready condition, including the actual Dollar amount spent by Debtor on parts that are used on a specific vehicle, along with the labor to install those parts Documented Reconditioning Costs and Make Ready Costs do not include any overhead expenses. Debtor shall timely enter all Documented Reconditioning Costs and Make Ready in its DMS.  Debtor shall keep records and receipts of every item included as a Documented Reconditioning Cost or a Make Ready Cost, and Lender reserves the right to audit such records and receipts and exclude any items that are not properly documented or recorded.

"Dollars" and "$" mean lawful money of the United States of America.

"Event of Default" has the meaning stated in Section 13.

**App. 044**

"GAAP" means generally accepted accounting principles, applied on a consistent basis, as set forth in Opinions of the Accounting Principles Board of the American Institute of Certified Public Accountants and/or in statements of the Financial Accounting Standards Board and/or their respective successors and which are applicable in the circumstances as of the date in question. Accounting principles are applied on a "consistent basis" when the accounting principles applied in a current period are comparable in all material respects to those accounting principles applied in a preceding period.

"Governmental Authority" means the government of the United States of America, any other nation or any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"Grantor" means a Person that pledges assets to secure the Indebtedness, including but not limited to the Debtor.

"Indebtedness" means (a) all indebtedness, obligations and liabilities of Debtor to Lender of any kind or character, now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several or joint and several, and regardless of whether such indebtedness, obligations and liabilities may, prior to their acquisition by Lender, be or have been payable to or in favor of a third party and subsequently acquired by Lender (it being contemplated that Lender may make such acquisitions from third parties), including without limitation all indebtedness, obligations and liabilities of Debtor to Lender now existing or hereafter arising under (i) the Note, this Agreement, the other Loan Documents or any draft, acceptance, guaranty, endorsement, letter of credit, assignment, purchase, overdraft, discount or indemnity agreement, or (ii) otherwise, (b) all accrued but unpaid interest on any of the indebtedness described in (a) above, (c) all obligations of Obligors to Lender under the Loan Documents, (d) all costs and expenses incurred by Lender in connection with the collection and administration of all or any part of the indebtedness and obligations described in (a), (b) and (c) above or the protection or preservation of, or realization upon, the collateral securing all or any part of such indebtedness and obligations, including without limitation all reasonable attorneys' fees and (e) all renewals, extensions, modifications and rearrangements of the indebtedness and obligations described in (a), (b), (c) and (d) above.

"Intellectual Property" means the copyrights, copyright licenses, patents, patent licenses, trademarks and trademark licenses now owned or hereafter acquired by Debtor.

"Lender Group" means, collectively, Lender and any of its representatives, agents, employees, officers or directors, partners, members, and managers, and any Affiliate or entity in privity with Lender.

"Loan Documents" means this Agreement, the Note, the Guaranty, and the other agreements, instruments and documents evidencing, securing, governing, guaranteeing or pertaining to the Loans, executed by any Obligor or otherwise.

"Loans" means all advances under the Credit Facility from time to time.

"Material Adverse Effect" means a material adverse effect on (a) the business, assets, property, operations, condition (financial or otherwise) or prospects of an Obligor (individually or taken as a whole), (b) the ability of an Obligor to pay or perform the Indebtedness, (c) any of the rights of or benefits available to Lender under the Loan Documents or (d) the validity or enforceability of the Loan Documents.

"Note" means, collectively, any promissory note evidencing all or part of the Indebtedness from time to time (as any such Note may be amended, modified or restated from time to time).

"Obligors" means Debtor, Grantor or any other Person who guaranteed the Indebtedness, has pledged assets securing the Indebtedness, or is otherwise obligated to pay or perform all or any portion of Indebtedness.

"Operating Account" means a deposit account in Debtor's name that Debtor uses for the operation of its business.

"Overadvance" has the meaning stated in Exhibit I.

"Permitted Debt" has the meaning stated in Section 8(c).

"Permitted Encumbrances" means the following encumbrances: (a) liens for taxes, assessments or governmental charges or levies not yet due and payable or liens for taxes, assessments or governmental charges or levies being contested in good faith and by appropriate proceedings for which adequate reserves have been established in accordance with GAAP; (b) liens in respect of property of a Person imposed by law which were incurred in the ordinary course of business and which have not arisen to secure Debt for borrowed money, such as carriers', materialmen's, warehousemen's and mechanics' liens, statutory and common law landlord's liens, and other similar liens arising in the ordinary course of business, and which either (i) do not in the aggregate materially detract from the value of such property or materially impair the use thereof in the operation of the business of a Person, or (ii) are being contested in good faith by appropriate proceedings, which proceedings have the effect of preventing the forfeiture or sale of the property subject to such lien; (c) liens created by or pursuant to the Loan Documents; (d) liens permitted as stated on Exhibit II or liens permitted for Permitted Debt specified in Section 8(c)(iii); (e) liens created pursuant to or in connection with capital leases permitted pursuant to this Agreement, provided that (i) such liens only serve to secure the payment of rent or Debt arising under such capital leases, and (ii) the liens encumbering the assets leased or purported to be leased under such capital leases do not encumber any other assets of a Person; and (f) liens in equipment and fixtures arising pursuant to purchase money security interests securing Debt representing the purchase price of assets acquired after the Effective Date; provided that (i) any such liens attach only to the assets so purchased, upgrades thereon and, if the asset so purchased is an upgrade, the original asset itself (and such other assets financed by the same financing source), (ii) the Debt secured by any such lien does not exceed the purchase price of the property being purchased at the time of the incurrence of such Debt, and (iii) the Debt secured thereby is permitted to be incurred pursuant to this Agreement.

"Person" means any individual, corporation, limited liability company, business trust, association, company, partnership, joint venture, Governmental Authority, or other entity, and shall include such Person's heirs, administrators, personal representatives, executors, successors and assigns.

"Repossessed Vehicle(s)" means motor vehicles that are owned by Debtor after Debtor took physical and legal possession of the motor vehicle from a Retail Customer after the Retail Customer defaulted on the terms of the Sales or Lease Contract.

"Retail Customer" means a customer of Debtor under a Sales or Lease Contract.

"Sales or Lease Contract(s)" means Motor Vehicle Retail Installment Sales Contracts or Motor Vehicle Leases entered into by Debtor or Grantor from time to time in the normal course of business.

All words and phrases used herein shall have the meaning specified in the Code except to the extent such meaning is inconsistent with this Agreement. All definitions contained in this Agreement are equally applicable to the singular and plural forms of the terms defined. The words "hereof," "herein" and "hereunder" and words of similar import referring to this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement. The word "including" shall mean "including, but not limited to". Any accounting term used in the Loan Documents shall have, unless otherwise specifically provided therein, the meaning customarily given such term in accordance with GAAP, and all financial computations thereunder shall be computed, unless otherwise specifically provided therein, in accordance with GAAP consistently applied; provided, that all financial covenants and calculations in the Loan Documents shall be made in accordance with GAAP as in effect on the Effective Date unless Debtor and Lender shall otherwise specifically agree in writing. That certain items or computations are explicitly modified by the phrase "in accordance with GAAP" shall in no way be construed to limit the foregoing.

2.   **Credit Facility**.

(a)      **Floor Plan Credit Facility**.   Subject to the terms and conditions set forth in this Agreement and the other Loan Documents, Lender hereby agrees to make Loans to Debtor under a Floor Plan Credit Facility (the "Floor Plan Credit Facility" or the "Credit Facility") on the terms set forth in Exhibit I attached hereto, the terms of which are incorporated by reference as if specifically set forth herein.

For the avoidance of doubt, the Loans to Debtor under such Floor Plan Credit Facility shall be "Loans" and "Indebtedness" for purposes of this Agreement and shall be for all purposes made under the Agreement, secured by the Collateral, and entitled to the representations, warranties, covenants and rights of the parties hereto.

(b)  **Funding**.  The initial Loan under the Credit Facility shall not be in an amount less than the "Initial Minimum Loan Amount" stated in Exhibit II. Debtor shall provide Lender not less than **THREE (3)** Business Days prior notice of its request for a Loan under the Credit Facility, specifying the aggregate amount of such Loan, and together with any documentation relating thereto as Lender may reasonably request. Debtor shall give Lender notice of each Loan under the Credit Facility by no later than 1:00 p.m. (Dallas, Texas time). Lender shall have no liability to Debtor for any loss or damage suffered by Debtor as a result of Lender's honoring of any requests, execution of any instructions, authorizations or agreements or reliance on any reports communicated to it by facsimile or electronically and purporting to have been sent to Lender by Debtor and Lender shall have no duty to verify the origin of any such communication or the identity or authority of the Person sending it. Subject to the terms and conditions of this Agreement, each Loan under this section shall be made available to Debtor by depositing the same, in immediately available funds, in an account of Debtor designated by Debtor or by paying the proceeds of such Loan to a third party designated by Debtor. Debtor authorizes Lender to make advances directly to third party creditors of Debtor that Lender deems necessary, in Lender's sole and absolute discretion, to protect the Collateral or to allow Debtor to continue as an ongoing concern.

(c)  **Loan Payment**.  On a weekly basis, Lender may invoice (via email) Debtor and, within 24 hours of the Lender's invoice, Debtor shall pay the interest on the Loans and any other amounts owing from Debtor.

(d)  **Use of Proceeds**.  The Loans under the Credit Facility shall be used by Debtor to finance floor plan inventory in the ordinary course of business.

(e)  **Fees**.  Debtor agrees to pay to Lender the origination fees as set forth in Exhibit II for the establishment of the Credit Facility, and such other fees as shall be described on Exhibit I and Exhibit II. The origination fees shall compensate Lender for its costs and expenses in the structuring of the Credit Facility and (to the maximum extent permitted by applicable law) shall not be deemed interest.

(f)  **Termination Fee; Prepayment**.  Upon **THIRTY (30)** days' notice to Lender and payment of the termination fee stated in Exhibit II, Debtor may terminate the Credit Facility and prepay the Loans in full. It is contemplated that by reason of prepayments hereunder there may be times when the outstanding principal balance of the Credit Facility is reduced to **ZERO ($0)**, but notwithstanding such occurrence, this Agreement shall remain valid and be in full force and effect, and no termination fee shall be due and owing unless the Credit Facility has been terminated.

(g)  **Real Property or Ancillary Loans**.  Lender may make loans against real property owned by an Obligor and pledged to Lender to secure the Indebtedness, or loans which may be unsecured or secured by specific items of personal and/or real property. In connection therewith, such Obligor shall execute and deliver such Loan Documents and other instruments and documents as Lender shall require. Any such real property and ancillary loans are stated in Exhibit II.

3.  **Note, Rate and Computation of Interest**.  The Credit Facility shall be evidenced by a Note duly executed by Debtor and payable to the order of Lender, in form and substance acceptable to Lender. Interest on the Note shall accrue at the rates set forth therein. The principal of and interest on the Note shall be due and payable in accordance with the terms and conditions set forth in the Note and in this Agreement. All payments made by Debtor under this Agreement and the other Loan Documents shall be made to Lender at Lender's offices as set forth herein in Dollars and immediately available funds, without setoff, deduction or counterclaim, and free and clear of all taxes, at the time and in the manner provided in the Note. At Lender's request, Debtor shall execute subsequently to the Effective Date additional Notes which evidence specific advances under the Credit Facility.

4.  **Collateral**.

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 5 of 34
2134754.2

(a)     **Grant of Security Interest**.  As collateral security for the prompt payment in full when due (whether at stated maturity, by acceleration or otherwise) of the Indebtedness, each of Debtor and Grantor hereby pledges to and grants Lender, a security interest in, all of Debtor's and Grantor's right, title and interest in the Collateral, whether now owned by Debtor or Grantor or hereafter acquired and whether now existing or hereafter coming into existence.  If the security interest granted hereby in any rights of Debtor or Grantor under any contract or other agreement included in the Collateral is expressly prohibited by such contract, then the security interest hereby granted therein nonetheless remains effective to the extent allowed by Article 9 of the Code or other applicable law but is otherwise limited by that prohibition.

(b)     **Commercial Tort Claim**.  If Debtor or Grantor at any time holds or acquires a commercial tort claim, such Person shall notify Lender in writing within **FIVE (5)** Business Days of such occurrence with the details thereof and grant to Lender a security interest therein or lien thereon and in the proceeds thereof, in form and substance satisfactory to Lender.

(c)     **Debtor and Grantor Remain Liable**.  Notwithstanding anything to the contrary contained herein, (i) each of Debtor and Grantor shall remain liable under the contracts and agreements included in the Collateral to the extent set forth therein to perform all of its respective duties and obligations thereunder to the same extent as if this Agreement had not been executed; (ii) the exercise by Lender of any of its rights hereunder shall not release Debtor or Grantor from any of its duties or obligations under the contracts and agreements included in the Collateral and (iii) Lender shall not have any obligation or liability under any of the contracts and agreements included in the Collateral by reason of this Agreement, nor shall Lender be obligated to perform any of the obligations or duties of Debtor or Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.

(d)     **Intellectual Property**.  Each of Debtor and Grantor owns, or is licensed to use, all Intellectual Property necessary to conduct its business as currently conducted except for such Intellectual Property the failure of which to own or license could not reasonably be expected to have a Material Adverse Effect.  Each of Debtor and Grantor will maintain the patenting and registration of all Intellectual Property with the United States Patent and Trademark Office, the United States Copyright Office, or other appropriate Governmental Authority, and Debtor will promptly patent or register, as the case may be, all new Intellectual Property and notify Lender in writing **FIVE (5)** Business Days prior to filing any such new patent or registration.

(e)     **Additional Documents**.  To secure full and complete payment and performance of the Indebtedness, each of Debtor and Grantor shall execute and deliver or cause to be executed and delivered all the Loan Documents reasonably required by Lender covering the Collateral.  Each of Debtor and Grantor shall execute and cause to be executed such further documents and instruments, as Lender, in its reasonable discretion, deems necessary or desirable to create, evidence, preserve and perfect its liens and security interests in the Collateral, including stamping or taking like action with respect to any Sales or Lease Contracts as may be required by Lender.  In the event any of the Loan Documents evidencing or securing the Indebtedness misrepresents or inaccurately reflects the correct terms and/or provisions of the Indebtedness, each Obligor shall upon request by Lender and in order to correct such mistake, execute such new documents or initial corrected, original documents as Lender may deem reasonably necessary to remedy said errors or mistakes.  Each Obligor shall execute such other documents as Lender shall deem reasonably necessary to correct any defects or deficiencies in the Loan Documents.  Any Obligor's failure to execute such documents as requested shall constitute an Event of Default under this Agreement.

(f)     **Setoff**.  As further security for the Indebtedness, each Obligor grants to Lender a first lien and contractual right of set-off in and to all money and property of Obligor now or at any time hereafter coming within the custody or control of Lender, including (without limitation) all certificates of deposit and other accounts, whether such certificates of deposit and/or accounts have matured or not, and whether the exercise of such right of set-off results in loss of interest or other penalty under the terms of the certificate of deposit or account agreement. It is further agreed that Lender shall have a first lien on all deposits and other sums at any time credited by or due from Lender to Obligor as security for the payment of the Indebtedness, and Lender, at its option after the occurrence of a Default may without notice and without any liability, hold all or any part of any such deposits or other sums until all amounts owing under the Loan

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 6 of 34
2134754.2

Documents have been paid in full, and/or Lender may apply or set-off all or any part of any such deposits or other sums credited by or due from Lender to or against any sums due under the Loan Documents in any manner and in any order of preference which Lender, in its sole discretion, chooses. The rights and remedies of Lender hereunder are in addition to any other rights and remedies (including, without limitation, other rights of setoff) which Lender may have.

(g)     **Satisfaction of Indebtedness**. Until the Indebtedness has been indefeasibly paid and fully satisfied (other than contingent indemnification obligations to the extent no unsatisfied claim has been asserted) and the commitments of Lender under the Credit Facility have been terminated, Lender shall be entitled to retain the security interests in the Collateral granted under the Loan Documents and the ability to exercise all rights and remedies available to Lender under the Loan Documents and applicable laws.

5.     **Conditions Precedent**. The obligation of Lender to make any Loan shall be subject to the following conditions precedent:

(a)     **Request for Advance**. Lender shall have received in accordance with this Agreement, a request for advance as set forth in Exhibit IV, as further set forth in Section 2(b).

(b)     **Reserved.**

(c)     **Credit and Background Checks**. Lender shall have performed credit and background checks in connection with this Agreement on all of the Obligors.

(d)     **Licenses and Registrations**. Lender shall have received evidence that Debtor has a current "General Distinguishing Number," or similar number, if applicable, from the applicable state department governing Sales or Lease Contracts and an active "Dealers Sales Finance License" or similar number in good standing issued by the applicable state Office of Consumer Credit Commission, or any other applicable state or agency, and any and all other licenses or registrations that may be required by any federal, state or local jurisdiction.

(e)     **Fees and Expenses**. Lender shall have received evidence of, or be satisfied that, the costs and expenses of Lender (including reasonable attorneys' fees) and all fees owing to Lender, shall have been paid, or will be paid, in full by Debtor.

(f)     **No Default, Etc**. No Default or event which Lender believes could have a Material Adverse Effect shall have occurred and be continuing or would result from or after giving effect to such Loan.

(g)     **Representations and Warranties**. All of the representations and warranties contained in the Loan Documents shall be true and correct in material respects on and as of the date of such Loan with the same force and effect as if such representations and warranties had been made on and as of such date.

(h)     **Other Matters**. Such other documents and agreements as may be required by Lender in its reasonable discretion.

6.     **Representations and Warranties**. Each Obligor hereby represents and warrants, and upon each request for a Loan represents and warrants to Lender as follows:

(a)     **Existence**. Each Obligor that is not a natural person (i) is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization; (ii) has all requisite power and authority to own its assets and carry on its business as now being or as proposed to be conducted; and (iii) is qualified to do business in all jurisdictions in which the nature of its business makes such qualification necessary and where failure to so qualify would have a Material Adverse Effect. Each Obligor has the power and authority to execute, deliver, and perform its obligations under the Loan Documents to which it is or may become a party.

App. 049

(b)     **Binding Obligations**.  The execution, delivery, and performance of the Loan Documents by each Obligor have been duly authorized by all necessary action by such Obligor, and constitute legal, valid and binding obligations of such Obligor, enforceable in accordance with their respective terms, except as limited by bankruptcy, insolvency or similar laws of general application relating to the enforcement of creditors' rights and except to the extent specific remedies may generally be limited by equitable principles.

(c)     **No Consent**.  The execution, delivery and performance of the Loan Documents, and the consummation of the transactions contemplated thereby, do not (i) conflict with, result in a violation of, or constitute a default under (1) any provision of the Constituent Documents (if any) or other instrument binding upon any Obligor, (2) any law, governmental regulation, court decree or order applicable to any Obligor, or (3) any contractual obligation, agreement, judgment, license, order or permit applicable to or binding upon any Obligor, (ii) require the consent, approval or authorization of any third party, or (iii) result in or require the creation of any lien, charge or encumbrance upon any property or asset of any Obligor except as may be expressly contemplated in the Loan Documents.

(d)     **Financial Condition**.  Each financial statement of each Obligor supplied to Lender truly discloses and fairly presents such Person's financial condition as of the date of each such statement.  There has been no material adverse change in such financial condition or results of operations of any Obligor subsequent to the date of the most recent financial statement supplied to Lender.

(e)     **Operation of Business**.  Each of Debtor and Grantor possesses all contracts, licenses, permits, franchises, patents, copyrights, trademarks, and trade names, or rights thereto, necessary to conduct its businesses substantially as now conducted and as presently proposed to be conducted, and each of Debtor and Grantor is not in violation of any valid rights of others with respect to any of the foregoing, except any violations that could not reasonably be expected to have a Material Adverse Effect.

(f)     **Litigation and Judgments**.  Except as stated in Exhibit II, there is no action, suit, investigation, or proceeding before or by any Governmental Authority or arbitrator pending, or to the knowledge of any Obligor, threatened against or affecting such Obligor that would, if adversely determined, have a Material Adverse Effect.  There are no outstanding judgments against any Obligor.

(g)     **Criminal Charges**.  Neither Debtor nor any of Debtor's principals (i) has been in prison, (ii) has been convicted of any felony or other criminal action, or (iii) is under any current criminal investigation by any governmental agency, and neither Debtor nor any of Debtor's principals has any pending criminal charge, indictment or any other criminal action, other than a routine traffic violation, pending against them.

(h)     **Rights in Properties; Liens**.  Each of Debtor and Grantor has good and indefeasible title to or valid leasehold interests in its properties, including the properties and assets reflected in the financial statements provided to Lender, and none of the properties of Debtor or Grantor is subject to any lien, except Permitted Encumbrances.

(i)     **Debt**.  Debtor has no Debt other than the Permitted Debt.

(j)     **Disclosure**.  No statement, information, report, representation, or warranty made by any Obligor in the Loan Documents or furnished to Lender in connection with the Loan Documents or any of the transactions contemplated hereby contains any untrue statement of a material fact or omits to state any material fact necessary to make the statements herein or therein not misleading.  There is no fact known to any Obligor which could reasonably be expected to have a Material Adverse Effect that has not been disclosed in writing to Lender.

(k)     **Agreements**.  Debtor is not a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any charter or corporate or other organizational restriction which could reasonably be expected to have a Material Adverse Effect.  Debtor is not in default in any material respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement or instrument material to its business.

(l) **Compliance with Laws**. No Obligor is in violation of any law, rule, regulation, order or decree of any Governmental Authority or arbitrator, the violation of which could reasonably be expected to have a Material Adverse Effect.

(m) **Taxes; Governmental Charges**. Each Obligor has filed all federal, state and local tax reports and returns required by any law or regulation to be filed by it and has either duly paid all taxes, duties and charges indicated due on the basis of such returns and reports, or made adequate provision for the payment thereof, and the assessment of any material amount of additional taxes in excess of those paid and reported is not reasonably expected. No Obligor has knowledge of any pending investigation of such Obligor by any taxing authority or any pending but unassessed tax liability.

(n) **Use of Proceeds; Margin Securities**. Debtor is not engaged principally, or as one of its important activities, in the business of extending credit for the purpose of purchasing or carrying margin stock (within the meaning of regulations of the Board of Governors of the Federal Reserve System), and no part of the proceeds of any Loan will be used to purchase or carry any margin stock or to extend credit to others for the purpose of purchasing or carrying margin stock.

(o) **Security Interest**. Each of Debtor and Grantor has and will have at all times full right, power and authority to grant a security interest in the Collateral to Lender in the manner provided herein, free and clear of any lien, security interest or other charge or encumbrance other than for the Permitted Encumbrances. This Agreement creates a legal, valid and binding first priority security interest (subject to Permitted Encumbrances) in favor of Lender in the Collateral securing the Indebtedness. Possession by Lender of certain types of Collateral from time to time or the filing of the financing statements delivered prior hereto or concurrently herewith will perfect and establish the first priority of Lender's security interest hereunder in the Collateral (to the extent that perfection can be accomplished through the filing of a financing statement or the possession of such Collateral) other than for the Permitted Encumbrances.

7. **Affirmative Covenants**. Until all Indebtedness is indefeasibly paid or performed, and Lender has no further commitment to lend under the Credit Facility, each Obligor agrees and covenants as follows:

(a) **Payment of Obligations**. Debtor will pay its obligations, including tax liabilities, that, if not paid, could become a lien on any of its property, before the same shall become delinquent or in default, except where (i) the validity or amount thereof is being contested in good faith by appropriate proceedings, and (ii) Debtor has set aside on its books adequate reserves with respect thereto in accordance with GAAP.

(b) **Maintenance and Conduct of Business**. Debtor will (i) keep, maintain and preserve all property (tangible and intangible) material to the conduct of its business in good working order and condition, ordinary wear and tear excepted, (ii) do or cause to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, licenses, permits, privileges, agreements and franchises material to the conduct of its business, and (iii) engage in an efficient and economical manner in a business of the same general type and within Debtor's powers under Constituent Documents.

(c) **Books and Records; Inspection Rights**. Debtor will keep proper books of record and account in which full, true and correct entries are made of all dealings and transactions in relation to its business and activities. Debtor will permit any representatives designated by Lender, upon reasonable prior notice, to visit and inspect its properties, to examine and make extracts from its books and records, and to discuss its affairs, finances and condition with its officers and independent accountants, all at such reasonable times and as often as reasonably requested.

(d) **Insurance**. Debtor will maintain insurance deemed reasonably necessary by Lender, including, without limit open-lot coverage not less than the full replacement value of the Collateral. Each policy of insurance maintained by Debtor shall (i) name Debtor and Lender as insured parties thereunder (without any representation or warranty by or obligation upon Lender) as their interests may appear, (ii) contain the agreement by the insurer that any loss thereunder shall be payable to Lender notwithstanding any action, inaction or breach of representation or warranty by Debtor, and (iii) provide

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 9 of 34
2134754.2

prior written notice of cancellation or of lapse shall be given to Lender by the insurer in accordance with the insurer's commercial practices as adopted from time to time. Debtor will deliver to Lender original or duplicate policies of such insurance. Debtor will also, at the request of Lender, duly execute and deliver instruments of assignment of such insurance policies and cause the respective insurers to acknowledge notice of such assignment.

(e)     **Compliance with Laws**. Debtor will comply with all laws, rules, regulations and orders of any Governmental Authority applicable to it or its property, except where the failure to do so, individually or in the aggregate, could not reasonably be expected to result in a Material Adverse Effect.

(f)     **Compliance with Agreements**. Debtor will comply, in all material respects with all material agreements, contracts, and instruments binding on it or affecting its properties, assets or business.

(g)     **Notice of Indebtedness**. Debtor will promptly inform Lender of the creation, incurrence or assumption by Debtor of any actual or contingent liabilities not permitted under this Agreement.

(h)     **Notices of Material Events**. Debtor will furnish to Lender prompt written notice of the following:

          (i)     the occurrence of any Default;

          (ii)     the filing or commencement of any action, suit or proceeding by or before any arbitrator or Governmental Authority against any Obligor that, if adversely determined, could reasonably be expected to result in a Material Adverse Effect; and

          (iii)     any and all material adverse changes in any Obligor's financial condition and all claims made against any Obligor that could materially affect the financial condition of such Obligor.

Each notice delivered under this Section shall be accompanied by a statement of an officer of Debtor setting forth the details of the event or development requiring such notice and any action taken or proposed to be taken with respect thereto.

(i)     **Ownership and Liens**. Debtor and Grantor will maintain good and indefeasible title to the Collateral free and clear of all liens, security interests, encumbrances or adverse claims, except for Permitted Encumbrances. Debtor and Grantor will cause any financing statement or other security instrument with respect to the Collateral to be terminated, except for Permitted Encumbrances. Debtor and Grantor will defend at their expense Lender's right, title and security interest in and to the Collateral against the claims of any third party.

(j)     **Accounts and General Intangibles**. Debtor and Grantor will, except as otherwise provided herein, collect, at Debtor's own expense, all amounts due or to become due under each of the accounts and general intangibles. In connection with such collections, Debtor and Grantor may and, at Lender's direction, will take such action not otherwise forbidden herein as Debtor and Grantor or Lender may deem reasonably necessary or advisable to enforce collection or performance of each of the accounts and general intangibles. Debtor and Grantor will also duly perform and cause to be performed all of its material obligations with respect to the goods or services, the sale or lease or rendition of which gave rise or will give rise to each account and all of its obligations to be performed under or with respect to the general intangibles. Each of Debtor and Grantor also covenants and agrees to take any action and/or execute any documents that Lender may reasonably request in order to comply with law relating to the assignment of the accounts.

(k)     **Chattel Paper, Documents and Instruments**. Each of Debtor and Grantor will take such action as may be reasonably requested by Lender in order to cause any chattel paper, documents or instruments to be valid and enforceable and will cause all chattel paper, documents, and instruments to have only one original counterpart. Upon request by Lender, Debtor and Grantor will deliver to Lender all

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 10 of 34
2134754.2

originals of chattel paper, documents or instruments and unless such request is made, Debtor and Grantor will not deliver possession of such chattel paper, documents or instruments to any Person and will mark all chattel paper, documents or instruments with a legend indicating that such chattel paper, document or instrument is subject to the security interest granted hereunder.

(l) **Waivers and Consents Relating to Real Property Interests**. Upon the request of Lender, Debtor shall cause each mortgagee of real property owned by Debtor and each landlord of real property leased by Debtor to execute and deliver agreements satisfactory in form and substance to Lender by which such mortgagee or landlord (i) waives or subordinates any rights it may have in the Collateral, or (ii) consents to the mortgage or other encumbrance of Debtor's interest in such real property. With respect to landlords, the form attached hereto as Exhibit V shall be satisfactory to Lender.

(m) **Software**. Debtor shall license and properly utilize an approved DMS.

(m) **Additional Covenants**. Each of Debtor and Grantor shall comply with all terms, conditions and requirements set forth on Exhibit II.

8. **Negative Covenants**. Until all Indebtedness is indefeasibly paid or performed, and Lender has no further commitment to lend under the Credit Facility, Debtor agrees and covenants as follows:

(a) **Fundamental Change**. No Obligor will (i) make any material change in the nature of its business as carried on as of the Effective Date including (without limitation) **opening, closing, or changing business location(s)**; (ii) liquidate, merge or consolidate with or into any other Person; (iii) make a change in organizational structure, management, or the jurisdiction in which it is organized; or (iv) permit any change in its legal name, or the state of its organization to another jurisdiction.

(b) **OTHER CHANGES. DEBTOR WILL NOT, WITHOUT THE PRIOR WRITTEN CONSENT OF LENDER, (i) CREATE, INCUR OR ASSUME INDEBTEDNESS FOR BORROWED MONEY, INCLUDING CAPITAL LEASES, OTHER THAN INDEBTEDNESS EXPRESSLY PERMITTED BY THE LOAN DOCUMENTS, (ii) SELL, TRANSFER, MORTGAGE, ASSIGN, OR LEASE ANY ASSET OF DEBTOR, OR GRANT A SECURITY INTEREST IN OR ENCUMBER ANY OF DEBTOR'S ASSETS, IN EACH CASE EXCEPT AS SET FORTH IN EXHIBIT II, OR AS EXPRESSLY PERMITTED BY THE LOAN DOCUMENTS), OR (iii) SELL ANY OF DEBTOR'S ACCOUNTS**.

(c) **Debt**. Debtor will not create, incur, assume or permit to exist any Debt except for the following ("Permitted Debt"):

(i) The Indebtedness;

(ii) Debt which is expressly subordinated to the Indebtedness under a subordination agreement in form and substance acceptable to Lender, including but not limited to Debt;

(iv) Trade payables or similar obligations from time to time incurred in the ordinary course of business other than for borrowed money;

(v) Debt to Lender that is evidenced by a Loan and Security Agreement; and

(v) Debt permitted on Exhibit II.

(d) **Loans**. Debtor will not make loans or guarantee any obligation of any other Person except as permitted on Exhibit II.

(e) **Transactions With Affiliates**. Debtor will not enter into any transaction, including, without limitation, the purchase, sale or exchange of property or the rendering of any service, with any

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 11 of 34
2134754.2

Affiliate of Debtor, except in the ordinary course of and pursuant to the reasonable requirements of Debtor's business (upon prior written notice to Lender) and upon fair and reasonable terms no less favorable to Debtor than would be obtained in a comparable arm's-length transaction with a Person or entity not an Affiliate of Debtor.

(f) **Dividends or Distributions**. Without Lender's prior written consent, Debtor will not declare or pay any dividends or distributions, unless any such dividends or distributions are expressly permitted as set forth in Exhibit II.

(g) **Impairment of Security Interest**. Debtor and Grantor will not take any action that would in any manner impair the enforceability of Lender's security interest in any Collateral.

(h) **Compromise of Collateral**. Debtor and Grantor will not adjust, settle, compromise, amend or modify any Collateral, except an adjustment, settlement, compromise, amendment or modification in good faith and in the ordinary course of business; provided, however, this exception shall terminate following written notice from Lender upon the occurrence and during the continuation of an Event of Default. Debtor and Grantor shall provide to Lender such information concerning (i) any adjustment, settlement, compromise, amendment or modification of any Collateral, and (ii) any claim asserted by any account debtor for credit, allowance, adjustment, dispute, setoff or counterclaim, as Lender may reasonably request from time to time.

9. **Financial Metrics**. The financial metrics set forth in Exhibit II are performance guidelines Lender will consider in conjunction with any renewal or amendment of this Loan Agreement.

10. **Reporting Procedures**. The Reporting Procedure set forth in Exhibit II are performance guidelines Lender will consider in conjunction with any renewal or amendment of this Loan Agreement.

(a) Until all Indebtedness is indefeasibly paid and satisfied, and Lender has no further commitment to lend under the Credit Facility, each Obligor, and any retail dealership that conducts business with Debtor involving Qualified Collateral or Legacy Qualified Collateral, if applicable, shall make all reasonable efforts to provide certain reports to Lender as described in Exhibit II.

(b) Debtor hereby agrees that Lender may, from time to time in its reasonable discretion, require certain reporting requirements of any Obligor (in addition to those set forth in Exhibit II of this Agreement) in response to Lender's interpretation of, or implementation of precautionary measures relative to: (a) the introduction or adoption of, or any change in or in the interpretation, promulgation, implementation or administration of, (i) any law, ordinance, order, rule or regulation of a Governmental Authority, or (ii) any governmental or quasi-governmental rule, regulation, policy, guideline, interpretation or directive (whether or not having the force of law); or (b) compliance by Lender with any guideline or request from any Governmental Authority (as defined below) (whether or not having the force of law), including any request, rule, guideline or directive (i) in connection with the Dodd-Frank Wall Street Reform and Consumer Protection Act, or (ii) promulgated by Lender any United States financial regulatory authorities.

11. **Rights of Lender**. Lender shall have the rights contained in this Section at all times that this Agreement is effective.

(a) **Financing Statements**. Each of Debtor and Grantor hereby authorizes Lender to file one or more financing or continuation statements, and amendments thereto, relating to the Collateral. Each of Debtor and Grantor hereby irrevocably authorizes Lender at any time and from time to time to file in any Code jurisdiction any initial financing statements and amendments thereto that (i) indicate the Collateral (1) as all assets or words of similar effect; regardless of whether any particular asset comprised in the Collateral falls within the scope of Article 9 of the Code, or (2) as being of an equal or lesser scope or with greater detail, and (ii) contain any other information required by Article 9 of the Code for the sufficiency or filing office acceptance of any financing statement or amendment.

(b) **Power of Attorney**. Each Obligor hereby irrevocably appoints Lender as Obligor's attorney-in-fact, such power of attorney being coupled with an interest, with full authority in the place and stead of Obligor and in the name of Obligor or otherwise, from time to time in Lender's reasonable discretion, to take any action and to execute any instrument which Lender may deem necessary or appropriate to accomplish the purposes of this Agreement, including without limitation: (i) to obtain and adjust insurance required by Lender hereunder; (ii) to demand, collect, sue for, recover, compound, receive and give acquittance and receipts for moneys due and to become due under or in respect of the Collateral; (iii) to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with clause (i) or (ii) above; (iv) to file any claims or take any action or institute any proceedings which Lender may deem necessary or appropriate for the collection and/or preservation of the Collateral or otherwise to enforce the rights of Lender with respect to the Collateral; and (v) sell all or any part of the Collateral.

(c) **Reserved.**

(d) **Performance by Lender**. If any Obligor fails to perform any agreement or obligation provided for in any Loan Document, Lender may itself perform, or cause performance of, such agreement or obligation, and the expenses of Lender incurred in connection therewith shall be a part of the Indebtedness, secured by the Collateral and payable by Debtor on demand.

(e) **Audits**. Lender or its agents, vendors or contractors (including its lawyers and accountants) shall have the right to verify and/or audit various aspects of Obligor's business and representations, at the time and in the manner as solely determined by Lender, including but not limited to the right to:

(i) Access all of Obligor's data stored in Obligor's DMS systems and software, Obligor's document scanning; and

(ii) Perform legal, Collateral, compliance, financial and/or operational audits at the time of the loan origination and periodically thereafter, upon written request to Obligor, with all of Lender's cost of the audits to be paid solely by Obligor.

(iii) Perform periodic inspections of all assets, inventory, records, documents and any other information related to the Collateral.

(f) **Credit and Background Checks**. Lender has performed or will perform, and is authorized to perform, credit and background checks in connection with this Agreement on all of the Obligors, and Obligors further authorize Lender, in its sole and absolute discretion, to perform additional credit and background checks and rechecks at any time on any or all of the parties obligated hereunder.

12. **Accounts**.

(a) **Operating Account**. Debtor shall have or shall establish the Operating Account in its name that it will use for the operation of its business. Debtor hereby pledges the Operating Account to serve as collateral for the Indebtedness.

(b) **Reserved.**

13. **Events of Default**. Each of the following shall constitute an "Event of Default" under this Agreement:

(a) **Payment Default**. The failure, refusal or neglect of Debtor to pay when due any part of the principal of, or interest on the Indebtedness owing to Lender by Debtor or any other indebtedness or obligations due and owing from Debtor to Lender under the Loan Documents from time to time and such failure, refusal or neglect shall continue unremedied for **THREE (3)** days after written notice to Debtor of such failure.

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 13 of 34
21347754.2

(b) **Performance or Warranty Default**. Except as otherwise provided in this Agreement, the failure of any Obligor to timely and properly observe, keep or perform any covenant, agreement, warranty or condition required herein or in any of the other Loan Documents or any other agreement with Lender which is not cured within **FIFTEEN (15)** days following written notice from Lender to such Obligor.

(c) **Representations**. Any representation contained herein or in any of the other Loan Documents made by an Obligor is false, misleading or erroneous in any material respect when made or when deemed to have been made.

(d) **Default under other Debt**. The occurrence of any event which permits the acceleration of the maturity of any Debt for borrowed money owing by any Obligor to any third party under any agreement or understanding.

(e) **Insolvency**. If any Obligor (i) becomes insolvent, or makes a transfer in fraud of creditors, or makes an assignment for the benefit of creditors, or admits in writing its inability to pay its debts as they become due; (ii) generally is not paying its debts as such debts become due; (iii) has a receiver, trustee or custodian appointed for, or take possession of, all or substantially all of its assets, either in a proceeding brought by it or in a proceeding brought against it or it consents to or acquiesces in such appointment or possession; (iv) files a petition for relief under the United States Bankruptcy Code or any other present or future federal or state insolvency, Bankruptcy or similar laws (all of the foregoing hereinafter collectively called "Applicable Bankruptcy Law") or an involuntary petition for relief is filed against it under any Applicable Bankruptcy Law, or an order for relief naming it is entered under any Applicable Bankruptcy Law, or any composition, rearrangement, extension, reorganization or other relief of debtors now or hereafter existing is requested or consented to by it; or (v) fails to have discharged immediately any attachment, sequestration or similar writ levied upon any property of it.

(f) **Judgment**. The entry of any judgment against any Obligor or the issuance or entry of any attachments or other liens against any of the property of such Obligor for an amount in excess of **TEN THOUSAND AND NO/100 DOLLARS ($10,000.00)** (individually or in the aggregate) if (a) uninsured, undischarged, unbonded or undismissed on the date on which such judgment could be executed upon.

(g) **Action Against Collateral**. The Collateral or any portion thereof is taken on execution or other process of law in any action.

(h) **Death or Incompetence of an Obligor; Dissolution of Certain Person**. Any Obligor that is (i) a natural Person shall have died or have been declared incompetent by a court of proper jurisdiction, or (ii) not a natural Person shall have been dissolved, liquidated, or merged or consolidated with or into any other Person without the prior written consent of Lender.

(i) **Action of Lien Holder**. The holder of any lien or security interest on the Collateral (without hereby implying the consent of Lender to the existence or creation of any such lien or security interest on the Collateral), declares a default thereunder or institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

(j) **Material Adverse Effect**. Any event shall have occurred or is continuing which shall have had a Material Adverse Effect.

(k) **Loan Documents**. (i) The Loan Documents shall at any time after their execution and delivery and for any reason cease (1) to create a valid and perfected first priority security interest (subject to Permitted Encumbrances) in and to the Collateral; or (2) to be in full force and effect or shall be declared null and void, or (ii) the validity of enforceability the Loan Documents shall be contested by any Obligor or any other Person party thereto or any Obligor shall deny it has any further liability or obligation under the Loan Documents.

Nothing contained in this Agreement shall be construed to limit the events of default enumerated in any of the other Loan Documents and all such events of default shall be cumulative.

14.     **Remedies and Related Rights**.  If an Event of Default shall have occurred and be continuing, and without limiting any other rights and remedies provided herein, under any of the Loan Documents or otherwise available to Lender, Lender may exercise one or more of the rights and remedies provided in this Section.

(a)     **Remedies**.  Upon the occurrence of any one or more of the foregoing Events of Default, (i) the entire unpaid balance of principal of the Note, together with all accrued but unpaid interest thereon, and all other Indebtedness owing to Lender by Obligor at such time shall, at the option of Lender, become immediately due and payable without further notice, demand, presentation, notice of dishonor, notice of intent to accelerate, notice of acceleration, protest or notice of protest of any kind, all of which are expressly waived by Obligor, and (ii) Lender may, at its option, cease further advances under the Note and this Agreement; provided, however, concurrently and automatically with the occurrence of an Event of Default under Section 13(e) further advances under the Loan Documents shall automatically cease, the Indebtedness at such time shall, without any action by Lender, become due and payable, without further notice, demand, presentation, notice of dishonor, notice of acceleration, notice of intent to accelerate, protest or notice of protest of any kind, all of which are expressly waived by Obligor.  All rights and remedies of Lender set forth in this Agreement and in any of the other Loan Documents may also be exercised by Lender, at its option to be exercised in its sole discretion, upon the occurrence of an Event of Default, and not in substitution or diminution of any rights now or hereafter held by Lender under the terms of any other agreement.

(b)     **Other Remedies**.  Upon the occurrence of any one or more of the foregoing Events of Default, Lender may from time to time at its discretion, without limitation and without notice except as expressly provided in any of the Loan Documents:

(i)     Exercise in respect of the Collateral all the rights and remedies of a secured party under the Code (whether or not the Code applies to the affected Collateral);

(ii)     Require Obligor to, and Obligor hereby agrees that it will at its expense and upon request of Lender, assemble the Collateral as directed by Lender and make it available to Lender at a place to be designated by Lender which is reasonably convenient to both parties;

(iii)     Reduce its claim to judgment or foreclose or otherwise enforce, in whole or in part, the security interest granted hereunder by any available judicial procedure;

(iv)     Sell or otherwise dispose of, at its office, on the premises of Obligor or elsewhere, the Collateral (including vehicle inventory), as a unit or in parcels, by public or private proceedings, and by way of one or more contracts (it being agreed that the sale or other disposition of any part of the Collateral shall not exhaust Lender's power of sale, but sales or other dispositions may be made from time to time until all of the Collateral has been sold or disposed of or until the Indebtedness has been paid and performed in full), and at any such sale or other disposition it shall not be necessary to exhibit any of the Collateral;

(v)     Buy the Collateral, or any portion thereof, at any public sale;

(vi)     Buy the Collateral, or any portion thereof, at any private sale if the Collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations;

(vii)     Apply for the appointment of a receiver for the Collateral, and Obligor hereby consents to any such appointment; and

(viii)     At its option, retain the Collateral in satisfaction of the Indebtedness whenever the circumstances are such that Lender is entitled to do so under the Code or otherwise.

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 15 of 34
21347542

(c) **Application of Proceeds**. If any Event of Default shall have occurred and is continuing, Lender may at its discretion apply or use any cash held by Lender as Collateral, and any cash proceeds received by Lender in respect of any sale or other disposition of, collection from, or other realization upon, all or any part of the Collateral as follows in such order and manner as Lender may elect:

(i) to the repayment or reimbursement of the reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and expenses) incurred by Lender in connection with (1) the administration of the Loan Documents, (2) the custody, preservation, use or operation of, or the sale of, collection from, or other realization upon, the Collateral, and (3) the exercise or enforcement of any of the rights and remedies of Lender hereunder;

(ii) to the payment or other satisfaction of any liens and other encumbrances upon the Collateral;

(iii) to the satisfaction of the Indebtedness;

(iv) by holding such cash and proceeds as Collateral;

(v) to the payment of any other amounts required by applicable law; and

(vi) by delivery to Obligor or any other party lawfully entitled to receive such cash or proceeds whether by direction of a court of competent jurisdiction or otherwise.

(d) **License**. Lender is hereby granted a license or other right to use, following the occurrence and during the continuance of an Event of Default, without charge, Obligor's labels, patents, copyrights, rights of use of any name, trade secrets, trade names, trademarks, service marks, customer lists and advertising matter, or any property of a similar nature, as it pertains to the Collateral, in completing production of, advertising for sale, and selling any Collateral, and, following the occurrence and during the continuance of an Event of Default, Obligor's rights under all licenses and all franchise agreements shall inure to Lender's benefit. In addition, Obligor hereby irrevocably agrees that Lender may, following the occurrence and during the continuance of an Event of Default, sell any of Obligor's inventory directly to any Person, including without limitation Persons who have previously purchased Obligor's inventory from Obligor and in connection with any such sale or other enforcement of Lender's rights under this Agreement, may sell inventory which bears any trademark owned by or licensed to Obligor and any inventory that is covered by any copyright owned by or licensed to Obligor and Lender may finish any work in process and affix any trademark owned by or licensed to Obligor and sell such inventory as provided herein.

(e) **Deficiency**. In the event that the proceeds of any sale of, collection from, or other realization upon, all or any part of the Collateral by Lender are insufficient to pay all amounts to which Lender is legally entitled, each Obligor (unless otherwise provided) shall be liable for the deficiency, together with interest thereon as provided in the Loan Documents.

(f) **Non-Judicial Remedies**. In granting to Lender the power to enforce its rights hereunder without prior judicial process or judicial hearing, Obligor expressly waives, renounces and knowingly relinquishes any legal right which might otherwise require Lender to enforce its rights by judicial process. Obligor recognizes and concedes that non-judicial remedies are consistent with the usage of trade, are responsive to commercial necessity and are the result of a bargain at arm's length. Nothing herein is intended to prevent Lender or Obligor from resorting to judicial process at either party's option.

(g) **Use and Possession of Certain Premises**. Upon the occurrence of an Event of Default, Lender shall be entitled to occupy and use any premises owned or leased by Obligor where any of the Collateral or any records relating to the Collateral are located until the Indebtedness is paid or the Collateral is removed therefrom, whichever first occurs, without any obligation to pay Obligor for such use and occupancy.

**App. 058**

(h)     **Other Recourse**.  Each Obligor waives any right to require Lender to proceed against any third party, exhaust any Collateral or other security for the Indebtedness, or to have any third party joined with Obligor in any suit arising out of the Indebtedness or any of the Loan Documents, or pursue any other remedy available to Lender. Each Obligor further waives any and all notice of acceptance of this Agreement and of the creation, modification, rearrangement, renewal or extension of the Indebtedness. Each Obligor further waives any defense arising by reason of any disability or other defense of any third party or by reason of the cessation from any cause whatsoever of the liability of any third party. Until all of the Indebtedness shall have been paid in full, Obligor shall have no right of subrogation and each Obligor waives the right to enforce any remedy which Lender has or may hereafter have against any third party, and waives any benefit of and any right to participate in any other security whatsoever now or hereafter held by Lender. Each Obligor authorizes Lender, and without notice or demand and without any reservation of rights against such Obligor and without affecting such Obligor's liability hereunder or on the Indebtedness to (i) take or hold any other property of any type from any third party as security for the Indebtedness, and exchange, enforce, waive and release any or all of such other property, (ii) apply such other property and direct the order or manner of sale thereof as Lender may in its discretion determine, (iii) renew, extend, accelerate, modify, compromise, settle or release any of the Indebtedness or other security for the Indebtedness, (iv) waive, enforce or modify any of the provisions of any of the Loan Documents executed by any third party, and (v) release or substitute any third party.

(i)     **No Waiver; Cumulative Remedies**.  No failure on the part of Lender to exercise and no delay in exercising, and no course of dealing with respect to, any right, power, or privilege under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power, or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies provided for in this Agreement and the other Loan Documents are cumulative and not exclusive of any rights and remedies provided by law.

(j)     **Equitable Relief**.  Obligor recognizes that in the event Obligor fails to pay, perform, observe, or discharge any or all of the Indebtedness, any remedy at law may prove to be inadequate relief to Lender.  Obligor therefore agrees that Lender, if Lender so requests, shall be entitled to temporary and permanent injunctive relief in any such case without the necessity of proving actual damages.

15.     **Cross-Collateralization and Cross-Default**.  Obligor and Lender contemplate that Obligor and Lender and/or its Affiliates have engaged or may, from time to time engage, in various loan transactions and that from time to time other circumstances may arise, in which Obligor becomes obligated to Lender, including transactions of a type that are very different from the transactions evidenced by the Loan Documents, including by notes, advances, overdrafts, bookkeeping entries, guaranty agreements, deeds of trust, or any other method or means (each a "Loan Obligation").  OBLIGOR AND LENDER AGREE THAT EACH LOAN OBLIGATION WILL BE SECURED BY THE COLLATERAL HEREUNDER, AND THAT THE INDEBTEDNESS ARISING UNDER THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS WILL BE SECURED BY ANY AND ALL COLLATERAL GRANTED IN CONNECTION WITH A LOAN OBLIGATION (SUCH COLLATERAL GRANTED IN CONNECTION WITH A LOAN OBLIGATION, BEING THE "*LOAN OBLIGATION COLLATERAL*").  EACH OBLIGOR HEREBY GRANTS A LIEN IN THE COLLATERAL AND THE LOAN OBLIGATION COLLATERAL TO SECURE THE INDEBTEDNESS AND EACH LOAN OBLIGATION.  Repayment of all Indebtedness and performance of all other obligations under this Agreement by Obligor shall not terminate Lender's security interests in the Collateral, unless Lender executes a written release.  If any default occurs under any Loan Obligation, then Lender may declare an Event of Default.  An Event of Default shall be a default under such Loan Obligation.  Lender's failure to exercise cross-defaults shall not constitute a waiver by Lender of such right.  This Agreement shall be further cross-collateralized and cross-defaulted as set forth in Exhibit II.

16.     **Indemnity**.  Each Obligor hereby indemnifies and agrees to hold harmless Lender, and its officers, directors, employees, agents and representatives (each an "Indemnified Person") from and against any and all liabilities, obligations, claims, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature (collectively, the "Claims") which may be imposed on, incurred by, or asserted against, any Indemnified Person arising in connection with the Loan Documents, the Indebtedness or the Collateral (including without limitation, the enforcement of the Loan Documents and the defense of any Indemnified Person's

actions and/or inactions in connection with the Loan Documents). **WITHOUT LIMITATION, THE FOREGOING INDEMNITIES SHALL APPLY TO EACH INDEMNIFIED PERSON WITH RESPECT TO ANY CLAIMS WHICH IN WHOLE OR IN PART ARE CAUSED BY OR ARISE OUT OF THE NEGLIGENCE OF SUCH INDEMNIFIED PERSON, EXCEPT TO THE LIMITED EXTENT THE CLAIMS AGAINST AN INDEMNIFIED PERSON ARE PROXIMATELY CAUSED BY SUCH INDEMNIFIED PERSON'S GROSS NEGLIGENCE OR WILLFUL MISCONDUCT**. If Obligor or any third party ever alleges such gross negligence or willful misconduct by any Indemnified Person, the indemnification provided for in this Section shall nonetheless be paid upon demand, subject to later adjustment or reimbursement, until such time as (a) a court of competent jurisdiction enters a final judgment as to the extent and effect of the alleged gross negligence or willful misconduct, or (b) Lender has expressly agreed in writing with Obligor that such Claim is proximately caused by such Indemnified Person's gross negligence or willful misconduct. The indemnification provided for in this Section shall survive the termination of this Agreement and shall extend and continue to benefit each individual or entity that is or has at any time been an Indemnified Person hereunder.

17. **Limitation of Liability**. Neither Lender nor any officer, director, employee, attorney, or agent of Lender shall have any liability with respect to, and Obligor hereby waives, releases, and agrees not to sue any of them upon, any claim for any special, indirect, incidental, or consequential damages suffered or incurred by Obligor in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents. Obligor hereby waives, releases, and agrees not to sue Lender or any of Lender's Affiliates, officers, directors, employees, attorneys, or agents for punitive damages in respect of any claim in connection with, arising out of, or in any way related to, this Agreement or any of the other Loan Documents, or any of the transactions contemplated by this Agreement or any of the other Loan Documents.

18. **No Duty**. All attorneys, accountants, appraisers, and other professional Persons and consultants retained by Lender shall have the right to act exclusively in the interest of Lender and shall have no duty of disclosure, duty of loyalty, duty of care, or other duty or obligation of any kind or nature whatsoever to any Obligor or any of any Obligor's equity holders or any other Person. Each Obligor has been advised to seek other legal counsel to represent each Obligor's interests in connection with the transactions contemplated herein.

19. **Lender not Fiduciary**. The relationship between Obligors and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with any Obligor, and no term or condition of any of the Loan Documents shall be construed so as to deem the relationship between any Obligor and Lender to be other than that of debtor and creditor.

20. **No Waiver; Agreement**. Neither the failure nor any delay on the part of Lender to exercise any right, power or privilege herein or under any of the other Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege. No waiver of any provision in this Agreement or in any of the other Loan Documents and no departure by any Obligor therefrom shall be effective unless the same shall be in writing and signed by Lender, and then shall be effective only in the specific instance and for the purpose for which given and to the extent specified in such writing. No modification or amendment to this Agreement or to any of the other Loan Documents shall be valid or effective unless the same is signed by the party against whom it is sought to be enforced.

21. **Benefits**. This Agreement shall be binding upon and inure to the benefit of Lender and Obligors, and their respective heirs, personal representatives, successors and assigns, provided, however, that no Obligor may, without the prior written consent of Lender, assign any rights, powers, duties or obligations under this Agreement or any of the other Loan Documents.

22. **Notices**. All notices, requests, demands or other communications required or permitted to be given pursuant to this Agreement shall be in writing and given by (a) electronic mail, (b) personal delivery, (c) expedited delivery service with proof of delivery, or (d) United States mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth on the signature page hereof and shall be deemed to have been received either, in the case of personal delivery, as of the time of personal delivery, in the case of expedited delivery service, as of the time of the expedited delivery and in the manner

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 18 of 34
2134754.2

**App. 060**

provided herein, or in the case of mail, upon the **THIRD (3ʳᵈ)** day after deposit in a depository receptacle under the care and custody of the United States Postal Service. Any party shall have the right to change its address for notice hereunder to any other location within the continental United States by notice to the other party of such new address.

23. **Construction; Venue; Service of Process**. The Loan Documents have been executed and delivered in the State of Texas, shall be governed by and construed in accordance with the laws of the State of Texas, and shall be performable by the parties hereto in the county in Texas where Lender's address set forth on Lender's signature page hereof is located (the "Venue Site"). Any action or proceeding against any Obligor under or in connection with any of the Loan Documents may be brought in any state or federal court within the Venue Site. Each Obligor hereby irrevocably (a) submits to the nonexclusive jurisdiction of such courts, and (b) waives any objection it may now or hereafter have as to the venue of any such action or proceeding brought in any such court or that any such court is an inconvenient forum. Each Obligor agrees that service of process upon it may be made by certified or registered mail, return receipt requested, at its address specified or determined in accordance with the provisions of this Agreement. Nothing in any of the other Loan Documents shall affect the right of Lender to serve process in any other manner permitted by law or shall limit the right of Lender to bring any action or proceeding against any Obligor or with respect to any of its property in courts in other jurisdictions. Any action or proceeding by any Obligor against Lender shall be brought only in a court located in the Venue Site.

24. **Invalid Provisions**. If any provision of the Loan Documents is held to be illegal, invalid or unenforceable under present or future laws, such provision shall be fully severable and the remaining provisions of the Loan Documents shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance.

25. **Expenses**. Debtor shall pay all reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) in connection with (a) the drafting and execution of the Loan Documents and the transactions contemplated therein, (b) any action required in the course of administration of the Indebtedness and obligations evidenced by the Loan Documents, and (c) any action in the enforcement of Lender's rights upon the occurrence of an Event of Default.

26. **Participation of the Loans**. Debtor agrees that Lender may, at its option, sell interests in the Loans and its rights under this Agreement and, in connection with each such sale, Lender may disclose any financial and other information available to Lender concerning Debtor to each prospective purchaser subject to obtaining a confidentiality agreement with each prospective purchaser prior to disclosing Debtor's confidential information. In connection therewith, each Obligor shall execute and deliver or cause to be executed and delivered all of the notes, instrument, documents and other agreements reasonably required by Lender to effectuate the sale of such interests.

27. **Conflicts**. Except as otherwise expressly provided in the Note, in the event any term or provision of this Agreement is inconsistent with or conflicts with any provision of the other Loan Documents, the terms and provisions contained in this Agreement shall be controlling.

28. **Counterparts**. The Loan Documents may be separately executed in any number of counterparts, each of which shall be an original, but all of which, taken together, shall be deemed to constitute one and the same instrument.

29. **Survival**. All representations and warranties made in the Loan Documents or in any document, statement, or certificate furnished in connection with this Agreement shall survive the execution and delivery of the Loan Documents, and no investigation by Lender or any closing shall affect the representations and warranties or the right of Lender to rely upon them.

30. **Waiver of Right to Trial by Jury**. **THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, PROCEEDING, OR COUNTERCLAIM THAT RELATES TO OR ARISES OUT OF THE LOAN DOCUMENTS OR THE ACTS OR FAILURE TO ACT OF OR BY LENDER IN THE ENFORCEMENT OF ANY OF THE TERMS OR PROVISIONS OF THIS AGREEMENT OR THE OTHER LOAN DOCUMENTS.**

31.     **Patriot Act Notice**.  Lender hereby notifies each Obligor that pursuant to the requirements of Section 326 of the USA Patriot Act of 2001, 31 U.S.C. § 5318, that Lender is required to obtain, verify and record information that identifies such Obligor, which information includes the name and address of such Obligor and other information that will allow such Lender to identify such Obligor in accordance with Section 326 of the USA Patriot Act of 2001, 31 U.S.C. § 5318.

32.     **Notice of Final Agreement**.  It is the intention of each Obligor and Lender that the following **NOTICE OF FINAL AGREEMENT** be incorporated by reference into each of the Loan Documents (as the same may be amended, modified or restated from time to time).  Each Obligor and Lender warrant and represent that the entire agreement made and existing by or among each Obligor and Lender with respect to the Loans is and shall be contained within the Loan Documents, and that no agreements or promises exist or shall exist by or among, any Obligor and Lender that are not reflected in the Loan Documents.

## NOTICE OF FINAL AGREEMENT

**THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES, AND THE SAME MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS BETWEEN THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

**AGREED** as of the Effective Date.

**LENDER:**

GRANTING HANDS, LLC

By: _____
Name:  Stephen Raggio
Title:  [ ]

**ADDRESS:**

14801 Quorum Drive, #300
Attn: Brayden Harris
Dallas, TX75254

**DEBTOR/GRANTOR:**

**ADDRESS:**

RAD EXOTICS, LLC

By: _____
Name:  Justin Spencer
Title:  Manager

[ ]
[ ]

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 21 of 34
2134754.2

**EXHIBIT I TO LOAN AND SECURITY AGREEMENT**

**FLOOR PLAN CREDIT FACILITY**

1.      **Defined Terms**.  As used in this Agreement, all exhibits, appendices and schedules hereto, and in any other Loan Documents made or delivered pursuant to this Agreement, the following terms will have the meanings given such terms in this Section 1 or in the provisions, sections or recitals herein:

"Curtailed Floor Plan Advance Limit" means that the Initial Floor Plan Advance Limit shall be reduced by **10.00%** following the **90th** day after the motor vehicle's Curtailment Start Date, and by an additional **10.00%** following the **120th** day after the motor vehicle Curtailment Start Date, and further, the amount advanced on any motor vehicle by Lender shall be repaid to Lender in full upon the earlier of: (i) the sale of the motor vehicle; or (ii) the **180th** day after the motor vehicle Curtailment Start Date, if the motor vehicle is not sold.  The foregoing notwithstanding, with respect to Repossessed Vehicles, the Initial Floor Plan Advance Limit will be reduced to **0.00%** following the **90th** day after the motor vehicle's Curtailment Start Date, and the amount advanced on any Repossessed Vehicle or Trade-in Vehicle by Lender shall be repaid to Lender in full upon the earlier of: (i) the sale of the motor vehicle; or (ii) the **91st** day after the motor vehicle Curtailment Start Date, if the motor vehicle is not sold.

"Curtailment Start Date" means: (a) with respect to any purchased motor vehicle, from the date of said auction or purchase date, whether floored at that date or later; (b) with respect to currently owned inventory, the date of said advance of payoff value to payoff third-party lender, (c) with respect to any Repossessed Vehicle, the date of the title application for such Repossessed Vehicle; and (d) with respect to any Trade-in Vehicle, the date recorded in the DMS.

"Floor Plan Advance" means an advance under the Floor Plan Credit Facility (defined below).

"Initial Floor Plan Advance Limit" means: (i) with respect to any purchased motor vehicle (including from auctions, wholesalers or otherwise for cash), the lesser of (a) **100.00%** of the actual documented cash cost of the vehicle, and (b) **$250,000.00**, including documented auction fees and transportation costs but excluding any and all Make Ready Cost or any cost other than the actual cost to purchase the motor vehicle, (ii) with respect to inventory currently owned and for which Lender has been requested to directly pay the outstanding debt to third-party lender, **100%** of the payoff value as of effective date, and (iii) with respect to repossessed or trade-in vehicles, the lesser of (a) **100.00%** of the mileage adjusted (but not option adjusted) NADA average-condition trade-in value of the vehicle, or (b) the lesser of (1) the actual cash value as required to be recorded in the DMS, and (2) **$250,000.00**.

"Qualified Floor Plan Collateral" shall consist of: (i) with respect to any purchased motor vehicle, those vehicles which are in Debtor's possession and for which Lender has received an original auction slip, original non-auction bill of sale or original title; and (ii) with respect to Repossessed Vehicles or Trade-in Vehicles, those vehicles which are in Debtor's possession and for which Lender has received proof of the release of all pre-existing liens.  In the case of all vehicles considered as Qualified Floor Plan Collateral, an original title (or the functional electronic equivalent for Governmental Authorities that utilize paperless vehicle titles) or lien release shall be provided to Lender no more than 30 days from the date of purchase or repossession or Trade-in and must not be of flood damaged, salvage or other substandard title condition.  If such title or lien release is not timely received, the vehicle shall be excluded from the Qualified Floor Plan Collateral.

2.      **Floor Plan Credit Facility**.  Subject to the terms and conditions set forth in this Agreement and the other Loan Documents, Lender hereby agrees to make Loans to Debtor under a floor plan credit facility (the "Floor Plan Credit Facility") to finance Qualified Floor Plan Collateral in an aggregate sum not to exceed the "Maximum Floor Plan Amount" set forth in Exhibit II, on a revolving basis from time to time during the period commencing on the Effective Date and continuing until the earliest of: (i) the acceleration of the Indebtedness pursuant to the terms of the Loan Documents; or (ii) the Maturity Date set forth in Exhibit II.  No individual Floor Plan Advance shall exceed the Initial Floor Plan Advance Limit on the date of its extension or the Curtailed Floor Plan Advance Limit at any applicable time of payment.

3.      **Overadvances**.  If at any time the sum of the aggregate principal amount of Loans outstanding under the Floor Plan Credit Facility exceeds either the aggregate Curtailed Floor Plan Advance Limit for the motor
LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 22 of 34
2134754.2

vehicles under which advances have been made or the Maximum Floor Plan Amount (less any required reserves), such amount shall be deemed a "Floor Plan Overadvance." At any time there is an Overadvance and for so long as such Overadvance remains unpaid, the Rate (as defined in the Note) on the unpaid principal balance of the Note may be increased without advance notice to Debtor at Lender's discretion up to the lesser of (i) **18.00%**, or (ii) the **MAXIMUM RATE** (as defined in the Note). Upon a Floor Plan Overadvance, Lender may: (a) reserve such amount against the Credit Facility; or (b) cause Debtor to repay the amount of such Floor Plan Overadvance plus all accrued and unpaid interest thereon upon written demand from Lender. If a Floor Plan Overadvance exists, Debtor shall immediately pay to Lender any amount necessary to cure the Floor Plan Overadvance. Notwithstanding anything contained herein to the contrary, a Floor Plan Overadvance shall be considered a Loan and shall bear interest at the interest rates set forth in the Floor Plan Note evidencing the Floor Plan Credit Facility and be secured by this Agreement. Subject to the terms and conditions hereof, Debtor may borrow, repay and reborrow funds under the Floor Plan Credit Facility.

4. **Sold Vehicles**. Sold vehicles shall not be given credit under the Floor Plan Credit Facility (including vehicles sold while pending funding).

5. **Funding**. Debtor shall provide Lender not less than **3** Business Days prior written notice of its request for a Loan under the Floor Plan Credit Facility, specifying the aggregate amount of such Loan, and together with any documentation relating thereto as Lender may reasonably request, including, without limitation, a form of advance request in the form set forth on Exhibit IV hereto. Each funding request shall otherwise be made in accordance with Section 2(b) of this Agreement.

6. **Payment of Interest and Fees**. On a weekly basis, Lender may invoice (via email) Debtor and, within 24 hours of the Lender's invoice, Debtor shall pay the interest and fees on the Loans and any other amounts (such as Floor Plan Overadvances) owing from Debtor.

7. **Fees**. Debtor agrees to pay to Lender a collateral processing fee set forth in Exhibit II for each vehicle against which a Floor Plan Advance is made. Debtor agrees to reimburse Lender for all expenses incurred in connection with this Credit Facility, including, but not limited to shipping costs and banking fees. Debtor shall bear the cost of periodic floor plan checks as completed by Lender's preferred vender. Floor Plan Audits shall be performed periodically (typically, once each month) and shall confirm the existence and condition (and whereabouts) of all vehicles included in the Floor Plan Credit Facility. Any vehicle that is not available for inspection on site must be documented by Debtor. Such documentation must include (i) a copy of driver's license, contact information and insurance card for any vehicle on a test drive or (ii) contact information and name of contact person at any off site location where a vehicle is being repaired or refurbished.

8. **Reserved.**

9. **Dealer Management System Data.** All Repossessed Vehicles and Trade-in Vehicles shall be recorded in the DMS at actual cash value based on condition of vehicle at the time of repossession or trade-in. All "Make Ready" costs shall be recorded in the DMS as separate line item(s) and not comingled with the actual cash cost of the vehicle, including auction fees and transportation. Such Make Ready expenses will not be included in the Floor Plan Advance. The purchase cost and date used in the DMS shall be the cost and date on which the vehicle was originally purchased or repossessed. All Repossessed Vehicles shall be conspicuously indicated as such in the DMS.

10. **Note, Rate and Computation of Interest**. The Floor Plan Credit Facility shall be evidenced by a Note duly executed by Debtor and payable to the order of Lender, in form and substance acceptable to Lender. Interest on the Note shall accrue at the rates set forth therein. The principal of and interest on the Note shall be due and payable in accordance with the terms and conditions set forth in the Note and in this Agreement. All payments made by Debtor under this Agreement and the other Loan Documents shall be made to Lender at Lender's offices as set forth herein in Dollars and immediately available funds, without setoff, deduction or counterclaim, and free and clear of all taxes, at the time and in the manner provided in the Note.

App. 065

**EXHIBIT II**
**TO**
**LOAN AND SECURITY AGREEMENT**

**SPECIFIC TERMS AND CONDITIONS**

1.  Exceptions to Collateral Pledged (Section 1—"Collateral" definition): **None**

2.  Dealer Management System (Section 1—"DMS" definition): **Any approved DMS, on a web hosted basis, on terms and conditions acceptable to Lender in its sole discretion.** Among other usages, Debtor shall fully employ the DMS to record all necessary data to support the development of accurate financial results according to Generally Accepted Accounting Principles (GAAP). This shall include the costs to purchase each vehicle, as well as the Documented Reconditioning Costs for each vehicle. Lender shall require a sample of proof of cost each month for items including: (a) the acquisition cost, (b) Repossessions restocked at mileage adjusted NADA average trade value without option adjustments, and (c) actual recondition expenses at cost, none of which may include overhead (PACK). Lender must agree to any changes to this criterion in writing in advance.

3.  **Maximum Floor Plan Amount (Exhibit I): $3,000,000.00**

4.  Maturity Date (Section 2(a)): **MARCH 1, 2023**

5.  Initial Loan Amount (Section 2(b)): Up to the Maximum Amount as long as supported by sufficient Qualified Floor Plan Collateral

6.  Effective Date Origination Fee (Section 2(e)(i)): **None**

7.  Termination Fee (Prepayment) (Section 2(f)): **None**

8.  Collateral Processing Fee (Exhibit I): **None** .

9.  Advances Against Real Property (Section 2(g)): **None**

10. Ancillary Loans to Debtor (Section 2(g)): **None**

11. Adverse Conditions (Section 6(f)): **None**

12. Exceptions to Negative Covenant—Liens or Sale of Assets ("Permitted Liens" definition and Section 8(b)) and Debt (Section 8(c)): Any Indebtedness or lien arising out of any other credit facility with Lender.

13. Exceptions to Negative Covenant—Loans (Section 8(d)): **None**

14. Exceptions to Negative Covenant—Dividends or Distributions (Section 8(f)): Allowed in the normal course of business as long as such dividends and distributions do not result in any current or prospective default under the provisions of this Agreement.

15. Reserved.

16. Debtor shall deposit all funds received in cash sales of inventory including, but not limited to, retail, wholesale, auction, and third-party finance sales into the **Operating Account.**

17. Reporting Procedures (Section 10):

      (a)    **Monthly Financial Statements** prepared internally with year-to-date figures and in accordance with GAAP, within **30** days of month end.

      (b)    **Consolidated Financial Statements** for Debtor's fiscal year, within **120** days after fiscal

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 24 of 34
2134754.2

year end, **reviewed** by a certified public accountant reasonably acceptable to Lender

(c)     **Annual tax returns** for Debtor and all Guarantors within **10** days of filing.

(d)     **IRS Forms 941 and 940**, and accompanying proof of employment tax payments, within **10** days of the end of each quarter.

(e)     Reserved.

(f)     **Compliance Certificate** shall be submitted electronically or otherwise by Debtor to Lender monthly along with its monthly financial statements.

19.     Cross Collateralization and Cross-Default (Section 15): **All Debt of Obligors to Lender and Lender's Affiliates**.

20.     Other:

    (a)     Dealer Management System Data Accuracy and Accessibility.

       (i)     Debtor shall maintain records of and accurately enter into Debtor's DMS, among other things, the purchase price for each item of Qualified Floor Plan Collateral, all Documented Reconditioning Costs, and accurate valuation information for all repossessed vehicles. Lender has the right at any time to request, audit and verify documents supporting any purchase price, Documented Reconditioning Costs and/or Debtor's valuation of any repossessed vehicle, and to exclude any Documented Reconditioning Costs or otherwise modify the Initial Floor Plan Advance Limit or Curtailed Floor Plan Advance Limit if the purchase price, Documented Reconditioning Costs or valuations are not being properly documented. **Debtor's failure to properly document in its DMS the purchase price for each item of Qualified Floor Plan Collateral, all Documented Reconditioning Costs, and accurate valuation information for all repossessed vehicles, as determined by Lender in its sole discretion, shall constitute an Event of Default under this Agreement**. "Documented Reconditioning Costs" means Debtor's direct costs to bring a vehicle into retail sales-ready condition, including the actual Dollar amount spent by Debtor on parts that are used on a specific vehicle, along with the labor to install those parts. Debtor shall timely enter all Documented Reconditioning Costs in its DMS. Debtor shall keep records and receipts of every item included as a Documented Reconditioning Cost, and Lender reserves the right to audit such records and receipts and exclude any items that are not properly documented or recorded.

       (ii)     Reserved.

       (iii)     Reserved.

(b)     Obligors will not, without Lender's prior written consent, directly or indirectly issue, transfer, sell or otherwise dispose of, or part with control of, or permit the transfer of, any equity interests in Debtor, other than transfers to Lender.

(c)     Debtor's business practices and all Qualified Floor Plan Collateral shall be compliant with State and Federal laws governing Debtor's business, including, within limitation CFPB regulations.

**EXHIBIT III**
**TO**
**LOAN AND SECURITY AGREEMENT**

**COMPLIANCE CERTIFICATE**

**FOR MONTH ENDED/DRAW REQUEST DATE**: _____ (THE "SUBJECT PERIOD")

**LENDER:**  **GRANTING HANDS, LLC**

**DEBTOR:**  **RAD EXOTICS LLC**

This certificate is delivered under that certain **LOAN AND SECURITY AGREEMENT** (the "Loan Agreement"), originally dated effective as of **FEBRUARY __, 2021**, between Debtor, the other parties thereto, and Lender. I certify to Lender that, on the date of this certificate: (a) the financial statements of Debtor attached to this certificate were prepared as required by the Loan Agreement, and present fairly the financial condition and results of operations of Debtor as of the end of and for the Subject Period; (b) no Default or Event of Default currently exists or has occurred which has not been cured or waived by Lender; and (c) except as listed in paragraph 21 below ("Exceptions"), Debtor has been, is, commits to be, and expects to continue to be fully compliant with the following covenants of the Loan Agreement as set forth below:

|  |  | In Compliance as of End of Subject Period (Underline Yes or No) |  |
|---|---|---|---|
| 1. | **Financial Statements and Reports** | | |
| | (a) **Consolidated Financial Statements** prepared internally with year-to-date figures and in accordance with GAAP, within **30** days of each month's end. | Yes | No |
| | (b) **Consolidated Financial Statements** for Debtor's fiscal year, within **120** days after fiscal year end, **audited and certified without qualification** by a certified public accountant reasonably acceptable to Lender. | Yes | No |
| | (c) **Annual tax returns** for Debtor and all Guarantors within **10** days of filing. | Yes | No |
| | (d) **IRS Forms 941 and 940** within **10** days of the end of each quarter. | Yes | No |
| | (e) Reserved. | | |
| | (f) **Compliance Certificate** shall be submitted electronically or otherwise by Debtor to Lender monthly along with its monthly financial statements. | Yes | No |
| 2. | **Financial Condition** | | |
| | Each financial statement of each Obligor supplied to Lender truly discloses and fairly presents such Person's financial condition as of the date of each such statement. There has been no material adverse change in such financial condition or results of operations of any Obligor subsequent to the date of the most recent financial statement supplied to Lender. | Yes | No |
| 3. | **Compliance with Audit** | | |
| | Any and all deficiencies have or will be corrected which were or may be discovered in any financial, operational and/or compliance audit as provided for in the Loan | Yes | No |

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 26 of 34
2134754.2

Agreement.

4.  **Litigation and Judgments**

    Except as stated in <u>Exhibit II</u>, there is no action, suit, investigation, or proceeding before or by any Governmental Authority or arbitrator pending, or to the knowledge of any Obligor, threatened against or affecting such Obligor that would, if adversely determined, have a Material Adverse Effect.   There are no outstanding judgments against any Obligor.       Yes       No

5.  **Criminal Action**

    Neither Debtor nor any of Debtor's principals are under any current criminal investigation by any governmental agency, and neither Debtor nor any of Debtor's principals have any pending criminal charge, indictment or any other criminal action, other than a routine traffic violation, pending against them.       Yes       No

6.  **Rights in Properties; Liens**

    Debtor has good and indefeasible title to or valid leasehold interests in its properties, including the properties and assets reflected in the financial statements provided to Lender, and none of the properties of Debtor is subject to any lien, except Permitted Encumbrances.       Yes       No

7.  **Agreements**

    Debtor is not a party to any indenture, loan, or credit agreement, or to any lease or other agreement or instrument, or subject to any charter or corporate or other organizational restriction which could reasonably be expected to have a Material Adverse Effect.  Debtor is not in default in any material respect in the performance, observance, or fulfillment of any of the obligations, covenants, or conditions contained in any agreement or instrument material to its business.       Yes       No

8.  **Compliance with Laws**

    No Obligor is in violation of any law, rule, regulation, order, or decree of any Governmental Authority or arbitrator, the violation of which could reasonably be expected to have a Material Adverse Effect.       Yes       No

9.  **Payment of Obligations**

    Debtor has and will pay its obligations, including tax liabilities, that, if not paid, could become a lien on any of its property or assets, before the same shall become delinquent or in default, except where: (i) the validity or amount thereof is being contested in good faith by appropriate proceedings; and (ii) such Debtor has set aside on its books adequate reserves with respect thereto in accordance with GAAP.       Yes       No

10.  **Maintenance and Conduct of Business**

    Debtor: (i) has and will keep, maintain and preserve all property (tangible and intangible) material to the conduct of its business in good working order and condition, ordinary wear and tear excepted; and (ii) does or causes to be done all things necessary to preserve, renew and keep in full force and effect its legal existence and the rights, licenses, permits, privileges, agreements and franchises material to the conduct of its business.       Yes       No

**App. 069**

11. **Notice of Indebtedness**

   Debtor has notified Lender of all Debt that is not Permitted Debt.                                        Yes        No

12. **Notices of Material Events**

   Debtor has and will furnish to Lender prompt written notice of: (i) the occurrence of     Yes        No
   any Default; (ii) the filing, commencement or changes in status of any action, suit or
   proceeding by or before any arbitrator or Governmental Authority against or affecting
   any obligor that, if adversely determined, could reasonably be expected to result in a
   material adverse effect; and (iii) any and all material adverse changes in any obligor's
   financial condition and all claims made against any obligor that could materially affect
   the financial condition of such obligor.

13. **Ownership and Liens**

   Debtor has and will maintain good and indefeasible title to the Collateral free and clear     Yes        No
   of all liens, security interests, encumbrances or adverse claims, except as permitted by
   Lender.  Debtor has and will cause any financing statement (e.g., UCC filing) or other
   security instrument with respect to the Collateral to be terminated, as required by the
   Loan Agreement or as requested by Lender.

14. **Indebtedness**

   Debtor has not and will not create, incur, assume or permit to exist any Debt, except     Yes        No
   for the following:

   (a) The Indebtedness created hereunder;

   (b) Debt which is expressly subordinated to the Indebtedness under a subordination
       agreement in form and substance acceptable to Lender;

   (c) Trade payables or similar obligations from time to time incurred in the ordinary
       course of business other than for borrowed money; and

   (d) Other Debt approved in writing by Lender from time to time.

15. **Dividends or Distribution**

   Debtor has not and will not declare or pay any dividends or distributions on any equity     Yes        No
   interest of Debtor to any Person, unless any such amounts are expressly permitted as
   set forth in Exhibit II.

16. **Transfer or Encumbrance**

   Debtor has not and will not, without the prior written consent of Lender, (i) create,     Yes        No
   incur or assume Debt, including capital leases, other than Debt expressly permitted by
   the Loan Documents, (ii) sell, transfer, mortgage, assign, or lease (other than in the
   ordinary course of business) any of Debtor's assets, grant a security interest in or
   encumber any of Debtor's assets (except for permitted encumbrances, those
   encumbrances set forth in Exhibit II, or as expressly permitted by the Loan
   Documents), or (iii) sell any of Debtor's accounts, except to Lender.

17. **Impairment of Security Interest**

   Debtor has not and will not take any action that would in any manner impair the     Yes        No

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 28 of 34
2134754.2

**App. 070**

enforceability of Lender's security interest in any Collateral.

18. **Compromise of Collateral**

Debtor has not and will not adjust, settle, compromise, amend or modify any
Collateral, except an adjustment, settlement, compromise, amendment or modification
in good faith and in the ordinary course of business; provided, however, this exception
shall terminate following written notice from Lender upon the occurrence and during
the continuation of an Event of Default.  Debtor shall provide to Lender such
information concerning: (i) any adjustment, settlement, compromise, amendment or
modification of any Collateral; and (ii) any claim asserted by any account debtor for
credit, allowance, adjustment, dispute, set off or counterclaim, as Lender may
reasonably request from time to time.

    Yes      No

19. **Financing Statement Filings**

Debtor has not and will not: (i) make any material change in the nature of its business
as carried on as of the Effective Date, (ii) liquidate, merge or consolidate with or into
any other Person, (iii) make a change in organizational structure or the jurisdiction in
which it is organized, or (iv) permit any change in Debtor's legal name, or the state of
Debtor's organization to another jurisdiction.

    Yes      No

20. **Warranties and Representations**

Debtor warrants, represents and covenants to Lender, now and on an ongoing basis,
with respect to each Sales or Lease Contract that:

    Yes      No

  (a) The Sales or Lease Contract complies with all laws, regulations and orders,
federal or state, including all consumer protection laws and regulations
including, without limitation, the Truth in Lending Act, the Equal Credit
Opportunity Act, and all applicable Unfair and Deceptive Practices Acts;

  (b) The Sales or Lease Contract is genuine, valid and enforceable according to all
terms and provisions thereof and is secured by a first and prior security interest
in the motor vehicle, the description of which is, in all respects, true and
complete;

  (c) No uncured default on the part of the Retail Customer of Debtor in any Sales or
Lease Contract that is presented as Qualified Collateral or Legacy Qualified
Collateral has occurred or is anticipated to occur and no offset, counterclaim or
other defense exists or shall be permitted to arise in favor of the Retail Customer
of Debtor under the Sales or Lease Contract;

  (d) The Retail Customers of Debtor named in all such Sales or Lease Contracts are
bonafide and have legal capacity to make such Sales or Lease Contracts and the
down payment or deferred down payment, if any, represented as having been
made by the Retail Customer of Debtor in the Sales or Lease Contract has been
made in cash, no part of which was loaned, directly or indirectly, by Debtor or
Guarantor to the Retail Customer of Debtor;

  (e) A pledge of Collateral to Lender in the Sales or Lease Contract shall not impose
upon Lender any of the obligations of Debtor under the Sales or Lease Contract;

  (f) Debtor is in compliance with all federal, state or local laws and regulations,
including but not limited to, the Red Flag Rule, the Applicable state General
Distinguishing Number, the Applicable state Motor Vehicle Sales Finance
License, the Equal Credit Opportunity Act, the Fair Credit Reporting Act and

the Gramm-Leach-Bliley Act; and

(g) All Sales and Lease Contracts and related Collateral which serve as Qualified Collateral or Legacy Qualified Collateral comply with and meet all requirements contained in Exhibit I.

21. **Exceptions**

In the following respects, Debtor has not been, is not, or does not expect to be in compliance with this certification:

_____

_____

**EXECUTED** and delivered as of _____

**DEBTOR:**

By: _____
Name: _____Justyn Spencer_____
Title: _____Member_____

**App. 072**

**EXHIBIT IV**
**TO**
**LOAN AND SECURITY AGREEMENT**

## FORM OF ADVANCE REQUEST

| Business Contact Info: | |
|---|---|
| Company Name: | |
| Name of Submitter: | |
| Phone Number: | |
| Email: | |

| Transacton Details: | | | |
|---|---|---|---|
| Today's Date: | | Transaction Date: | |
| Transaction Direction: | ___ Pay Lender | Transaction Type: | ___ ACH |
| | ___ Advance from Lender | | ___ Wire |
| | | | ___ Journa Entry |
| Transaction Amount: | $ | | |
| Company Name with Bank: | | | |
| Company Address with Bank: | | | |
| Bank Name: | | | |
| Bank Address: | | | |
| Account Number: | | | |
| Routing Number: | | | |

| Authorized Signer: | | | |
|---|---|---|---|
| Signature: | | Signature: | |
| Name and Title: | | Name and Title: | |
| Date: | | Date: | |

**Return to Lender at [email@email.com]**

EXHIBIT V
TO
LOAN AND SECURITY AGREEMENT

## LANDLORD'S SUBORDINATION

**WHEREAS**, the undersigned ("Landlord"), whose address is noted below, is the owner of real property located at 251 Turnpike Road, Southborough, Massachusetts (the "Premises").

**WHEREAS**, Landlord has leased the Premises to **RAD EXOTICS LLC**, a Nevada limited liability company.

**WHEREAS**, [LENDER], a Texas limited liability company ("Lender"), has extended, or has agreed to extend, credit to, or accept the guaranty of or pledge of Collateral by, Tenant on the condition, among others, that such credit be secured by a first priority security interest in certain personal property assets of Tenant (the "Collateral") and all or a portion of the Collateral is now or may hereafter be located on the Premises.

**WHEREAS**, in extending or continuing to extend such credit to Tenant, Lender is relying on the agreements relating to the Collateral set forth in this agreement (this "Agreement").

**NOW, THEREFORE**, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Landlord, Tenant and Lender agrees as follows:

1.  **Landlord's Waiver**.  Landlord hereby subordinates any and all liens, security interests, claims, demands, causes of action, actions, and other rights, however arising, including, without limitation, the right to levy, distrain, sue, execute, or sell for unpaid rent or other indebtedness of Tenant to Landlord, which Landlord now has or may hereafter acquire with respect to any Collateral now or hereafter located in or on the Premises (regardless of whether such Collateral is now owned or hereafter acquired by Tenant), including without limitation, all additions, replacements, and substitutions therefor, and all proceeds thereof located in or on the Premises, to the lien of Lender in such Collateral.

2.  **Notice And License**.  Landlord agrees to deliver to Lender at its address as set forth below, at the same time as delivery to Tenant, a copy of any notice given by Landlord to Tenant regarding any breach or termination of any lease or other agreement between Tenant and Landlord relating to Tenant's use and possession of the Premises.  Subject to the terms and conditions hereof, Landlord and, where applicable, Tenant agree that notwithstanding any failure by Tenant to perform under, or the termination of, any lease or other agreement between Tenant and Landlord relating to Tenant's use and possession of the Premises: (a) for a period of 14 days following the effective date of termination, Landlord will not dispose of the Collateral nor assert any right or interest therein unless it has first notified Lender in writing of such termination, during which 14-day period Lender may exercise Lender's rights in and to the Collateral; and (b) Lender is hereby granted the right and license to enter upon the Premises during such 14-day period and take possession of the Collateral and to remove any or all of the Collateral from the Premises.

3.  **Conditions**.  The rights and licenses granted to Lender in Section 2 above are conditioned upon Lender's agreement to, and Lender hereby agrees: (a) to pay rent to Landlord at the times and at the daily rate paid by Tenant for the period commencing on the **FIRST (1ˢᵗ)** day after Lender enters into possession of the Premises and ending on the day Lender relinquishes possession thereof; (b) to reimburse Landlord for any actual physical damage to the Premises, other than diminution in value thereof, actually caused by Lender's activities on the Premises during its possession thereof, (c) to be bound by the other provisions the lease between Landlord and Tenant (other than the obligation to pay rent, which is described above), and (d) that, at the expiration of the 14-day period described in Section 2 above, any remaining Collateral within the Premises will be deemed abandoned by Lender, Lender's rights in such Collateral will automatically terminate, and Landlord may dispose of such Collateral in any manner Landlord deems appropriate..

4.  **No Waiver; Amendments**.  No delay, failure or discontinuance of Lender in exercising any right, power or remedy hereunder or under any other document, instrument or agreement related to the Lender's security interest in the Collateral shall affect such right, power or remedy; nor shall any single or partial exercise of any such

LOAN AND SECURITY AGREEMENT (FLOOR PLAN) – PAGE 32 of 34
2134754.2

right, power or remedy preclude, waive or otherwise affect the further exercise thereof or the exercise of any other right, power or remedy. The rights, powers and remedies of Lender hereunder are cumulative and not exclusive. Any waiver, permit, consent or approval of any kind by Lender of any breach of or default under this Agreement, or any such waiver of any provisions or conditions hereof, must be in writing and shall be effective only to the extent set forth in such writing. This Agreement may be amended or modified only in writing signed by all parties hereto.

5.     **Notices**. All notices, requests and demands given to or made upon the parties hereto must be in writing and shall be deemed to have been given or made when personally delivered or **THREE (3)** days after any of the same are deposited in the U.S. mail, first class and postage prepaid, sent to the address set forth above in this case of Lender and below after the signature of each party, or to such other address as may be designated by written notice to Lender and all parties.

6.     **Governing Law; Successors, Assigns**. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and shall be binding upon and inure to the benefit of the heirs, executors, administrators, legal representatives, successors and assigns of the parties.

7.     **Acceptance**. Landlord and Tenant waive acceptance and notice of acceptance by Lender, it being understood and agreed that Lender is relying hereon in extending or continuing to extend credit to Tenant or to accept the guaranty of, or pledge of Collateral by, Tenant.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

EXECUTED as of _____, 202_

**LANDLORD:**

DEAN REALTY INVESTMENT LLC, a Massachusetts limited liability company

By:   DRI Manager, LLC, a Delaware limited liability company, its Manager

    By:   Menemsha Capital Strategies, LLC, a Massachusetts limited liability company, its Managing Member

        By: _____
        Name: Zachary Deese-Laurent
        Title:  Authorized Representative

Landlord's Address:

c/o Menemsha Capital Strategies, LLC
831 Beacon Street, #268
Newton Center, Massachusetts 02459
Attention:   Zachary Deese-Laurent

Lender's Address:

Granting Hands, LLC
14801 Quorum Drive, #300
Attn: Brayden Harris
Dallas, TX 75254

Tenant's Address
[ ]   251 Turpike Rd
[ ]   Southborough, MA
          01772

# Exhibit 4

## FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT

### $4,000,000 Floor Plan Credit Facility

This FIRST AMENDMENT TO LOAN AND SECURITY AGREEMENT (as amended, modified, or restated from time to time, this "First Amendment") is entered into and effective as of December 31, 2021 (the "Effective Date"), by and between Granting Hands, LLC, a Texas limited liability company (together with its successors and assigns, "Lender"), and RAD Exotics LLC, a Nevada limited liability company ("Debtor").

WHEREAS, effective on or about March 19, 2021, Debtor, the Grantors, and Lender entered into certain Loan Documents in connection with a $3,000,000 Floor Plan Credit Facility (the "Credit Facility"), including without limitation the following:

1. that certain Loan and Security Agreement between Debtor and Lender (the "Loan Agreement");

2. that certain Promissory Note executed by Debtor (the "Note");

3. that certain Closing Certificate executed by Debtor (the "Closing Certificate");

4. that certain Irrevocable Power of Attorney executed by Debtor (the "Irrevocable Power of Attorney");

5. that certain Pledge Agreement between David Sigler (as the "Grantor") and Lender (the "Pledge Agreement -- Sigler"); and

6. that certain Pledge Agreement between Justin Spencer (as the "Grantor") and Lender (the "Pledge Agreement -- Spencer" and together with the Loan Agreement, the Note, the Closing Certificate, the Irrevocable Power of Attorney, and the Pledge Agreement -- Sigler, the "Loan Documents"); and

WHEREAS, Debtor, Lender, and the Grantors desire to amend certain of the Loan Documents, including the Loan Agreement, (i) to increase the principal amount of the Floor Plan Credit Facility from $3,000,000 to $4,000,000 and (ii) to establish a collateral processing fee payable by Debtor to Lender for each vehicle against which a Floor Plan Advance is made;

WHEREAS, capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the Loan Agreement or such other Loan Document, as applicable.

NOW, THEREFORE, in consideration of the foregoing premises and of the mutual covenants and undertakings contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, agree as follows:

1.    **<u>Exhibit II, Paragraph 3 – Maximum Floor Plan Amount</u>**

Paragraph 3 of Exhibit II to the Loan Agreement is amended to change the Maximum Floor Plan Amount from $3,000,000 to $4,000,000.

2.    **<u>Exhibit II, Paragraph 8 – Collateral Processing Fee</u>**

Paragraph 8 of Exhibit II to the Loan Agreement is amended to change the Collateral Processing Fee from "None" to $175.00.

3.    **<u>Miscellaneous</u>**

Except as expressly provided herein, the terms and provisions of the Loan Agreement and the other Loan Documents remain in full force and effect, are reaffirmed by the Parties, and remain unchanged.  This First Amendment is incorporated into and made a part of the Loan Agreement, and all references to the Loan Agreement hereafter shall include this First Amendment.

*[Remainder of page intentionally blank.  Signature page follows.]*

In WITNESS WHEREOF, the undersigned have executed and delivered this First Amendment as of the Effective Date.


**LENDER:**

GRANTING HANDS, LLC

By: _____
Name: Scott Everett
Title:  Manager

**ADDRESS:**

14801 Quorum Drive, #300
Dallas, TX 75254
Attn: Brayden Harris


**DEBTOR:**

RAD EXOTICS, LLC

By: _____
Name: Justin Spencer
Title:  Manager

**ADDRESS:**

251 Turnpike Road
Southborough, MA 01772

# Exhibit 5

**CLOSING CERTIFICATE**
**$3,000,000 Floor Plan Credit Facility**

MARCH 19, 2021
(the "Effective Date")

THE UNDERSIGNED, hereby certifies that the undersigned is the duly elected **MEMBER** of **RAD EXOTICS LLC**, a Nevada limited liability company ("Debtor"), and as such, the undersigned is duly authorized to, and does hereby certify that:

1. **Nature of Certificate**. This **CLOSING CERTIFICATE** (this "Certificate") is being delivered in connection with that certain **LOAN AND SECURITY AGREEMENT** dated as of the Effective Date (the "Loan Agreement") between Debtor and **GRANTING HANDS, LLC**, a Texas limited liability company ("Lender"). Capitalized terms not otherwise defined herein shall have the same meanings as in the Loan Agreement. The undersigned is personally familiar with the terms and conditions of the loan or loans to be made by Lender to Debtor, as evidenced by various Loan Documents. The undersigned acknowledges that this Certificate is made for the purpose of inducing Lender to advance funds pursuant to the terms of the Loan Documents, and Lender is relying upon the truth and accuracy of the statements made in this Certificate in advancing the proceeds under the Loan Documents.

2. **Requisite Action**. All requisite actions to be taken by Debtor for the execution, delivery and performance of the Loan Documents by Debtor have been taken. No other or further action by or on behalf of Debtor is necessary or appropriate to authorize the execution, delivery and performance of the Loan Documents by Debtor. A true and correct copy of authorizing resolutions of Debtor is attached hereto as Exhibit A. The resolutions have not been altered, amended, modified, rescinded or repealed in any way and are in full force and effect on the date hereof. As of the date of this Certificate, each Debtor is duly organized, legally existing and in good standing, under the laws of the jurisdiction of its organization and is duly qualified as a foreign entity to do business in each jurisdiction where it is so required, other than those jurisdictions wherein the failure to so qualify or be in good standing would not have a material adverse effect. True and correct copies of certificates evidencing good standing and/or existence of Debtor are attached hereto as Exhibit B. True and correct copies of the organizational documents of Debtor are attached hereto as Exhibit C.

3. **Incumbency**. Each person indicated on Exhibit D has been duly elected and is, at present, qualified and acting in the office indicated opposite such person's name and is authorized to execute all Loan Documents on behalf of Debtor. The specimen signatures on Exhibit D are the genuine signatures of such persons.

4. **Satisfaction of Certain Conditions**. All conditions precedent for loans under the Loan Documents have been satisfied or waived in writing by Lender. No Event of Default, event which with the passage of time and/or notice would be an Event of Default, shall have occurred and be continuing, or would result from or after giving effect to such loans. All of the representations and warranties contained in the Loan Documents are true and correct as of the date hereof.

*REMAINDER OF PAGE INTENTIONALLY LEFT BLANK*

CLOSING CERTIFICATE (FLOOR PLAN) – PAGE 1 of 7

App. 082

**IN WITNESS WHEREOF,** the undersigned has executed and delivered this Certificate as of the Effective Date.

**DEBTOR:**                                                        **ADDRESS:**

RAD EXOTICS LLC

By:        _____                    251 Turnpike Rd
Name:    Justin Spencer                                    Southborough, MA 01772
Title:     Manager

CLOSING CERTIFICATE (FLOOR PLAN) – PAGE 2 of 7

### EXHIBIT A
### AUTHORIZING RESOLUTIONS

**WHEREAS**, the **MANAGER** of **RAD EXOTICS LLC**, a Nevada limited liability company ("<u>Debtor</u>"), has reviewed that certain **LOAN AND SECURITY AGREEMENT** (the "<u>Loan Agreement</u>") between Debtor and **[LENDER] LLC**, a Texas limited liability company ("<u>Lender</u>") (capitalized terms not otherwise defined herein shall have the same meanings as in the Loan Agreement); and

**WHEREAS**, the **MANAGER** of Debtor has determined that the execution and delivery by Debtor of the Loan Documents are in the best interest of Debtor;

**NOW THEREFORE, BE IT RESOLVED**, that the form, terms and provisions of the Loan Documents are hereby in all respects approved and the **MANAGER** of Debtor (each such Person being an "<u>Authorized Person</u>") is authorized and directed to: (a) execute and deliver the Loan Documents, in each case with such changes, modifications and revisions as such Authorized Person executing the same may deem necessary and advisable to implement the transactions contemplated by the Loan Documents and carry out and comply with the purposes and intent of this resolution and the other resolutions relating to such transactions, and (b) effect the consummation of the Loan Documents and the transactions contemplated thereby, the **MANAGER** of Debtor hereby ratifying, approving, confirming and adopting as the acts and deeds that each Authorized Person have done or may do with respect to the foregoing;

**RESOLVED FURTHER**, that each Authorized Person is authorized and directed to do all other things and acts, to execute and deliver on behalf of Debtor (without the joinder of any other Authorized Person) all other instruments, documents, and certificates, including, without limitation, all such documents and instruments that each such Authorized Person deems necessary or advisable from time to time to supplement or amend any of the Loan Documents, and to pay all costs, fees, and taxes as each may deem necessary or advisable in order to carry out and comply with the purposes and intent of these resolutions, and that all of the acts and deeds of any Authorized Person heretofore or hereafter effected by such Authorized Person that are consistent with the purposes and intent of these resolutions be, and they hereby are, in all respects ratified, approved, confirmed, and adopted as the acts and deeds of Debtor;

**RESOLVED FURTHER**, that, notwithstanding anything in Debtor's constituent documents (an "<u>Operating Agreement</u>") to the contrary, each Equity Holder of each Debtor is authorized to execute in favor of Lender a **PLEDGE AGREEMENT** (the "<u>Pledge Agreement</u>"), pursuant to which each Equity holder shall pledge and grant to Lender, among other things, all of the Equity Interests (as defined in the Pledge Agreement) owned by each Equity holder, which Pledge Agreement is hereby ratified and affirmed by Debtor and each Equity holder;

**RESOLVED FURTHER**, that Lender is deemed to be a permitted transferee of the Equity Interests, and these Authorizing Resolutions constitute approval by each Debtor, each Equity Holder of the Pledge Agreement and the transfer of the Equity Interests set forth therein, such that, upon Lender's election in accordance with the terms of Pledge Agreement, Lender shall be admitted to Debtor as an Equity Holder without any further action or consent of the Equity Holders;

**RESOLVED FURTHER**, that in connection with any disposition of any Equity Holder's Equity Interests under the Pledge Agreement, Debtor and each Equity Holder hereby waive any and all restrictions on transfer of the Equity Interests, rights of first refusal, notice rights, buy-sell provisions, drag along rights and similar rights set forth in such Debtor's Operating Agreement;

**RESOLVED FURTHER**, that all actions heretofore and hereafter taken and all documentation (including the Loan Documents) heretofore and hereafter executed and/or delivered by any Authorized Person or by any individual who currently holds or has held said position, in furtherance of the foregoing, is hereby ratified, adopted, approved and confirmed and declared to be binding and enforceable obligations of Debtor in accordance with the respective terms and provisions thereof;

**RESOLVED FURTHER,** that Lender may rely on these resolutions and the authority of an Authorized Person and these resolutions shall remain in full force and effect, with respect to such authority, until such time as notice to the contrary is duly delivered to Lender and receipted for in writing by Lender.

App. 085

**EXHIBIT B**
**GOOD STANDING/EXISTENCE**

CLOSING CERTIFICATE (FLOOR PLAN) – PAGE 5 of 7

App. 086

**EXHIBIT C**
**ORGANIZATIONAL DOCUMENTS**

**EXHIBIT D**
**INCUMBENCY CERTIFICATION**

| Name | Title | Signature |
|------|-------|-----------|
| Justin Spencer | Manager | |
| David Sigler | Manager | |

CLOSING CERTIFICATE (FLOOR PLAN) – PAGE 7 of 7

# **Exhibit 6**

## IRREVOCABLE POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENTS THAT RAD EXOTICS LLC**, a Nevada limited liability company (the "Company"), with its principal place of business at the address set forth below, hereby irrevocably appoints and authorizes **GRANTING HANDS, LLC**, a Texas limited liability company (the "Attorney"), with offices at 14801 Quorum Drive, #300, ATTN: Brayden Harris, Dallas, Texas 75254, to act as Company's attorney-in-fact, such power being coupled with an interest, with full authority in the place and stead of Company and in the name of Company or otherwise, for the purpose of: (a) preparing, executing and/or filing in Company's name any original claim forms, motor vehicle title forms, motor vehicle lien assignment forms and other such motor vehicle forms related to the Collateral, as defined in and under that certain **LOAN AND SECURITY AGREEMENT (FLOOR PLAN CREDIT FACILITY)** dated **FEBRUARY __, 2021**, executed by and between Company and Attorney, as Attorney may deem necessary pertaining to those vehicles in which Attorney now or hereafter has a lien (whether or not such lien is recorded on such vehicle titles); and (b) exercising the rights of Company and/or Attorney against such vehicles. Company agrees that Attorney will not be responsible for any error, or for any act or omission not amounting to gross negligence or willful misconduct, and Company will indemnify, defend and hold Attorney harmless from any and all actions, claims, demands or liabilities of any nature whatsoever which Company may have or will have against Attorney arising out of the performance of its functions for and on behalf of Company pursuant to this Irrevocable Power of Attorney.

All officials of all state and local agencies which are responsible for the issuing and transferring of motor vehicle titles, and any other person, firm, entity or court of competent jurisdiction to which this Irrevocable Power of Attorney is presented, are hereby authorized to recognize Attorney's rights hereunder and to receive, honor and give effect to all instruments signed pursuant to this Irrevocable Power of Attorney without inquiring into the circumstances of their issuance or the disposition of the property delivered pursuant thereto. Company hereby agrees to indemnify and hold harmless any such agencies, persons, firms or entities against any losses, costs and expenses which may arise by virtue of any action taken in reliance on this Irrevocable Power of Attorney, as may be requested by Attorney from time to time. All acts done hereunder by Attorney shall be valid and enforceable in favor of any agencies, persons, firms or entities that rely on this Irrevocable Power of Attorney, and shall be binding upon all successors and assigns of the undersigned. Attorney is authorized to make photocopies of this instrument as frequently and in such quantity as it may deem appropriate. Each photocopy shall have the same force and effect as any original.

*REMAINDER OF PAGE LEFT INTENTIONALLY BLANK*

POWER OF ATTORNEY (FLOOR PLAN) – PAGE 1 of 2

IN WITNESS WHEREOF, Company has caused this instrument to be executed by a duly authorized representative effective as of the date set forth below.

COMPANY:                                      ADDRESS:

RAD EXOTICS LLC                               251 Turnpike Rd
                                              Southborough, MA 01772
By:        _____
Name:    Justin Spencer
Title:     Manager


STATE OF _____        §
COUNTY OF _____       §

The foregoing instrument was acknowledged before me on FEBRUARY ___, 2021, by JUSTIN SPENCER, MANAGER of RAD EXOTICS LLC, a Nevada limited liability company, on behalf of said entity.

Notary Public State of_____
My Commission Expires:_____

POWER OF ATTORNEY (FLOOR PLAN) – PAGE 2 of 2

# Exhibit 7

# PLEDGE AGREEMENT

### $3,000,000 Floor Plan Credit Facility

THIS PLEDGE AGREEMENT (as amended, modified or restated from time to time, this "Agreement") dated as of MARCH 19, 2021 (the "Effective Date"), is by the undersigned (each individually, "Grantor"), in favor of GRANTING HANDS, LLC, a Texas limited liability company ("Lender").

### RECITALS

WHEREAS, Lender, and RAD EXOTICS LLC, a Nevada limited liability company ("Debtor"), have entered into that certain LOAN AND SECURITY AGREEMENT dated as of the Effective Date (as amended, modified or restated from time to time, the "Loan Agreement"); and

WHEREAS, Grantor has agreed to execute this Agreement to secure the repayment of the Indebtedness (as defined in the Loan Agreement);

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Grant of Security Interest**. Grantor pledges, assigns and grants to Lender a first lien security interest and lien in the Collateral (hereinafter defined) to secure the payment and the performance of the Indebtedness. The security interest is granted in the following collateral (the "Collateral"):

(a)    **Equity Interests**. ONE HUNDRED PERCENT (100.00%) of the equity interests and/or shares in Debtor now owned or hereafter acquired by Grantor, and all options and other rights, contractual or otherwise, held by Grantor with respect thereto (collectively, the "Equity Interests").

(b)    **Proceeds**. All additions, substitutes and replacements for and proceeds of the above Collateral (including all income and benefits resulting from any of the above, such as dividends payable or distributable in cash, property or equity securities; interest, premium and principal payments; redemption proceeds and subscription rights; and shares or other proceeds of conversions or splits of any securities in the Collateral).

Any property received by Grantor which shall comprise such additions, substitutes and replacements for, or proceeds of, the Collateral, shall be held in trust for Lender and shall be delivered immediately to Lender. Any cash proceeds shall be held in trust for Lender and upon request shall be delivered immediately to Lender.

2.    **Grantor's Warranties**. Grantor hereby represents and warrants to Lender as follows:

(a)    **Financing Statements; Liens and Security Interests**. No financing statement covering the Collateral is or will be on file in any public office, except the financing statements relating to this security interest, and no security interest, other than the one herein created, has attached or been perfected in the Collateral or any part thereof. This Agreement creates a valid first priority security interest in favor of Lender in the Collateral. The filing of appropriate financing statements and, if the Equity Interests are certificated, the taking possession by the Lender of the certificates representing the Equity Interests (if any) and all other certificates and instruments constituting Collateral, together with an Equity Power in the form of Exhibit A attached hereto, will perfect and establish the first priority of the Lender's security interest in the Equity Interests.

(b)    **Ownership**. Grantor owns the Collateral (which currently represents 50% of total outstanding equity of the Debtor) free from any setoff, claim, restriction, lien, security interest or encumbrance except for taxes not yet due and payable and the security interest hereunder.

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 1 of 7

(c)     **Power and Authority**.   Grantor has full power and authority to enter into this Agreement, and all necessary consents and approvals of any persons, entities, governmental or regulatory authorities and securities exchanges have been obtained to effectuate the validity of this Agreement.

3.     **Grantor's Covenants**.   Until full payment and performance of all of the Indebtedness, unless Lender otherwise consents in writing:

(a)     **Agreement**.   Grantor shall perform all of its agreements herein and in any other agreements between it and Lender.

(b)     **Ownership of Collateral**.   Grantor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Lender.  Grantor shall keep the Collateral free from all liens and security interests other than taxes not yet due and payable and the security interest hereunder.

(c)     **Lender's Costs**.   Grantor shall pay or cause Debtor to pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement, and preserve, defend, enforce and collect the Collateral, including but not limited to taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales.  Whether the Collateral is or is not in Lender's possession, and without any obligation to do so and without waiving default for failure to make any such payment, Lender at its option may pay any such costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Indebtedness and bear interest at the maximum rate under applicable law. Grantor shall pay or cause Debtor to pay Lender on demand for any costs so incurred.

(d)     **Possession of Collateral**.   If the Equity Interests are ever certificated, Grantor shall deliver all such certificates to Lender, together with an Equity Power in the form of Exhibit A attached hereto.

(e)     **Power of Attorney**.   Grantor appoints Lender and any officer thereof as Grantor's attorney-in-fact with full power in Grantor's name and on Grantor's behalf to do every act which Grantor is obligated to do or may be required to do hereunder; provided however, nothing in this paragraph shall be construed to obligate Lender to take any action hereunder nor shall Lender be liable to Grantor for failure to take any action hereunder.  This appointment shall be deemed a power coupled with an interest and shall not be terminable as long as the Indebtedness is outstanding and shall not terminate on the disability or incompetence of Grantor. Without limiting the generality of the foregoing, Lender shall have the right and power to (i) receive, indorse and collect all checks and other orders for the payment of money made payable to Grantor representing any dividend, interest payment or other distribution payable in respect of the Collateral or any part thereof, and (ii) sell the Collateral.

4.     **Rights and Powers of Lender**.   Lender, after an Event of Default under the Loan Agreement, without liability to Grantor may: (a) take control of proceeds, including securities received as dividends or by reason of splits; (b) release the Collateral in its possession to Grantor, temporarily or otherwise; (c) take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Indebtedness; (d) exercise all other rights which an owner of such Collateral may exercise; and (e) transfer any of the Collateral or evidence thereof into its own name or that of its nominee.  Lender shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Lender, its officers, agents or employees, except for its or their own willful misconduct or gross negligence.  The foregoing rights and powers of Lender will be in addition to, and not a limitation upon, any rights and powers of Lender given by law, elsewhere in this Agreement, or otherwise.

5.     **Remedies**.   If an Event of Default shall occur, then, in each and every such case, Lender may, without (a) presentment, demand, or protest, (b) notice of default, dishonor, demand, non-payment, or protest, (c) notice of intent to accelerate all or any part of the Indebtedness, (d) notice of acceleration of all or any part of the Indebtedness, or (e) notice of any other kind, all of which Grantor hereby expressly waives (except for any notice required under this Agreement, any other Loan Document or which may not be waived under applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Lender's option:

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 2 of 7

      (a)     **Acceleration**.  The Indebtedness shall, at Lender's option, become immediately due and payable.

      (b)     **Liquidation of Collateral**.  Sell, or instruct any agent or broker to sell, all or any part of the Collateral in a public or private sale, direct any agent or broker to liquidate all or any part of any account and deliver all proceeds thereof to Lender, and apply all proceeds to the payment of any or all of the Indebtedness in such order and manner as Lender shall, in its discretion, choose or hold such proceeds as additional Collateral for the Indebtedness.

      (c)     **Code**.  All of the rights, powers and remedies of a secured creditor under the Texas Business and Commerce Code.

Grantor specifically understands and agrees that any sale by Lender of all or part of the Collateral pursuant to the terms of this Agreement may be effected by Lender at times and in manners which could result in the proceeds of such sale as being significantly and materially less than might have been received if such sale had occurred at different times or in different manners, and Grantor hereby releases Lender and its officers and representatives from and against any and all obligations and liabilities arising out of or related to the timing or manner of any such sale. If, in the opinion of Lender, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Lender may offer and sell such Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Lender shall be deemed "commercially reasonable."

      6.     **No Disposition, Etc**.  Without the prior written consent of Lender, Grantor agrees that Grantor will not sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, nor will Grantor create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the Collateral, or any interest therein, or any proceeds thereof.

      7.     **General**.

      (a)     **Parties Bound**.  Lender's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Indebtedness or the Collateral, Lender thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Lender shall retain all rights and powers hereby given with respect to any of the Indebtedness or the Collateral not so assigned or transferred.  All representations, warranties and agreements of Grantor, if more than one, are joint and several and all shall be binding upon the successors and assigns of Grantor.

      (b)     **No Waiver**.  No delay of Lender in exercising any power or right shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.  No waiver by Lender of any right hereunder or of any default by Grantor shall be binding upon Lender unless in writing, and no failure by Lender to exercise any power or right hereunder or waiver of any default by Grantor shall operate as a waiver of any other or further exercise of such right or power or of any further default.  Each right, power and remedy of Lender as provided for herein or in any of the Loan Documents, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.  The exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Lender of any or all other such rights, powers or remedies.

      (c)     **Notice**.  All notices, requests, demands or other communications required or permitted to be given pursuant to this Agreement shall be in writing and given by (i) personal delivery, (ii) expedited delivery service with proof of delivery, or (iii) United States mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth on the signature page hereof and shall be deemed to have been received either, in the case of personal delivery, as of the time of personal delivery, in the case of expedited delivery service, as of the time of expedited delivery and in the

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 3 of 7

manner provided herein, or in the case of mail, upon the **THIRD (3ʳᵈ)** day after deposit in a depository receptacle under the care and custody of the United States Postal Service. Any party shall have the right to change its address of notice hereunder to any other location within the continental United States by notice to the other party of such new address. Notice shall be deemed reasonable if given in accordance with this clause (iii) at least **TEN (10)** days before the related action (or if the Code elsewhere specifies a longer period, such longer period).

      (d)    **Modifications**.  No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Grantor and Lender.  The provisions of this Agreement shall not be modified or limited by course of conduct or usage of trade.

      (e)    **Partial Invalidity**.  The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of any Loan Document to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

      (f)    **Applicable Law and Venue**.  This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that State.  This Agreement is performable by Grantor in the county or city of Lender's address as set forth in this Agreement and Grantor expressly waives any objection as to venue in any such location.  Wherever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

      (g)    **Consent**.  Each Grantor hereby consents to the pledge by each other Grantor of the Collateral, and waives: (i) any buyout right or right of first refusal to purchase the Collateral; and (ii) any and all other restrictions on the transfer of the Collateral to Lender.

**THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.**

<strong>REMAINDER OF PAGE LEFT INTENTIONALLY BLANK</strong>

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 4 of 7

**EXECUTED** as of the Effective Date.

**GRANTOR:**                                                      **ADDRESS:**

_____                        251 Turnpike Rd
David Sigler                                                          Southborough, MA 01772


**LENDER:**                                                        **ADDRESS:**

GRANTING HANDS, LLC                                    14801 Quorum Drive, #300
                                                                        Attn: Brayden Harris
By:  _____            Dallas, TX 75254
Name:  ~~Stephen Reggio~~  Suott Gentt
Title:   Manager


PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 5 of 7

## ACKNOWLEDGEMENT

Each of the undersigned (each an "Issuer"), signs this Acknowledgement for the following purposes: Issuer has reviewed the terms and conditions of the foregoing Agreement and acknowledges the lien of Lender on the Collateral as of the date first written above. Issuer hereby confirms and agrees that (i) Grantor is the registered owner of Equity Interests in Issuer, and (ii) Issuer shall not change the registered owner of the Equity Interests without the prior written consent of Lender. If Issuer shall receive instructions originated by Lender relating to the Equity Interests, Issuer shall immediately comply with such instructions without further consent by Grantor or any other person.

**ISSUER:**

RAD EXOTICS LLC

By: _____
Name:   Justin Spencer
Title:    Manager

**ADDRESS:**

251 Turnpike Rd
Southborough, MA 01772

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 6 of 7

**EXHIBIT A**
**TO PLEDGE AGREEMENT**

**IRREVOCABLE EQUITY POWER**

      **FOR   VALUE   RECEIVED,** the   undersigned   hereby   sells,   assigns   and   transfers   to _____, _____ in _____, standing in the name of the undersigned on the books of such entity, represented by certificate number _____ and the undersigned does hereby irrevocably constitute and appoint _____ the undersigned's true and lawful attorney-in-fact, with full power of substitution, to transfer this equity on the books of such entity.

| | |
|---|---|
| **ASSIGNOR:** | **ADDRESS:** |
| RAD EXOTICS LLC | [ ]<br>[ ] |

By:   _____
Name:   Justin Spencer
Title:   Manager

Dated:   _____

**ATTACH CERTIFICATES REPRESENTING EQUITY INTEREST**

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 7 of 7

# Exhibit 8

# PLEDGE AGREEMENT

## $3,000,000 Floor Plan Credit Facility

**THIS PLEDGE AGREEMENT** (as amended, modified or restated from time to time, this "<u>Agreement</u>") dated as of MARCH 19, 2021 (the "<u>Effective Date</u>"), is by the undersigned (each individually, "<u>Grantor</u>"), in favor of **GRANTING HANDS, LLC**, a Texas limited liability company ("<u>Lender</u>").

### RECITALS

**WHEREAS**, Lender, and **RAD EXOTICS LLC**, a Nevada limited liability company ("<u>Debtor</u>"), have entered into that certain **LOAN AND SECURITY AGREEMENT** dated as of the Effective Date (as amended, modified or restated from time to time, the "<u>Loan Agreement</u>"); and

**WHEREAS**, Grantor has agreed to execute this Agreement to secure the repayment of the Indebtedness (as defined in the Loan Agreement);

**NOW, THEREFORE**, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.     **Grant of Security Interest**.   Grantor pledges, assigns and grants to Lender a first lien security interest and lien in the Collateral (hereinafter defined) to secure the payment and the performance of the Indebtedness.  The security interest is granted in the following collateral (the "<u>Collateral</u>"):

    (a)     **Equity Interests**.   **ONE HUNDRED PERCENT (100.00%)** of the equity interests and/or shares in Debtor now owned or hereafter acquired by Grantor, and all options and other rights, contractual or otherwise, held by Grantor with respect thereto (collectively, the "<u>Equity Interests</u>").

    (b)     **Proceeds**.   All additions, substitutes and replacements for and proceeds of the above Collateral (including all income and benefits resulting from any of the above, such as dividends payable or distributable in cash, property or equity securities; interest, premium and principal payments; redemption proceeds and subscription rights; and shares or other proceeds of conversions or splits of any securities in the Collateral).

Any property received by Grantor which shall comprise such additions, substitutes and replacements for, or proceeds of, the Collateral, shall be held in trust for Lender and shall be delivered immediately to Lender.  Any cash proceeds shall be held in trust for Lender and upon request shall be delivered immediately to Lender.

2.     **Grantor's Warranties**.   Grantor hereby represents and warrants to Lender as follows:

    (a)     **Financing Statements; Liens and Security Interests**.   No financing statement covering the Collateral is or will be on file in any public office, except the financing statements relating to this security interest, and no security interest, other than the one herein created, has attached or been perfected in the Collateral or any part thereof.  This Agreement creates a valid first priority security interest in favor of Lender in the Collateral.  The filing of appropriate financing statements and, if the Equity Interests are certificated, the taking possession by the Lender of the certificates representing the Equity Interests (if any) and all other certificates and instruments constituting Collateral, together with an Equity Power in the form of <u>Exhibit A</u> attached hereto, will perfect and establish the first priority of the Lender's security interest in the Equity Interests.

    (b)     **Ownership**.   Grantor owns the Collateral (which currently represents 50% of total outstanding equity of the Debtor) free from any setoff, claim, restriction, lien, security interest or encumbrance except for taxes not yet due and payable and the security interest hereunder.

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 1 of 7

(c)    **Power and Authority**.  Grantor has full power and authority to enter into this Agreement, and all necessary consents and approvals of any persons, entities, governmental or regulatory authorities and securities exchanges have been obtained to effectuate the validity of this Agreement.

3.    **Grantor's Covenants**.  Until full payment and performance of all of the Indebtedness, unless Lender otherwise consents in writing:

(a)    **Agreement**.  Grantor shall perform all of its agreements herein and in any other agreements between it and Lender.

(b)    **Ownership of Collateral**.  Grantor shall defend the Collateral against all claims and demands of all persons at any time claiming any interest therein adverse to Lender.  Grantor shall keep the Collateral free from all liens and security interests other than taxes not yet due and payable and the security interest hereunder.

(c)    **Lender's Costs**.  Grantor shall pay or cause Debtor to pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement, and preserve, defend, enforce and collect the Collateral, including but not limited to taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales.  Whether the Collateral is or is not in Lender's possession, and without any obligation to do so and without waiving default for failure to make any such payment, Lender at its option may pay any such costs and expenses and discharge encumbrances on the Collateral, and such payments shall be a part of the Indebtedness and bear interest at the maximum rate under applicable law.  Grantor shall pay or cause Debtor to pay Lender on demand for any costs so incurred.

(d)    **Possession of Collateral**.  If the Equity Interests are ever certificated, Grantor shall deliver all such certificates to Lender, together with an Equity Power in the form of Exhibit A attached hereto.

(e)    **Power of Attorney**.  Grantor appoints Lender and any officer thereof as Grantor's attorney-in-fact with full power in Grantor's name and on Grantor's behalf to do every act which Grantor is obligated to do or may be required to do hereunder; provided however, nothing in this paragraph shall be construed to obligate Lender to take any action hereunder nor shall Lender be liable to Grantor for failure to take any action hereunder.  This appointment shall be deemed a power coupled with an interest and shall not be terminable as long as the Indebtedness is outstanding and shall not terminate on the disability or incompetence of Grantor.  Without limiting the generality of the foregoing, Lender shall have the right and power to (i) receive, indorse and collect all checks and other orders for the payment of money made payable to Grantor representing any dividend, interest payment or other distribution payable in respect of the Collateral or any part thereof, and (ii) sell the Collateral.

4.    **Rights and Powers of Lender**.  Lender, after an Event of Default under the Loan Agreement, without liability to Grantor may: (a) take control of proceeds, including securities received as dividends or by reason of splits; (b) release the Collateral in its possession to Grantor, temporarily or otherwise; (c) take control of funds generated by the Collateral, such as cash dividends, interest and proceeds, and use same to reduce any part of the Indebtedness; (d) exercise all other rights which an owner of such Collateral may exercise; and (e) transfer any of the Collateral or evidence thereof into its own name or that of its nominee.  Lender shall not be liable for failure to collect any account or instruments, or for any act or omission on the part of Lender, its officers, agents or employees, except for its or their own willful misconduct or gross negligence.  The foregoing rights and powers of Lender will be in addition to, and not a limitation upon, any rights and powers of Lender given by law, elsewhere in this Agreement, or otherwise.

5.    **Remedies**.  If an Event of Default shall occur, then, in each and every such case, Lender may, without (a) presentment, demand, or protest, (b) notice of default, dishonor, demand, non-payment, or protest, (c) notice of intent to accelerate all or any part of the Indebtedness, (d) notice of acceleration of all or any part of the Indebtedness, or (e) notice of any other kind, all of which Grantor hereby expressly waives (except for any notice required under this Agreement, any other Loan Document or which may not be waived under applicable law), at any time thereafter exercise and/or enforce any of the following rights and remedies, at Lender's option:

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 2 of 7

   (a)  **Acceleration**.  The Indebtedness shall, at Lender's option, become immediately due and payable.

   (b)  **Liquidation of Collateral**.  Sell, or instruct any agent or broker to sell, all or any part of the Collateral in a public or private sale, direct any agent or broker to liquidate all or any part of any account and deliver all proceeds thereof to Lender, and apply all proceeds to the payment of any or all of the Indebtedness in such order and manner as Lender shall, in its discretion, choose or hold such proceeds as additional Collateral for the Indebtedness.

   (c)  **Code**.  All of the rights, powers and remedies of a secured creditor under the Texas Business and Commerce Code.

Grantor specifically understands and agrees that any sale by Lender of all or part of the Collateral pursuant to the terms of this Agreement may be effected by Lender at times and in manners which could result in the proceeds of such sale as being significantly and materially less than might have been received if such sale had occurred at different times or in different manners, and Grantor hereby releases Lender and its officers and representatives from and against any and all obligations and liabilities arising out of or related to the timing or manner of any such sale. If, in the opinion of Lender, there is any question that a public sale or distribution of any Collateral will violate any state or federal securities law, Lender may offer and sell such Collateral in a transaction exempt from registration under federal securities law, and any such sale made in good faith by Lender shall be deemed "commercially reasonable."

  6.  **No Disposition, Etc**.  Without the prior written consent of Lender, Grantor agrees that Grantor will not sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, nor will Grantor create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the Collateral, or any interest therein, or any proceeds thereof.

  7.  **General**.

   (a)  **Parties Bound**.  Lender's rights hereunder shall inure to the benefit of its successors and assigns, and in the event of any assignment or transfer of any of the Indebtedness or the Collateral, Lender thereafter shall be fully discharged from any responsibility with respect to the Collateral so assigned or transferred, but Lender shall retain all rights and powers hereby given with respect to any of the Indebtedness or the Collateral not so assigned or transferred.  All representations, warranties and agreements of Grantor, if more than one, are joint and several and all shall be binding upon the successors and assigns of Grantor.

   (b)  **No Waiver**.  No delay of Lender in exercising any power or right shall operate as a waiver thereof; nor shall any single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.  No waiver by Lender of any right hereunder or of any default by Grantor shall be binding upon Lender unless in writing, and no failure by Lender to exercise any power or right hereunder or waiver of any default by Grantor shall operate as a waiver of any other or further exercise of such right or power or of any further default.  Each right, power and remedy of Lender as provided for herein or in any of the Loan Documents, or which shall now or hereafter exist at law or in equity or by statute or otherwise, shall be cumulative and concurrent and shall be in addition to every other such right, power or remedy.  The exercise or beginning of the exercise by Lender of any one or more of such rights, powers or remedies shall not preclude the simultaneous or later exercise by Lender of any or all other such rights, powers or remedies.

   (c)  **Notice**.  All notices, requests, demands or other communications required or permitted to be given pursuant to this Agreement shall be in writing and given by (i) personal delivery, (ii) expedited delivery service with proof of delivery, or (iii) United States mail, postage prepaid, registered or certified mail, return receipt requested, sent to the intended addressee at the address set forth on the signature page hereof and shall be deemed to have been received either, in the case of personal delivery, as of the time of personal delivery, in the case of expedited delivery service, as of the time of expedited delivery and in the

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 3 of 7

manner provided herein, or in the case of mail, upon the **THIRD (3rd)** day after deposit in a depository receptacle under the care and custody of the United States Postal Service. Any party shall have the right to change its address of notice hereunder to any other location within the continental United States by notice to the other party of such new address. Notice shall be deemed reasonable if given in accordance with this clause (iii) at least **TEN (10)** days before the related action (or if the Code elsewhere specifies a longer period, such longer period).

(d)     <u>Modifications</u>.  No provision hereof shall be modified or limited except by a written agreement expressly referring hereto and to the provisions so modified or limited and signed by Grantor and Lender.  The provisions of this Agreement shall not be modified or limited by course of conduct or usage of trade.

(e)     <u>Partial Invalidity</u>.  The unenforceability or invalidity of any provision of this Agreement shall not affect the enforceability or validity of any other provision herein, and the invalidity or unenforceability of any provision of any Loan Document to any person or circumstance shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

(f)     <u>Applicable Law and Venue</u>.  This Agreement has been delivered in the State of Texas and shall be construed in accordance with the laws of that State.  This Agreement is performable by Grantor in the county or city of Lender's address as set forth in this Agreement and Grantor expressly waives any objection as to venue in any such location.   Wherever possible each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

(g)     <u>Consent</u>.  Each Grantor hereby consents to the pledge by each other Grantor of the Collateral, and waives: (i) any buyout right or right of first refusal to purchase the Collateral; and (ii) any and all other restrictions on the transfer of the Collateral to Lender.

**THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.   THERE ARE NO UNWRITTEN AGREEMENTS BETWEEN THE PARTIES.**

**REMAINDER OF PAGE LEFT INTENTIONALLY BLANK**

**EXECUTED** as of the Effective Date.

**GRANTOR:**

Justin Spencer

**ADDRESS:**

251 Turnpike Rd
Southborough, MA 01772

**LENDER:**

GRANTING HANDS. LLC

By:
Name:    ~~Stephen Reggio~~   Scott Everett
Title:    Manager

**ADDRESS:**

14801 Quorum Drive, #300
Attn: Brayden Harris
Dallas, TX 75254

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 5 of 7

## ACKNOWLEDGEMENT

Each of the undersigned (each an "Issuer"), signs this Acknowledgement for the following purposes: Issuer has reviewed the terms and conditions of the foregoing Agreement and acknowledges the lien of Lender on the Collateral as of the date first written above. Issuer hereby confirms and agrees that (i) Grantor is the registered owner of Equity Interests in Issuer, and (ii) Issuer shall not change the registered owner of the Equity Interests without the prior written consent of Lender. If Issuer shall receive instructions originated by Lender relating to the Equity Interests, Issuer shall immediately comply with such instructions without further consent by Grantor or any other person.

**ISSUER:**                                                **ADDRESS:**

RAD EXOTICS LLC                                      251 Turnpike Rd
                                                                   Southborough, MA 01772

By: _____
Name:   Justin Spencer
Title:    Manager

PLEDGE AGREEMENT (FLOOR PLAN) – PAGE 6 of 7

**EXHIBIT A**
**TO PLEDGE AGREEMENT**

**IRREVOCABLE EQUITY POWER**

      **FOR VALUE RECEIVED,** the undersigned hereby sells, assigns and transfers to _____, _____ in _____, standing in the name of the undersigned on the books of such entity, represented by certificate number _____ and the undersigned does hereby irrevocably constitute and appoint _____ the undersigned's true and lawful attorney-in-fact, with full power of substitution, to transfer this equity on the books of such entity.

**ASSIGNOR:**                                           **ADDRESS:**

RAD EXOTICS LLC                                  [ ]
                                                               [ ]

By:     _____
Name:   Justin Spencer
Title:  Manager

Dated:  _____

**ATTACH CERTIFICATES REPRESENTING EQUITY INTEREST**

**App. 107**

CAUSE NO. DC-23-17220

| | | |
|---|---|---|
| **GRANTING HANDS LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **RAD EXOTICS LLC, JUSTIN** | § | |
| **SPENCER, and DAVID SIGLER,** | § | |
| | § | |
| *Defendants.* | § | **193rd JUDICIAL DISTRICT** |

## ORDER FOR EXPEDITED DISCOVERY AND SETTING TEMPORARY INJUNCTION HEARING

CAME ON TO BE HEARD Plaintiff's request that this Court set a hearing on their request for temporary injunction and, in connection therewith, Plaintiff's additional request that they be allowed expedited discovery prior to such hearing; and the Court, being apprised that notice has been properly given pursuant to Local Rule 2.02; it is, therefore,

ORDERED that this matter is set for hearing on Plaintiff's Application for Temporary Injunction, contained in Plaintiff's Verified Original Petition, on the __ day of _____ at __ o'clock _.m.; and it is further

ORDERED that in connection with the foregoing hearing, the Plaintiff's Motion for Expedited Discovery is granted to the extent set out hereinbelow; and it is further

ORDERED that Defendants shall respond no later than five (5) days prior to the hearing on Plaintiff's Application for Temporary Injunction to any written discovery requests (such requests to be served by Plaintiff on or before one week from today), and shall produce documents responsive to such requests at that same time; and it is further

ORDERED that the Defendant RAD Exotics shall produce one or more corporate representatives for deposition no later than three (3) days prior to the hearing on Plaintiff's Application for Temporary Injunction regarding matters relating to the allegations set forth herein, to be more specifically noticed on or before two weeks from today.

SIGNED the ___ day of October, 2023.


_____
DISTRICT JUDGE

FILED
10/19/2023 1:02 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Medelin Navarrete DEPUTY

||||  **DEARY RAY** LLP

**W. Ralph Canada, Jr.**  *Partner*
214.572.1718    |    ralphc@dearyray.com

<span style="color:red">3 SOS CIT/ESERVE</span>

October 19, 2023

<u>*Via E-File*</u>

District Court of Dallas County
George L. Allen, Sr. Courts Building
600 Commerce Street
Dallas, Texas  75202

      Re:    Granting Hands LLC vs. RAD Exotics LLC, Justin Spencer, and David Sigler;
                Cause No. DC-23-17220; 193rd Judicial District of Dallas County, TX

Dear Clerk:

      Please issue Citations in the above referenced matter to be served on Defendants as follows:

1. **Defendant RAD Exotics LLC**
   By Serving the Secretary of State of Texas who will forward process to Defendant as follows:
   Registered Agent:  AT, Inc.
   Attn:  Michael Chivell
   3770 Howard Hughes Parkway, Suite 200
   Las Vegas, Nevada  89169

2. **Defendant Justin Spencer**
   By Serving the Secretary of State of Texas who will forward process to Defendant as follows:
   78 Chapin Terrace
   Laconia, New Hampshire  03246-2306

3. **Defendant David Sigler**
   By Serving the Secretary of State of Texas who will forward process to Defendant as follows:
   17 Clifford Road
   Southborough, Massachusetts  01772-1501

      Once the Citations are issued, please return them to our office and we will forward them to the Secretary of the State of Texas for service.  If you have any questions please contact me at the number below.

Thank you.

Very truly yours,

*/s/ W. Ralph Canada, Jr.*

W. Ralph Canada, Jr.
Direct Dial:  214-572-1718

WRC/jkb

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jan Bailey on behalf of W. Ralph Canada, Jr.
Bar No. 3733800
Janetb@dearyray.com
Envelope ID: 80768402
Filing Code Description: Request
Filing Description:
Status as of 10/27/2023 10:49 AM CST

Associated Case Party: GRANTING HANDS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Melody Harrison | | melodyh@dearyray.com | 10/19/2023 1:02:52 PM | SENT |
| W. RalphCanada | | ralphc@dearyray.com | 10/19/2023 1:02:52 PM | SENT |
| Donna Lee | | donnal@dearyray.com | 10/19/2023 1:02:52 PM | SENT |

**App. 112**

FILED
10/19/2023 4:39 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Medelin Navarrete DEPUTY

||||**DEARY RAY** LLP

**W. Ralph Canada, Jr.** *Partner*
214.572.1718    |    ralphc@dearyray.com

2 CIT ESERVE

October 19, 2023

***Via E-File***

District Court of Dallas County
George L. Allen, Sr. Courts Building
600 Commerce Street
Dallas, Texas  75202

      Re:    Granting Hands LLC vs. RAD Exotics LLC, Justin Spencer, and David Sigler;
             Cause No. DC-23-17220; 193rd Judicial District of Dallas County, TX

Dear Clerk:

      Please issue two Citations in the above referenced matter to be served on Defendant Justin Spencer at the following addresses:

    **1.**  **Defendant Justin Spencer**
        78 Chapin Terrace
        Laconia, New Hampshire  03246-2306

    **2.**  **Defendant Justin Spencer**
        12 Veterans Square
        Laconia, New Hampshire  03246

      Once the Citations are issued, please return them to our office and we will have Defendant served by a private process server.  If you have any questions please contact me at the number below.

      Thank you.

                         Very truly yours,

                         */s/ W. Ralph Canada, Jr.*

                         W. Ralph Canada, Jr.
                         Direct Dial:  214-572-1718

WRC/jkb

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jan Bailey on behalf of W. Ralph Canada, Jr.
Bar No. 3733800
Janetb@dearyray.com
Envelope ID: 80786638
Filing Code Description: Request
Filing Description:
Status as of 10/27/2023 10:59 AM CST

Associated Case Party: GRANTING HANDS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Melody Harrison | | melodyh@dearyray.com | 10/19/2023 4:39:14 PM | SENT |
| W. RalphCanada | | ralphc@dearyray.com | 10/19/2023 4:39:14 PM | SENT |
| Donna Lee | | donnal@dearyray.com | 10/19/2023 4:39:14 PM | SENT |

FILED
10/20/2023 4:18 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Medelin Navarrete DEPUTY

# ⦀ DEARY RAY LLP

**W. Ralph Canada, Jr.**  *Partner*
214.572.1718   |   ralphc@dearyray.com

<span style="color:red">2 CIT/ESERVE</span>

October 20, 2023

<u>*Via E-File*</u>

District Court of Dallas County
George L. Allen, Sr. Courts Building
600 Commerce Street
Dallas, Texas  75202

Re:   Granting Hands LLC vs. RAD Exotics LLC, Justin Spencer, and David Sigler;
       Cause No. DC-23-17220; 193rd Judicial District of Dallas County, TX

Dear Clerk:

Please issue Citations in the above referenced matter to be served on Defendants as follows:

1. **Defendant RAD Exotics LLC**
   By and through its Registered Agent:
   AT, Inc.
   Attn:  Michael Chivell
   3770 Howard Hughes Parkway, Suite 200
   Las Vegas, Nevada  89169

2. **Defendant David Sigler**
   17 Clifford Road
   Southborough, Massachusetts  01772-1501

Once the Citations are issued, please return them to our office and we will have Defendants served by a private process server.

Thank you.

Very truly yours,

*/s/ W. Ralph Canada, Jr.*

W. Ralph Canada, Jr.
Direct Dial:  214-572-1718

WRC/jkb

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jan Bailey on behalf of W. Ralph Canada, Jr.
Bar No. 3733800
Janetb@dearyray.com
Envelope ID: 80829151
Filing Code Description: Request
Filing Description:
Status as of 10/27/2023 11:42 AM CST

Associated Case Party: GRANTING HANDS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Melody Harrison | | melodyh@dearyray.com | 10/20/2023 4:18:54 PM | SENT |
| W. RalphCanada | | ralphc@dearyray.com | 10/20/2023 4:18:54 PM | SENT |
| Donna Lee | | donnal@dearyray.com | 10/20/2023 4:18:54 PM | SENT |

**FORM NO.  353-3 - CITATION**
**THE STATE OF TEXAS**

<table>
<tr><td></td><td><u>ESERVE</u></td></tr>
</table>

To:   **DAVID SIGLER**
      **17 CLIFFORD ROAD**
      **SOUTHBOROUGH, MASSACHUSETTS  01772-1501**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and <u>**VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION AND MOTION FOR EXPEDITED DISCOVERY**</u>, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org.  Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **GRANTING HANDS, LLC**

Filed in said Court  **6th day of October, 2023** against

<u>**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**</u>

For Suit, said suit being numbered <u>**DC-23-17220,**</u> the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 28th day of October, 2023.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
    ANGELA CONEJO




---

**CITATION**

**DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED THIS
**28th day of October, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  ANGELA CONEJO, Deputy

**Attorney for Plaintiff**
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**App. 117**

# OFFICER'S RETURN

Case No. :  DC-23-17220

Court No.193rd District Court

Style: GRANTING HANDS, LLC, et al

 vs.

RAD EXOTICS, LLC, et al

Came to hand on the _____day of _____, 20_____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____day of _____,

20_____, by delivering to the within named _____

_____

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

| | | |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of _____ County, _____ |
| For Notary | $_____ | By _____ Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 _____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County _____

**App. 118**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**To:** **RAD EXOTICS, LLC**
**BY AND THROUGH ITS REGISTERED AGENT: AT, INC., ATTN: MICHAEL CHIVELL**
**3770 HOWARD HUGHES PARKWAY, SUITE 200**
**LAS VEGAS, NEVADA 89169**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and <u>VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION AND MOTION FOR EXPEDITED DISCOVERY</u>, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **GRANTING HANDS, LLC**

Filed in said Court **6th day of October, 2023** against

**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**

For Suit, said suit being numbered **DC-23-17220,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 28th day of October, 2023.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
  ANGELA CONEJO



**ESERVE**

**CITATION**

**DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED THIS
**28th day of October, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By: ANGELA CONEJO, Deputy

**Attorney for Plaintiff**
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**App. 119**

# OFFICER'S RETURN

Case No. :  DC-23-17220

Court No.193rd District Court

Style: GRANTING HANDS, LLC, et al

vs.

RAD EXOTICS, LLC, et al

Came to hand on the _____ day of _____, 20_____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____ day of _____,

20_____, by delivering to the within named _____

_____

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____ miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |
|---|---|---|
| For serving Citation | $_____ | _____ |
| For mileage | $_____ | of _____ County, _____ |
| For Notary | $_____ | By _____ Deputy |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 _____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County _____

**App. 120**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

To:    **JUSTIN SPENCER**
       **12 VETERANS SQUARE**
       **LACONIA, NEW HAMPSHIRE  03246-2306**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with  the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and **VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION AND MOTION FOR EXPEDITED DISCOVERY**, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org.  Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **GRANTING HANDS, LLC**

Filed in said Court  **6th day of October, 2023** against

**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**
For Suit, said suit being numbered **DC-23-17220,** the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 28th day of October, 2023.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
       ANGELA CONEJO




**ESERVE**

**CITATION**

**DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED THIS
**28th day of October, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  ANGELA CONEJO, Deputy

**Attorney for Plaintiff**
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**App. 121**

# OFFICER'S RETURN

Case No. :  DC-23-17220

Court No.193rd District Court

Style: GRANTING HANDS, LLC, et al

 vs.

RAD EXOTICS, LLC, et al

Came to hand on the _____day of _____, 20_____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____ .M. on the _____day of_____,

20_____, by delivering to the within named _____

_____

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |  |
|---|---|---|---|
| For serving Citation | $_____ | _____ |  |
| For mileage | $ _____ | of _____ County, _____ |  |
| For Notary | $_____ | By _____ Deputy |  |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said  _____ before me this _____ day of  _____, 20 _____,

to certify which witness my hand and seal of office.

_____

Notary Public  _____ County  _____

**App. 122**

# FORM NO. 353-3 - CITATION
# THE STATE OF TEXAS

**ESERVE**

**CITATION**

**DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED THIS
**28th day of October, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By:  ANGELA CONEJO, Deputy

**Attorney for Plaintiff**
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
**ralphc@dearyray.com**

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**To:  JUSTIN SPENCER**
**78 CHAPIN TERRACE**
**LACONIA, NEW HAMPSHIRE  03246-2306**

GREETINGS:
You have been sued.  You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. of the Monday next following the expiration of twenty days after you were served this citation and <u>**VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION AND MOTION FOR EXPEDITED DISCOVERY**</u>, a default judgment may be taken against you. In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org.  Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Ste. 101, Dallas, Texas 75202.

Said Plaintiff being **GRANTING HANDS, LLC**

Filed in said Court  **6th day of October, 2023** against

<u>**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**</u>

For Suit, said suit being numbered <u>**DC-23-17220,**</u> the nature of which demand is as follows:
Suit on **CNTR CNSMR COM DEBT** etc. as shown on said petition, a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office this 28th day of October, 2023.

ATTEST: FELICIA PITRE, Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy

ANGELA CONEJO



# OFFICER'S RETURN

Case No. :  DC-23-17220

Court No.193rd District Court

Style: GRANTING HANDS, LLC, et al

 vs.

RAD EXOTICS, LLC, et al

Came to hand on the _____day of _____, 20_____, at _____ o'clock _____.M. Executed at _____,

within the County of _____ at _____ o'clock _____.M. on the _____day of _____,

20_____, by delivering to the within named _____

_____

each in person, a true copy of this Citation together with the accompanying copy of this pleading, having first endorsed on same date of delivery.  The distance actually traveled by

me in serving such process was _____miles and my fees are as follows:   To certify which witness my hand.

|  |  |  |  |  |
|---|---|---|---|---|
| For serving Citation | $_____ | _____ | | |
| For mileage | $_____ | of _____ County, _____ | | |
| For Notary | $_____ | By _____ Deputy | | |

(Must be verified if served outside the State of Texas.)

Signed and sworn to by the said _____ before me this _____ day of _____, 20 _____,

to certify which witness my hand and seal of office.

_____

Notary Public _____ County _____

**App. 124**

FILED
10/24/2023 11:54 AM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Margaret Thomas DEPUTY

Case 3:23-cv-02408-L   Document 2   Filed 10/30/23   Page 128 of 138   PageID 138

CAUSE NO. DC-23-17220

| | | |
|---|---|---|
| **GRANTING HANDS LLC,** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **DALLAS COUNTY, TEXAS** |
| | § | |
| **RAD EXOTICS LLC, JUSTIN** | § | |
| **SPENCER, and DAVID SIGLER,** | § | |
| | § | |
| *Defendants.* | § | **193rd JUDICIAL DISTRICT** |

## <u>NOTICE OF ZOOM HEARING</u>

You are hereby notified that the above styled and numbered cause of action is set for a hearing on Plaintiff's Motion for Expedited Discovery on Wednesday, November 1, 2023 at 10:00 am CST. The hearing will be held via Zoom. Plaintiff's counsel will be attending the Zoom hearing and their email addresses are:

Ralph Canada: rcanada@dearyray.com;

Darryl Silvera at dsilvera@silveralaw.com

Defendants have not appeared in this case.

Dated:  October 24, 2023

Respectfully submitted,

_W. Ralph Canada, Jr._
W. Ralph Canada, Jr.
Texas State Bar No. 03733800
Donna Lee
Texas State Bar No. 24103439
DEARY RAY LLP
17070 Dallas Parkway, Suite 100
Dallas, Texas 75248
Phone:  214.572.1701
ralphc@dearyray.com
donnal@dearyray.com


Darryl J. Silvera
Texas State Bar. No. 18352280
THE SILVERA FIRM
17070 Dallas Parkway, Suite 100
Dallas, Texas 75248
Phone:  (972) 715-1750
dsilvera@silveralaw.com


*ATTORNEYS FOR PLAINTIFF*

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Jan Bailey on behalf of W. Ralph Canada, Jr.
Bar No. 3733800
Janetb@dearyray.com
Envelope ID: 80908296
Filing Code Description: Notice Of Hearing / Fiat
Filing Description: RE: PLAINTIFF MTN EXPEDITED DISCVY
Status as of 10/27/2023 7:28 AM CST

Associated Case Party: GRANTING HANDS LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Melody Harrison | | melodyh@dearyray.com | 10/24/2023 11:54:06 AM | SENT |
| W. RalphCanada | | ralphc@dearyray.com | 10/24/2023 11:54:06 AM | SENT |
| Donna Lee | | donnal@dearyray.com | 10/24/2023 11:54:06 AM | SENT |

**FORM NO. 3534 CITATION**
**THE STATE OF TEXAS**

To: **RAD EXOTICS, LLC**
(REGISTERED AGENT: AT, INC., ATTN: MICHAEL CHIVELL 3770 HOWARD HUGHES PARKWAY, SUITE 200 LAS VEGAS, NEVADA 89169)
**BY SERVING THE TEXAS SECRETARY OF STATE**
**OFFICE OF THE TEXAS SECRETARY OF STATE**
**CITATIONS UNIT - P.O. BOX 12079**
**AUSTIN, TEXAS, 78711**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. on the Monday next following the expiration of twenty days after you were served this citation and **VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY**, a default judgment may be taken against you.
In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Dallas Texas, 75202.

Said **PLAINTIFF** being **GRANTING HANDS, LLC**
Filed in said Court on the **6th day of October, 2023** against

**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**
For suit, said suit being numbered **DC-23-17220** the nature of which demand is as follows:
Suit On **CNTR CNSMR COM DEBT** etc.
as shown on said petition a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
Given under my hand and the Seal of said Court at office **on this the 28th day of October, 2023**
ATTEST: FELICIA PITRE Clerk of the District Courts of Dallas, County, Texas

By_____, Deputy
ANGELA CONEJO



**ESERVE (SOS)**

**CITATION**

No.: **DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

**ISSUED**
**ON THIS THE 28TH DAY OF OCTOBER, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **ANGELA CONEJO**, Deputy

Attorney for : Plaintiff
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**App. 128**

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Cause No. DC-23-17220
Court No: 193rd District Court
Style: GRANTING HANDS LLC, et al vs. RAD EXOTICS LLC, et al

Received this Citation the _____ day of _____, 20\_\_\_\_ at _____ o'clock. Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20\_\_\_\_\_, at _____ o'clock, by delivering to the within named _____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first endorsed on same the date of delivery.

----------000000----------

**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20\_\_\_\_ at _____ o'clock \_\_\_.M.  Executed at _____, within the County of _____, State of _____, on the _____ day of _____, 20\_\_\_\_\_, at _____ o'clock \_\_\_\_ .M. by summoning the within named Corporation, _____

_____ _____ President - Vice President - Registered Agent - in person, of the said

a true copy of this citation together with the accompanying copy of Plaintiff's  original petition, having first endorsed on same the date of delivery.

----------000000----------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:     To certify which witness by my hand.

| | | | |
|---|---|---|---|
| For Serving Citation | $_____ | Sheriff | _____ |
| For Mileage | $_____ | County of | _____ |
| For Notary | $_____ | State of | _____ |
| Total Fees | $_____ | By | _____Deputy |

(Must be verified if served outside the State of Texas)
State of _____
County of _____
      Signed and sworn to me by the said _____ before me this _____ day of _____, 20_____, to certify which witness my hand and seal of office.

Seal

State & County of _____

**App. 129**

**FORM NO. 3534 CITATION**
**THE STATE OF TEXAS**

**To: JUSTIN SPENCER**
(78 CHAPIN TERRACE LACONIA, NEW HAMPSHIRE 03246-2306)
**BY SERVING THE TEXAS SECRETARY OF STATE**
**OFFICE OF THE TEXAS SECRETARY OF STATE**
**CITATIONS UNIT - P.O. BOX 12079**
**AUSTIN, TEXAS, 78711**

GREETINGS:
You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. on the Monday next following the expiration of twenty days after you were served this citation and **VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY**, a default judgment may be taken against you.
  In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk. Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **193rd District Court** at 600 Commerce Street, Dallas Texas, 75202.

  Said **PLAINTIFF** being **GRANTING HANDS, LLC**
  Filed in said Court on the **6th day of October, 2023** against

**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**
  For suit, said suit being numbered **DC-23-17220** the nature of which demand is as follows:
  Suit On **CNTR CNSMR COM DEBT** etc.
as shown on said petition a copy of which accompanies this citation. If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
  Given under my hand and the Seal of said Court at office **on this the 28th day of October, 2023**
ATTEST: FELICIA PITRE Clerk of the District Courts of Dallas, County Texas

By_____, Deputy
                **ANGELA CONEJO**



---

ESERVE (SOS)

**CITATION**

No.: **DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED
**ON THIS THE 28TH DAY OF OCTOBER, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **ANGELA CONEJO**, Deputy

_____
Attorney for : Plaintiff
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Cause No. DC-23-17220
Court No: 193rd District Court
Style: GRANTING HANDS LLC, et al vs. RAD EXOTICS LLC, et al

Received this Citation the _____ day of _____, 20_____ at _____ o'clock.  Executed at _____, within the County of _____, State of_____, on the _____ day of _____, 20_____, at _____ o'clock, by delivering to the within named_____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first endorsed on same the date of delivery.

----------000000----------
**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the _____ day of _____, 20_____ at _____ o'clock ____.M.  Executed at _____, within the County of _____, State of_____, on the _____ day of _____, 20_____, at _____ o'clock _____ .M. by summoning the within named Corporation, _____
_____ President - Vice President - Registered Agent - in person, of the said
_____
a true copy of this citation together with the accompanying copy of Plaintiff's  original petition, having first endorsed on same the date of delivery.
----------000000----------
The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:     To certify which witness by my hand.

| | | |
|---|---|---|
| For Serving Citation | $_____ | Sheriff_____ |
| For Mileage | $_____ | County of_____ |
| For Notary | $_____ | State of_____ |
| Total Fees | $_____ | By _____Deputy |

(Must be verified if served outside the State of Texas)
State of_____
County of_____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20_____, to certify which witness my hand and seal of office.

Seal                                                                    State & County of

_____

**App. 131**

ESERVE  (SOS)

**FORM NO.  3534  CITATION**
**THE STATE OF TEXAS**

**To:   DAVID SIGLER**
    (17 CLIFFORD ROAD SOUTHBOROUGH, MASSACHUSETTS 01772-1501)
    **BY SERVING THE TEXAS SECRETARY OF STATE**
    **OFFICE OF THE TEXAS SECRETARY OF STATE**
    **CITATIONS UNIT - P.O. BOX 12079**
    **AUSTIN, TEXAS, 78711**

GREETINGS:
You have been sued. You may employ an attorney.  If you or your attorney do not file a written answer with the clerk who issued this citation by 10 o'clock a.m. on the Monday next following the expiration of twenty days after you were served this citation and **VERIFIED ORIGINAL PETITION, APPLICATION FOR TEMPORARY INJUNCTION, AND MOTION FOR EXPEDITED DISCOVERY**, a default judgment may be taken against you.
  In addition to filing a written answer with the clerk, you may be required to make initial disclosures to the other parties of this suit. These disclosures generally must be made no later than 30 days after you file your answer with the clerk.  Find out more at TexasLawHelp.org. Your answer should be addressed to the clerk of the **193rd District Court**  at 600 Commerce Street, Dallas Texas, 75202.

  Said **PLAINTIFF** being  **GRANTING HANDS, LLC**
  Filed in said Court on the **6th day of October, 2023** against

**RAD EXOTICS, LLC, JUSTIN SPENCER, and DAVID SIGLER**
 For suit, said suit being numbered   **DC-23-17220**  the nature of which demand is as follows:
 Suit On **CNTR CNSMR COM DEBT** etc.
as shown on said petition  a copy of which accompanies this citation.  If this citation is not served, it shall be returned unexecuted.

WITNESS: FELICIA PITRE, Clerk of the District Courts of Dallas, County Texas.
 Given under my hand and the Seal of said Court at office **on this the 28th day of October, 2023**
ATTEST: FELICIA PITRE Clerk of the District Courts of Dallas, County, Texas

       By_____, Deputy
            **ANGELA CONEJO**



**CITATION**

No.: **DC-23-17220**

**GRANTING HANDS, LLC, et al**
**vs.**
**RAD EXOTICS, LLC, et al**

ISSUED
**ON THIS THE 28TH DAY OF OCTOBER, 2023**

FELICIA PITRE
Clerk District Courts,
Dallas County, Texas

By **ANGELA CONEJO**, Deputy

Attorney for : Plaintiff
**W. RALPH CANADA**
**DEARY RAY, LLP**
**17070 DALLAS PARKWAY, SUITE 100**
**DALLAS, TEXAS 75248**
**(214) 572-1701**
ralphc@dearyray.com

**DALLAS COUNTY**
**SERVICE FEES**
**NOT PAID**

**OFFICER'S RETURN**
**FOR INDIVIDUALS**

Cause No. DC-23-17220
Court No: 193rd District Court
Style: GRANTING HANDS LLC, et al vs. RAD EXOTICS LLC, et al

Received this Citation the _____ day of_____, 20_____ at _____ o'clock.  Executed at _____, within the County of _____, State of_____, on the _____ day of _____, 20_____, at _____ o'clock, by delivering to the within named_____ each in person, a copy of this Citation together with the accompanying copy of Plaintiff's original petition, having first endorsed on same the date of delivery.

----------000000----------
**OFFICER'S RETURN**
**FOR CORPORATIONS**

Received this Citation the _____ day of_____, 20_____ at _____ o'clock _____.M.  Executed at _____, within the County of _____, State of_____, on the _____ day of _____, 20_____, at _____ o'clock _____.M. by summoning the within named Corporation, _____
_____ President - Vice President - Registered Agent - in person, of the said _____
a true copy of this citation together with the accompanying copy of Plaintiff's  original petition, having first endorsed on same the date of delivery.
----------000000----------

The distance actually traveled by me in serving such process was _____ miles and my fees are as follows:     To certify which witness by my hand.

| | | |
|---|---|---|
| For Serving Citation | $_____ | Sheriff_____ |
| For Mileage | $_____ | County of_____ |
| For Notary | $_____ | State of_____ |
| Total Fees | $_____ | By _____Deputy |

(Must be verified if served outside the State of Texas)
State of_____
County of_____
Signed and sworn to me by the said _____ before me this _____ day of _____, 20_____, to certify which witness my hand and seal of office.

Seal                                  State & County of
                                      _____

**App. 133**

In the District Court
of Dallas County
193RD Judicial District
DC-23-17220

In the District Court
of Dallas County, Texas
193rd Judicial District

GRANTING HANDS LLC
 vs.
 RAD EXOTICS LLC, et al

W. RALPH CANADA
12377 Merit Dr Ste 900
Dallas TX  75251-3102

## NOTICE OF INITIAL DISMISSAL HEARING

Counsel or Pro Se Plaintiff:

This case is set for a hearing on the Initial Dismissal Docket, as per Tex. R. Civ. P. 165a, for **11/29/2023, at 1:30 p.m. via submission to 193Court@dallascourts.org. To retain the case on the docket, you must submit a written request to retain to the above email address.**

1.    If no Defendant has been served as evidenced by no return of citation having been filed with the court on or before the Dismissal Hearing, the case is subject to being dismissed at the Dismissal Hearing;

2.    If service has been made on a Defendant, but no answer has been filed (and any such answer is past due before the Dismissal Hearing Date), you must obtain a default judgment on or before the Dismissal Hearing, or the case is subject to being dismissed at the Dismissal Hearing.  You are encouraged to submit requests for default by submission with affidavit.

3.    If service on at least one Defendant has been made and the citation has been returned to the Court before the Dismissal Hearing, but the time to file an answer has not yet expired, then the Dismissal Hearing should be reset.  Please contact the Court Administrator to obtain reset. You are expected to obtain a default judgment before the reset date of the Dismissal Hearing/Status Conference, or the case is subject to being dismissed.

4.    If an answer is filed on or before the Dismissal Hearing, the case will be referred to the Court Coordinator to be set for trial, if not already set.

SIGNED this 10/11/2023

**App. 134**

_____
The Honorable Bridgett N. Whitmore,
193rd Judicial District Court