IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GRANTING HANDS LLC,            §
                               §
            Plaintiff,         §
                               §
v.                             §        Case No. 3:23-cv-02408-L
                               §
RAD EXOTICS LLC, JUSTIN        §
SPENCER, and DAVID SIGLER,     §
                               §
            Defendants.        §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court is Defendant Justin Spencer's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6) (ECF No. 30). For the reasons set forth below, the District Judge should GRANT the motion, in part, and allow Plaintiff an opportunity to amend its complaint.

## Background

This is a removed civil action brought by Plaintiff Granting Hands, LLC against Defendants RAD Exotics, LLC, Justin Spencer, and David Sigler. According to the Amended Complaint, Spencer and Sigler were the cofounders and sole members of RAD Exotics—a limited liability company created for the purpose of selling and servicing luxury cars. Am. Compl. ¶¶ 1, 14 (ECF No. 22). Both Spencer and Sigler served as managers of RAD Exotics, and Sigler also served as the President. *Id.* ¶ 14.

In March 2021, the parties entered into a credit facility agreement whereby Plaintiff agreed to loan RAD Exotics $4 million to finance the acquisition of an inventory of high-priced exotic cars, and Defendants agreed to repay the loan proceeds as RAD Exotics sold the cars. *Id.* ¶¶ 1, 17-18. Plaintiff alleges that RAD Exotics, Spencer, and Sigler each became an "Obligor" under the terms and conditions of various loan documents memorializing the credit facility agreement and, as such, each Defendant is obligated to repay all amounts Plaintiff loaned to RAD Exotics. *Id.* ¶¶ 2, 15-16.

Initially, the financial arrangement appeared to operate as intended: RAD Exotics identified a car for purchase; Defendants requested funds from Plaintiff to acquire the car; Plaintiff wired the requested amount to RAD Exotics; RAD Exotics acquired the car and submitted the title to Plaintiff; upon the sale or trade-in of the car to a third party, RAD Exotics wired the borrowed amount to Plaintiff and Plaintiff returned the title to RAD Exotics. *Id.* ¶ 36. However, in the spring of 2022, Plaintiff began to identify car titles it had sent to RAD Exotics for RAD Exotics to complete a sale, but for which Plaintiff had never received any refund of loan proceeds. *Id.* ¶ 38. Defendants allegedly failed to respond, or gave knowingly false responses, to Plaintiff's inquiries about the status of the car titles Plaintiff identified. *Id.* ¶¶ 38, 41, 42-53.

Plaintiff alleges that Spencer and Sigler fraudulently used RAD Exotics as their alter ego in order to enrich themselves at Plaintiff's expense by wiring funds from RAD Exotics operating accounts to their own personal accounts and to unidentified persons or entities. *Id.* ¶¶ 5, 54, 60-64. And— as a result of Spencer and Sigler's fraudulent conduct—RAD Exotics is defunct and its inventory of cars entirely gone despite over $1.3 million owed to Plaintiff. *Id.* ¶¶ 5, 58.

Based on these alleged facts, Plaintiff sued Defendants in state court. To date, Spencer is the only Defendant who has appeared in this action.[1] Spencer removed the lawsuit to federal court and filed his first motion to dismiss. Mot. Dismiss (ECF No. 14). The Court ultimately denied the motion as moot after Plaintiff filed its Amended Complaint. Order (ECF No. 28).

In its Amended Complaint, Plaintiff asserts claims against Defendants for: (1) breach of contract; (2) conversion; (3) fraudulent conveyance; (4) declaratory judgment; (5) fraud; (6) concerted action to commit conversion and conspiracy to defraud; (7) restitution; and (8) accounting. *See* Am. Compl. (ECF No. 22). Regarding Spencer, Plaintiff contends that Spencer himself made contractual promises that he never

---

[1] Plaintiff requested and the Clerk of Court entered an Entry of Default against RAD Exotics on December 11, 2023 (ECF No. 18) and against Sigler on April 11, 2024 (ECF No. 46). Plaintiff's motion for default judgment against RAD Exotics and Sigler (ECF No. 52) is pending before the District Judge.

performed, made material misrepresentations, and engaged in other misconduct. For example, Spencer induced Plaintiff to enter the loan documents, *see id.* ¶¶ 13-14, 92, Spencer promised to conduct RAD Exotics in a manner that would ensure repayment of the loan proceeds to Plaintiff, *see id.* ¶¶ 2-23, 33-35, and Spencer guaranteed the loan by pledging collateral, *see id.* ¶¶ 7, 28-29. Further, Plaintiff avers that "RAD Exotics was and is the alter ego of Spencer and Sigler, which justifies the Court's disregard of RAD Exotics' entity protection so as to hold Spencer and Sigler liable for the misconduct of RAD Exotics[.]" *Id.* ¶ 60.

Spencer filed the pending motion to dismiss on January 25, 2024. Mot. Dismiss (ECF No. 30). As grounds for his motion, Spencer argues that Plaintiff has failed to allege facts sufficient to state a claim that Spencer is personally liable for any amounts owing on the loan. *See id.* at 7, 10-12. Spencer argues that Plaintiff has not alleged that he is a party to the loan documents and that he did not execute a personal guarantee. *Id.* at 10-12. Regarding Plaintiff's alter ego theory, Spencer argues that Plaintiff has failed to allege facts to show misconduct necessary to pierce RAD Exotics's corporate veil. *Id.* at 21-24. Spencer further contends that Plaintiff's pleading fails the heightened requirement for fraud. *Id.* at 14-19.

Plaintiff filed a response, and Spencer filed a reply. Thus, Spencer's motion is fully briefed and ready for determination.

**Legal Standards**

To survive a Rule 12(b)(6) motion, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

When applying the plausibility standard, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). But a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Review is "limited to the complaint, any documents attached to the complaint, and any documents attached to the [motion to dismiss] that are central to the claim and referenced by the complaint." *Smith v. Buffalo Wild Wings*, 2021 WL 4265849, at *2 (N.D. Tex. Sept. 20, 2021) (Fitzwater, J.) (citing *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)); *see also Inclusive Communities Project, Inc. v. Heartland Cmty. Ass 'n, Inc*., 399 F. Supp. 3d 657, 665 (N.D. Tex. 2019) ("In ruling on [a Rule 12(b)(6)] motion, the court cannot look beyond the pleadings." (citing *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999))), *aff'd,* 824 F. App'x 210 (5th Cir. 2020).

A heightened level of pleading applies to fraud claims—plaintiffs alleging fraud must plead with particularity. Fed. R. Civ. P. 9(b). This requires "the complaint to set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). The Fifth Circuit "interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were

made, and explain why the statements were fraudulent." *Id.* (internal quotation marks omitted).

## Analysis

I.    <u>Plaintiff plausibly alleges a breach of contract claim against Spencer.</u>

As set forth in the Amended Complaint and the attachments thereto, RAD Exotics executed various documents on March 19, 2021, memorializing the credit facility agreement with Plaintiff, including: (1) a Loan and Security Agreement (ECF No. 22-1); (2) a Promissory Note (ECF No. 22-3); (3) a Closing Certificate (ECF No. 22-5); and (4) an Irrevocable Power of Attorney (ECF No. 22-6) (collectively, the "Loan Documents"). Am. Compl. ¶ 16. On December 31, 2021, RAD Exotics executed a First Amended Promissory Note (ECF No. 22-4) and First Amended Loan and Security Agreement (ECF No. 22-2) that increased the principal amount of the loan. *Id.* Spencer did not sign any Loan Document in his individual capacity. Rather, Spencer signed the Loan Documents in his representative capacity as a manager of RAD Exotics. *See id.* at Ex. 1-6.

Together, these Loan Documents provided RAD Exotics a $4 million line of credit to "finance floor plan inventory in the ordinary course of business." Am. Compl. ¶ 17 (ECF No. 22) (citing ECF No. 22-1 at 6). And, unless the loan was accelerated, any remaining outstanding principal amount and unpaid interest on the loan were due on March 1, 2023. *Id.* ¶ 22. The Loan Documents required RAD Exotics to: (1) make weekly

payments towards the principal, interest, and fees; (2) keep proper books of records and account of all dealings and transactions; (3) provide Plaintiff with monthly financial statements, consolidated financial statements, and annual tax returns; and (4) permit Plaintiff to review its financial records. *Id.* ¶¶ 18, 21. The Loan Documents also prohibited RAD Exotics from granting a security interest in or encumbering any of Plaintiff's assets. *Id.* ¶ 22.

On the same day that RAD Exotics executed the Loan Documents, Spencer executed a "Pledge Agreement," in his individual capacity. *Id.* at Ex. 7 (ECF No. 22-7). Under the Pledge Agreement, Spencer agreed "to secure the repayment of the Indebtedness [created by the Loan Documents][.]" *Id.* As alleged by Plaintiff, the Pledge Agreement granted to Plaintiff a continuing first priority security interest in all of Spencer's outstanding equity interests in RAD Exotics, together with all proceeds therefrom (the "Equity Interest"). *Id.* ¶ 32; *see also* Exs. 7 & 8 ¶ 1. Spencer further agreed that all proceeds from the Equity Interest, including any cash proceeds and any property received by him, "shall be held in trust for [Plaintiff] and upon request shall be delivered immediately to [Plaintiff]." *Id.*

In addition, Spencer agreed that, until the loan was repaid, he would:

a. "[P]erform all of [his] agreements herein and in any other agreements between it and Lender";

b. "[D]efend the [Equity Interest] against all claims and demands of all persons at any time claiming any interest therein

8

adverse to [Plaintiff]" and "keep the [Equity Interest] free from all liens and security interests"; and

c. "[P]ay or cause [RAD Exotics] to pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement, and preserve, defend, enforce and collect the [Equity Interest], including but not limited to taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales."

*Id.* ¶ 33. And Spencer agreed that "[w]ithout the prior written consent of [Plaintiff], [he] will not sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the Collateral, nor will Grantor create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the [Equity Interest], or any interest therein, or any proceeds thereof." *Id.* ¶ 35 (citing Ex. 7 ¶ 6).

### A.) Claims based on Alleged Breach of the Loan Documents

To prevail on a breach of contract claim under Texas law,[2] a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the defendant's breach." *Am. Gen. Life Ins. Co. v. Kirsh*, 378 Fed. Appx. 379, 383 (5th Cir. 2010). The parties dispute only the third element.

---

[2] The parties agreed that the Loan Documents must be construed under Texas law. *See* Am. Compl., Ex. 1 ¶ 23 (ECF No. 22-1); Ex. 3 ¶ 10 (ECF No. 22-3).

Specifically, Plaintiff contends that Spencer, as an "Obligor and/or Obligated Party," breached the Loan Documents by "[f]ailing to pay the principal and accrued interest owed on vehicles that were financed by Plaintiff and disposed of by RAD Exotics" and "[f]ailing to pay the outstanding principal balance of the Note, accrued interest and other applicable charges when due[.]" Am. Compl. ¶¶ 65-69 (ECF No. 22). However, Spencer argues that he was "not personally a party" to any Loan Document—having signed only the Pledge Agreement in his individual capacity—and that he cannot have breached any Loan Document to which he was not a party. Mot. Dismiss 10 (ECF No. 30). Plaintiff counters that even though Spencer did not sign the Loan Documents in his individual capacity, he his bound by the terms and provisions of the Loan Documents because the Loan Documents and his Pledge Agreement comprise one contract that should be construed together. Resp. 11-13 (ECF No. 40).

As a general rule, "a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 337, 341 (Tex. 1968); *Rapid Settlements, Ltd. v. Green*, 294 S.W.3d 701, 706 (Tex. App.—Houston [1ˢᵗ Dist.] 2009, no pet.). Thus, a nonparty to a contract generally cannot breach any obligations created by the contract. But "Texas law has long recognized that nonparties may be bound to a contract under various legal principles." *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005).

Specifically, under Texas law, a court's primary objective is to ascertain the parties' true intentions as expressed in the language they chose. *Rieder v. Woods*, 603 S.W.3d 86, 94 (Tex. 2020). Courts "construe a contract in a manner that gives 'effect to the parties' intent expressed in the text,' but [] may also take into account 'the facts and circumstances surrounding the contract's execution.'" *Id.* (citing *Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 22 (Tex. 2014)). "In that vein, Texas courts have long recognized that, under appropriate circumstances, 'instruments pertaining to the same transaction may be read together to ascertain the parties' intent[.]'" *Id.* (citing *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (citations omitted)).

Further, as Plaintiff emphasizes, "[w]here appropriate, 'a court may determine, as a matter of law,' that multiple separate contracts, documents, and agreements 'were part of a single, unified instrument.'" *Id.* (citing *Fort Worth Indep. Sch. Dist.*, 22 S.W.3d at 840). "But when construing multiple documents together, courts must do so with caution, bearing in mind that tethering documents to each other is 'simply a device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation.'" *Id.* (citing *Miles v. Martin*, 159 Tex. 336, 341 (1959)).

Here, Plaintiff has plausibly alleged that the Loan Documents and his Pledge Agreement should be read together to comprise one contract to which

Spencer is a party. Plaintiff alleges that the parties entered the Loan Documents and the Pledge Agreement contemporaneously and that all the documents concern the same credit facility transaction. Am. Compl. ¶¶ 13-35; *see also* Am. Compl., Ex. 1 ¶ 1 (defining "Loan Documents" to include "this [Loan and Security] Agreement, the Note, the Guaranty, *and the other agreements, instruments and documents evidencing, securing, governing, guaranteeing or pertaining to the Loans, executed by any Obligor or otherwise*") (emphasis added); Am. Compl., Ex. 1 ¶ 2(a) ("Subject to the terms and conditions set forth in this Agreement *and the other Loan Documents*, Lender hereby agrees to make Loans to [RAD Exotics]."). The Loan Documents and the Pledge Agreement, which are attached to the Amended Complaint, use the same defined terms to explain the parties' financing arrangement, and those documents include Spencer within the broad definition of who is an "Obligor." *See id.* at Ex. 1 ¶ 1 (defining "Obligors" to mean "[RAD Exotics], Grantor or any other Person who guaranteed the Indebtedness, has pledged assets securing the Indebtedness, or is otherwise obligated to pay or perform all or any portion of the Indebtedness" and defining "Grantor" as "a Person that pledges assets to secure the Indebtedness, including but not limited to the Debtor."); *see id.* at Ex. 7 ("[Spencer] has agreed to execute this [Pledge Agreement] to secure the repayment of the Indebtedness (as defined in the [Loan and Security Agreement]."). Each document is subject to the terms of the other Loan

Documents, and all of the Loan Documents include the same merger clause—which is a requirement of the Loan and Security Agreement—which states: "THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES." *Id.* at Ex. 1 ¶ 32.

Throughout the Loan Documents, Spencer makes representations, warranties, and covenants to Plaintiff as an Obligor. For example, in the Loan and Security Agreement, "each Obligor agrees and covenants" that RAD Exotics will "pay its obligations . . . that, if not paid, could become a lien"; "keep, maintain and preserve all property . . . material to the conduct of its business"; "do or cause to be done all things necessary to preserve . . its legal existence"; "keep proper books of record and account"; "promptly inform" Plaintiff of the "creation, incurrence or assumption" of any debt; "furnish to Lender prompt written notice of" material events such as "the occurrence of any Default" or "any and all material adverse changes in any Obligor's financial condition"; and "maintain good and indefeasible title to the Collateral[.]" *Id.* at Ex. 1 ¶ 7. In Spencer's Pledge Agreement, he reaffirmed the warranties and covenants made as an Obligor in the other Loan Documents. *See id.* at Ex. 7 ¶ 3 ("Grantor shall perform all of its agreements herein and in any other agreements between it and Lender[.]"). Spencer also made additional covenants within his Pledge Agreement, including that he will defend the Equity Interest against all claims adverse

13

to Plaintiff; he will "keep the Collateral free from all liens and security interests"; he will pay or cause RAD Exotics to pay "all costs necessary" to preserve, defend and enforce the Equity Interest; and he will not dispose of, or create any encumbrance whatsoever with respect to the Equity Interest or any proceeds thereof. *Id.* ¶¶ 3, 6.

Plaintiff alleges Defendants breached the agreement memorialized in the Loan Documents when RAD Exotics disposed of cars in its inventory without paying the proceeds to Plaintiff, as required by the parties' agreement. *See* Am. Compl. ¶¶ 38-39 (ECF No. 22). Plaintiff further alleges that Spencer breached several of his obligations as an Obligor by failing to preserve RAD Exotics's inventory and to ensure that RAD Exotics kept and maintained proper books and records. *See id.* ¶¶ 41-46.

As pleaded, Plaintiff's factual allegations are sufficient to reasonably infer that the parties intended that the Loan Documents be read together to comprise one contract to which Spencer is a party, and that Spencer breached that contract. Spencer's argument that had Plaintiff wanted him to undertake personal liability for the funds advanced under the credit facility arrangement, it should have required Spencer to be an actual party to the Loan Agreement or to execute a separate personal guarantee bears on the issue of the parties' intent. And that argument may be persuasive in another procedural context. But here, the Court is limited to ascertaining whether Plaintiff has plausibly pleaded a cause of action. Because Plaintiff has

14

pleaded a claim for breach of the agreement memorialized in the Loan Documents, the Court should deny Spencer's motion to dismiss this claim.

### B.) Claims based on Alleged Breach of the Pledge Agreement

Plaintiff alleges that Spencer breached the Pledge Agreement by, among other things, "[c]reating, incurring or permitting to exist other pledges, liens, mortgages, hypothecations, security interests, charges, options or other encumbrances with respect to the Collateral and any proceeds thereof without obtaining written consent from [Plaintiff]." Am. Compl. ¶ 70 (ECF No. 22).

Plaintiff provides sufficient allegations to plausibly allege that Spencer breached his obligations under the Pledge Agreement by permitting additional lines of credit to be taken out on the collateral securing RAD Exotics's repayment of the loan proceeds. The Amended Complaint alleges that "Defendants opened at least one other credit line with another bank— in plain violation of the Loan Documents" and "Spencer admitted that RAD Exotics had taken out additional credit lines in clear violation of the Loan Documents." *Id.* ¶¶ 5, 55. The Amended Complaint includes various allegations raising the reasonable inference that Spencer had the authority as a manager to allow RAD Exotics to take on additional credit. *See id.* ¶ 14 (alleging Spencer and Sigler were cofounders, sole members, and managers of RAD Exotics and that "Spencer and Sigler controlled every aspect of RAD Exotics, including the purchase and sale of its car inventory and the use of

the company's operating expenses."). These allegations, taken as true, raise at least a reasonable inference that Spencer breached his obligation under the Pledge Agreement to not "permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the Collateral [without the consent of Plaintiff][.]" *Id.* at Ex. 7 ¶ 6. (ECF No. 22-7).

Accordingly, Plaintiff plausibly alleges a breach of contract claim against Spencer through his alleged breach of the Pledge Agreement.

*C.) Claims based on Alter Ego Allegations*

Plaintiff argues that the Court should pierce the corporate veil to hold Spencer personally liable for RAD Exotics's wrongs. *See Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1035 (5th Cir. 2010) ("Piercing the corporate veil is not a separate cause of action, but a method to impose personal liability on shareholders and corporate officers who would otherwise be shielded from liability for corporate debts."). Specifically, Plaintiff alleges that the three Defendants are "one and the same" and that "RAD Exotics is the alter ego of Spencer and Sigler[.]" Am. Compl. ¶¶ 14, 20, 63, 89 (ECF No. 22).

Because RAD Exotics is a Nevada limited liability company, *see id.* ¶ 7, the existence of any alter ego is governed by Nevada law. *See Ingenious Invs., Inc. v. Bombart*, 2006 WL 1582080, at *3 (N.D. Tex. Jan. 20, 2006) ("Whether the corporate entity can be disregarded is determined by the law

16

of the state of incorporation for each defendant."). To prevail on its alter ego theory under Nevada law, Plaintiff must plausibly allege: (1) RAD Exotics was influenced and governed by Spencer; (2) the existence of such unity of interest between RAD Exotics and Spencer that one is inseparable from the other; and (3) adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud, or promote injustice.[3] *See Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1214 (D. Nev. 2001); *Lorenz v. Beltio, Ltd.*, 114 Nev. 795, 807 (1998); *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601 (1987).

Nevada courts consider several factors when analyzing the unity of interest factor, including "commingling of funds, undercapitalization, unauthorized diversion of funds, treatment of corporate assets as the individual's own, and failure to observe corporate formalities." *Lorenz*, 114 Nev. at 808 (citing *Polaris,* 103 Nev. at 601). No one of these factors alone is determinative. *Id.*

---

[3] There appears to be some debate among Nevada courts on whether to apply the heightened pleading standard found in Rule 9(b) to alter ego theories. However, these findings follow the lead of several Nevada courts by declining to apply a heightened plausibility standard to Plaintiff's allegations. *See Risinger v. SOC LLC*, 936 F. Supp. 2d 1235, 1242 (D. Nev. 2013) (noting debate among district courts nationwide but ultimately declining to impose a heightened pleading requirement for the elements of an alter ego theory). Regardless, Spencer does not depend on a heightened pleading standard in his motion or reply brief, instead contending that Plaintiff fails to plausibly plead its alter ego theory under the general plausibility standard. *See* Reply 8 (ECF No. 43) ("To pierce the corporate veil, Plaintiff must *plausibly* allege . . . .) (emphasis added).

Here, Plaintiff plausibly alleges facts sufficient to support its alter ego theory. Plaintiff alleges that Spencer was a Manager of RAD Exotics and Sigler was the President and a Manager, and the two "controlled every aspect of RAD Exotics, including the purchase and sale of its car inventory and the use of the company's operating expenses." Am. Compl. ¶14; *see also* Am. Compl. ¶ 77 ("[Spencer and Sigler] owned, managed and controlled every aspect of RAD Exotics, including directing and overseeing the purchase and sale of its vehicle inventory. Spencer and Sigler also had access to the RAD Exotics operating account into which the loaned amounts as well as proceeds from sales of its inventory were deposited; upon information and belief, they made, directed or authorized payments to and from this account."). Plaintiff also alleges that Spencer permitted more than 60 unauthorized transfers totaling more than $3.7 million, and that Spencer refused to substantiate the details of the majority of these transfers. Am. Compl. ¶¶ 50-54. Spencer further authorized two other credit lines, without the requisite notice, and paid these other creditors instead of Plaintiff. *Id*. ¶ 55. These allegations give rise to a reasonable inference that Spencer diverted funds without authorization and potentially undercapitalized RAD Exotics. Finally, Plaintiff alleges that Spencer and Sigler had a "fraudulent plan to use RAD Exotics as their alter ego in order to enrich themselves at the expense of Granting Hands[.]" *Id*. ¶ 3. Whether Plaintiff can substantiate these allegations and, if so, whether such facts are sufficient to establish Spencer

18

used RAD Exotics as his alter ego must be tested in another procedural context. For purposes of Spencer's 12(b)(6) challenge, Plaintiff's allegations should survive summary dismissal.

II.  <u>Plaintiff should be granted leave to amend its pleading to plausibly allege a conversion claim against Spencer.</u>

Plaintiff brings a conversion claim against each Defendant. Am. Compl. ¶¶ 75-81. In relevant part, the Amended Complaint alleges "Defendants unlawfully and without authority assumed and exercised dominion and control over the Collateral, including the assets and business operations of RAD Exotics, to the exclusion of, and inconsistent with, Plaintiff's rights." *Id.* ¶ 78.

Under Texas law, conversion has four elements: "(1) [P]laintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property." *Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 529 (N.D. Tex. 2016) (citing *Hoffman v. AmericaHomeKey, Inc.*, 2014 WL 7272596, at *8 (N.D. Tex. Dec. 22, 2014)). Spencer argues that Plaintiff's conversion claim fails because the Amended Complaint does not sufficiently allege that he possessed Plaintiff's property.

Plaintiff tacitly acknowledges that its allegations with respect to the second element may fall short and asks for leave to amend its pleading. Resp. 15, n.8 (ECF No. 40) ("Should the Court find Plaintiff's allegations deficient on [the second element], Plaintiff requests leave to amend to include additional facts that Spencer himself introduced to the Court in his recently filed declaration. Spencer averred that after Plaintiff began inquiring about the location of certain cars, 'I took possession of all vehicles in RAD's inventory and relocated them'. Spencer thus had 'dominion and control' of RAD Exotics' cars.") (internal citations omitted). Plaintiff's proposed amendment would address a critical deficiency identified by Spencer, and it is not futile. Thus, the Court should allow Plaintiff to amend its allegations related to conversion and pretermit consideration of Spencer's arguments for dismissal of this claim.

III.    <u>Plaintiff fails to plausibly allege fraud against Spencer.</u>

Plaintiff claims each Defendant committed fraud based on representations made before execution of the Loan Documents, representations made within the Loan Documents themselves, and representations made after execution of the Loan Documents. Am. Compl. ¶¶ 91-94. "To state a fraud claim under Texas law, a complaint must plausibly set forth the following elements: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation

20

the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 972 (N.D. Tex. 2014).

*A.) Pre-contractual Representations*

The Amended Complaint alleges that "[i]n or about March 1, 2021, Spencer and Sigler represented to [Plaintiff] that they would establish RAD Exotics for legitimate business purposes in order to induce Plaintiff to enter into the Loan Documents, when in fact, they intended to, and did in fact, use their newly formed entity to obtain loan proceeds they could divert to their personal accounts or use." Am. Compl. ¶ 92. Plaintiff does not allege the elements of fraud with the level of particularity required under Rule 9(b). The Amended Complaint does not explain the circumstances of the alleged representation or how the representation was made. Plaintiff's allegations refer to Spencer and Sigler jointly rather than detailing what representations were made by each individual Defendant. *See Dorsey*, 540 F.3d at 339 (plaintiff must allege *who* made relevant representation with particularity).

Moreover, under Texas law, "[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Shandong*, 607 F.3d at 1033 (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex.

1986)). "'[A] party's intent is determined at the time the party made the representation[] [and] may be inferred from the party's subsequent acts after the representation is made.'" *Id.* (citing *Spoljaric*, 708 S.W.2d at 434). But the Amended Complaint does not contain sufficient allegations regarding Spencer's intent at the time the alleged representation was made. And while Plaintiff contends that RAD Exotics's default on the loan shows that the business was not legitimate, "failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made." *Id.* (citing *Spoljaric*, 708 S.W.2d at 435).

## B.) Contractual Representations

Plaintiff asserts Defendants made fraudulent representations on March 19, 2021, through execution of the Loan Documents. Specifically, Plaintiff alleges that "in the Loan Documents, RAD Exotics, Spencer and Sigler represented that RAD Exotics did not have and would not obtain other lines of credit" and that "each and all of them as Obligors would repay the Note, including by repaying the proceeds of sold vehicles to Plaintiff[.]" Am. Compl. ¶ 92. The Complaint further alleges that, despite these representations, "RAD Exotics shortly thereafter opened other lines of credit with NextGear and TD Auto Finance" and "deliberately did not [repay the Note] and thereafter evaded inquiries[.]" *Id.*

Plaintiff fails to allege the elements of fraud with the particularity required under Rule 9(b). Regarding both promises made within the Loan

Documents and promises Spencer made in the Pledge Agreement, the Amended Complaint does not present plausible allegations regarding intent at the time the promises were made. *See Shandong*, 607 F.3d at 1033 (citing *Spoljaric*, 708 S.W.2d at 434). And again, the ultimate failure to perform a promise does not, by itself, show fraudulent intent at the time the promise was made. *See id.*

Further, any failure to perform or satisfy representations made within the Loan Documents or Pledge Agreements would already be a breach of contract and barred by the economic loss rule. Under Texas law, the economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Dixon v. Bank of New York Mellon*, 2014 WL 2991742, at *6 (N.D. Tex. July 3, 2014) (Lindsay, J.) (citing *Lamar Homes, Inc. v. Mid Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007)). As the Texas Supreme Court has explained, "[w]hen the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986). The Amended Complaint's allegation of loss pursuant to its fraud claims are directly related to the credit facility arrangement created by the Loan Documents and arise solely from Plaintiff's contractual relationship with Defendants. Thus, the economic loss rule precludes Plaintiff's fraud claim based upon contractual representations

because Plaintiff has not alleged any suffered loss independent of the Loan Documents. *See Dixon*, 2014 WL 2991742, at \*6.

*C.) Post-contractual Representations*

Plaintiff claims that Spencer made fraudulent representations after the execution of the Loan Documents and Pledge Agreements. Specifically, the Amended Complaint alleges:

> f. On February 23 and 27, 2023, Spencer represented that financial statements for RAD Exotics were being prepared and would be provided promptly when none of the Defendants intended to turn over these materials to Plaintiff;
>
> g. On June 22, 2023, Spencer represented that "nothing looks out of the norm" with respect to the external wire transfers that Plaintiff inquired about, but did not provide any other information or documents that might substantiate his claim in order to conceal Defendants' diversion of corporate funds for purposes that were not permitted under the Loan Documents; and
>
> h. On August 3, 2023, Spencer represented that the amounts Defendants directly wired to Sigler's personal account on at least 32 separate occasions in varying amounts were for Sigler's salary when RAD Exotics paid its employees through a payroll provider on a completely different schedule and the amounts wired often exceeded the amount of Sigler's salary.

Am. Compl. ¶ 92.

Plaintiff again fails to allege the elements of fraud with the particularity required under Rule 9(b). Plaintiff does not plausibly allege it changed its position by relying on any of the alleged post-contractual representations. Indeed, the only specific allegation of reliance is that Plaintiff was induced to sign the Loan Documents on March 19, 2021. *See id.*

Plaintiff could not have relied on representations made after execution of the Loan Documents when deciding whether to sign the Loan Documents in the first place.

However, Plaintiff requests leave to amend its pleading to assert reliance on the alleged misrepresentations. Resp. 22, n.14 (ECF No. 40). Plaintiff further states that its prior pleading contained such allegations. *Id.* The Court should allow Plaintiff the opportunity to amend its complaint to allege reliance.

IV.    <u>Plaintiff fails to plausibly allege fraudulent conveyance against Spencer.</u>

Plaintiff brings a fraudulent conveyance claim against each Defendant, alleging that "[a]t times and to persons unknown, RAD Exotics, directly and/or indirectly, including through Spencer and Sigler, sold, transferred or otherwise conveyed all or substantially all of its assets to Spencer, Sigler and/or other unknown persons or entities." Am. Compl. ¶ 83. The Amended Complaint alleges that "[t]hese transfers were made with actual intent to hinder, delay or defraud creditors, including Plaintiff, and therefore constitute fraudulent transfers under Texas Business & Commercial Code §§ 24.005 and 24.006." *Id.* ¶ 84.

A claim for fraudulent conveyance under the Texas Uniform Fraudulent Transfer Act (TUFTA) "requires that a 'transfer [is] made or [an] obligation [is] incurred by a debtor.'" *Radio Networks, LLC v. Baisden*

*Enterprises, Inc.*, 2017 WL 2722565, at *14 (N.D. Tex. June 20, 2017) (Lindsay, J.) (citing Tex. Bus. & Com. Code § 24.005(a)). The Amended Complaint does not allege that Spencer, as an individual, is a debtor; rather, the Complaint only alleges that RAD Exotics is a debtor, *see* Am. Compl. ¶¶ 15, 17, 22, 66, and that RAD Exotics made an allegedly fraudulent transfer, *id.* ¶ 83. While the Amended Complaint alleges that Spencer at one time owed Plaintiff certain membership interests, it also alleges that those interests were granted to Plaintiff through execution of Spencer's Pledge Agreement. Further, the Amended Complaint does not allege that Spencer, as an individual, affirmatively transferred any asset.

In its Response brief, Plaintiff posits that even if it fails to allege Spencer is a debtor under TUFTA, it may state a fraudulent conveyance claim against Spencer as "the first transferee of the asset or the person for whose benefit transfer was made." Resp. 17 (ECF No. 40) (citing *GE Capital Commercial, Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954, at *6 (N.D. Tex. Dec. 31, 2009) (Lindsay, J.)). However, the Amended Complaint only generally alleges that RAD Exotics fraudulently transferred funds to Spencer, Sigler, and others. Plaintiff does not specify which of the various transfers mentioned throughout the Amended Complaint were fraudulent under TUFTA, much less detail the circumstances surrounding such fraud. *See, e.g.*, Am. Compl. ¶ 50(a) (generally referencing "[a]t least 32 external wire transfers in varying amounts, totaling more than $3.2 million"). While

26

Plaintiff does not have to allege the circumstances of fraud with the particularity required by Rule 9(b), these undetailed allegations do not even meet the lower standard of plausibility. *See GE Cap. Com.*, 2009 WL 5173954, at *10 (heightened 9(b) pleading standard did not apply to fraudulent transfer claims brought against transferee). The Court should grant Spencer's motion to dismiss this claim.

V.    Plaintiff fails to plausibly allege civil conspiracy or concerted action liability against Spencer.

Plaintiff brings a cause of action against each Defendant for "Concerted Action to Commit Conversion and Conspiracy to Defraud." Am. Compl. ¶ 95-99. The Amended Complaint alleges that "Defendants jointly participated in concerted action to commit the tort of conversion of property, assets and business operations." *Id.* ¶ 96. It further alleges "Defendants entered an agreement among themselves to divert loan proceeds to purposes other than 'financ[ing] floor plan inventory' and for the unlawful purpose of converting the Collateral and/or the proceeds of such property, including the assets and business operations of RAD Exotics." *Id.* Plaintiff ultimately alleges "Defendants knew that Spencer and Sigler's conduct as to RAD Exotics was fraudulent, in breach of the Loan Documents and otherwise improper. Yet each of the Defendants gave substantial assistance or encouragement to the other to so conduct himself." *Id.* ¶ 98.

27

Plaintiff fails to plausibly allege conspiracy to defraud. Under Texas law, civil conspiracy is not an independent tort, but a derivative tort that depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant liable. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996); *see also Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019) ("[C]ivil conspiracy is a theory of vicarious liability and not an independent tort."). Therefore, civil conspiracy "survives or fails alongside" the underlying tort alleged. *Agar*, 580 S.W.3d at 141. Accordingly, for Plaintiff's conspiracy claim to prevail, it must plausibly allege the underlying tort of fraud. *AFE Oil & Gas, L.L.C. v. Hess*, 2009 WL 294828, at *4 (Tex. App.—Dallas Feb. 9, 2009, no pet.) ("[I]f no defendant is liable for fraud, then no defendant can be liable for conspiracy to commit fraud.").

For the reasons explained above, the live Complaint does not adequately allege fraud by Spencer. And the Complaint fails to plausibly allege any underlying fraud by Sigler or RAD Exotics. Plaintiff refers to Defendants jointly rather than detailing what representations were made by each individual Defendant, does not sufficiently allege fraudulent intent at the time relevant contractual representations were made, and does not plausibly allege reliance on any post-contractual representations. Thus, Plaintiff's conspiracy to defraud claim fails alongside the failed attempts at alleging underlying fraud.

28

Plaintiff also likely fails to plausibly allege concert-of-action liability against Spencer. Such a claim requires that a defendant "does a tortious act in concert with" another. *Juhl v. Airington*, 936 S.W.2d 640, 643–44 (Tex. 1996). Plaintiff asserts conversion of property as the underlying tortious act for its concert of action claim—but as explained above, the Court should grant Plaintiff leave to amend its pleading to plausibly allege Spencer committed any underlying conversion. And ultimately, "[t]he purpose of the concert of action theory is to deter antisocial or dangerous behavior." *Id.* at 644. Plaintiff's allegations do not appear to present the level of antisocial or dangerous behavior required to support a claim for concerted action liability.

VI.    <u>Plaintiff's declaratory judgment claims should be rejected as</u> <u>duplicative.</u>

Plaintiff requests a declaratory judgment that it "has a valid, binding, subsisting and enforceable security interest in and to all of the Collateral and the proceeds thereof," "RAD Exotics is the alter ego of Spencer and Sigler, and thus, Spencer and Sigler are individually liable for any and all claims adjudged against RAD Exotics," and "[e]ven if RAD Exotics were not declared the alter ego of Spencer and Sigler, Spencer and Sigler are individually liable for the repayment of the Note as they each are an Obligor under the Loan Documents." Am. Compl. ¶¶ 87-89.

Federal courts have broad discretion to grant or refuse declaratory judgment. *Great Am. Ins. Co. v. Goin*, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017) (Lindsay, J.) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). Because Plaintiff's declaratory judgment claims are duplicative of Plaintiff's other claims in this action, the Court should exercise its wide discretion to dismiss the claims. *See Goin*, 2017 WL 4238698, at *4 ("This court has previously declined in its discretion to adjudicate declaratory judgment actions that are duplicative of other claims in the same case."); *see also* Resp. 28 (ECF No. 40) (Plaintiff acknowledging that "the Court may resolve the requested declarations in adjudicating Plaintiff's other claims[.]").

VII.    <u>Plaintiff fails to plausibly allege a claim for restitution or unjust enrichment.</u>

Plaintiff brings a cause of action for restitution, alleging that "as a result of the conduct described above, the Individual Defendants have been unjustly enriched." Am. Compl. ¶¶ 100-02. However, "there is an insufficient basis to conclude that Texas law would recognize restitution as a stand-alone cause of action." *Roach v. Berland*, 2015 WL 5097987, at *3 (N.D. Tex. Aug. 31, 2015) (Fitzwater, J.). Additionally, any claim Plaintiff asserts for unjust enrichment fails for the same reason—as this court has previously held, "Texas law does not recognize an independent cause of action for unjust enrichment." *Id.* (citing *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539,

30

560 (N.D. Tex. 2009) (Fitzwater, J.); *Redwood Resort Props., LLC v. Holmes Co.*, 2006 WL 3531422, at *9 (N.D. Tex. Nov. 27, 2006) (Fitzwater, J.)).

VIII.    <u>Plaintiff does not plausibly plead any justification for an accounting.</u>

Plaintiff requests "an accounting of all sales, transfers, and other dispositions of its Collateral, and of any resulting proceeds or profits, by any of the Defendants." Am. Compl. ¶ 104. Granting an accounting "is proper when the facts and accounts in issue are so complex that adequate relief cannot be obtained at law." *Brown v. Cooley Enterprises, Inc.*, 2011 WL 2200605, at *1 (N.D. Tex. June 7, 2011) (citing *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied)). "When a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories, a trial court does not err in not ordering an accounting." *Id.* (citing *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717–18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). Ultimately, granting an accounting is within the discretion of the trial court. *Id.* (citing *Hutchings v. Chevron USA, Inc.*, 862 S.W.2d 752, 762 (Tex. App.—El Paso 1993, writ denied)).

Plaintiff alleges throughout its Amended Complaint that Defendants have not been forthcoming with information regarding the loan arrangement and alleged default. However, Plaintiff does not provide any

plausible reason for the Court to find that Defendants would refuse to comply with the ordinary discovery process. Thus, the Court should, in its discretion, deny Plaintiff's request for an accounting.

## Opportunity to Amend

Plaintiff requests leave to amend its Amended Complaint in the event the Court finds deficiencies in its live pleading. Resp. 30-31 (ECF No. 40). Courts should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a). The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow amendment, a court considers "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). "The court may deny leave to amend . . . if the defects are incurable or the plaintiff[] ha[s] already alleged her best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015) (per curiam) (citing *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)).

Here, the Court should allow Plaintiff one final opportunity to plead its best case. While Plaintiff has amended its complaint once before, it now has the benefit of a judicial opinion regarding its pleading deficiencies. The Court discerns no undue delay, bad faith, or dilatory motive on Plaintiff's part, and—because the case is still in a nascent stage—any prejudice to Spencer is minimal.

## Recommendation

The District Judge should GRANT in part Spencer's Motion to Dismiss (ECF No. 30). The Court should DISMISS Plaintiff's claims against Spencer for fraud, fraudulent conveyance, civil conspiracy, concerted action to commit conversion, declaratory judgment, restitution, unjust enrichment, and an accounting, but allow Plaintiff an opportunity to amend its complaint.

**SO RECOMMENDED**.

July 31, 2024.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## <u>INSTRUCTIONS FOR SERVICE AND</u>
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).