## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GRANTING HANDS LLC,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:23-cv-02408-L** |
| | § | |
| | § | |
| **RAD EXOTICS LLC, JUSTIN** | § | |
| **SPENCER,[1] and DAVID SIGLER,** | § | |
| | § | |
| Defendants. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiff Granting Hands LLC ("Plaintiff" or "Granting Hands") Amended and Combined Request for Entry of Default Judgment as to David Sigler and RAD Exotics LLC ("Motion") (Doc. 52), filed April 25, 2024.  Plaintiff moves for default judgment against Defendants David Sigler ("Mr. Sigler") and RAD Exotics LLC ("RAD Exotics") (collectively, "Defendants"). It seeks to recover damages totaling $1,643,379.62 and reasonable attorney's fees from Mr. Sigler; additionally, it seeks to recover damages totaling $1,555,850.31 and reasonable attorney's fees from RAD Exotics with $472.51 per day from April 15 until the Judgment is signed, plus costs and post-judgment interest at the rate set forth in 28 U.S. Code § 1961. For the reasons herein stated, the court **grants in part and denies in part** the Motion (Doc. 52). The Motion is **denied** with respect to the following claims: (1) fraudulent transfer ; (2) declaratory judgment; (3) fraud; (4) concerted action to commit conversion and conspiracy to defraud; and (5) restitution. The Motion is **granted** with respect to Plaintiff's breach of contract, conversion, and accounting claims.

---

[1] Mr. Spencer was dismissed from this action on October 1, 2024 (Doc. 59), and he is no longer a party to this action. The court includes his name to provide context.

**Memorandum Opinion and Order – Page 1**

I.      **Factual and Procedural History**

    **A.  Factual History**

On March 1, 2021, Mr. Spencer and Mr. Sigler cofounded RAD Exotics, a Limited Liability Corporation, to start a luxury car dealership that purchases, services, and resells high-end automobiles. Am. Compl. ¶ 13-14 (Doc. 22). Mr. Spencer and Mr. Sigler are the sole members of RAD Exotics. *Id.* ¶ 14. Both Mr. Spencer and Mr. Sigler served as managers, and Mr. Sigler also served as the President. *Id.* According to Mr. Spencer, Mr. Sigler was in charge of RAD Exotics's day-to-day operations, and Mr. Spencer was not involved in those operations "except [for] eventually winding down RAD [Exotics's] business." Doc. 35 at 2 (citing Spencer Decl. ¶¶ 3-4).

    1.      <u>The Loan Documents</u>

On March 19, 2021, Plaintiff and RAD Exotics executed the following documents: (1) Promissory Note; (2) Loan and Security Agreement; (3) Closing Certificate; and (4) Irrevocable Power of Attorney. Am. Compl. ¶ 16. On December 31, 2021, Plaintiff and RAD Exotics executed a First Amended Promissory Note and First Amended Loan and Security Agreement that only increased the principal amount (collectively, the "Loan Documents"). *Id.* The Loan Documents granted RAD Exotics a line of credit of $4 million to "finance floor plan inventory in the ordinary course of business." *Id.* ¶ 17 (citing Doc. 22-1 at 6 (Loan and Security Agreement ¶ 2(d))). For RAD Exotics, the inventory was "high-priced exotic cars to be serviced and sold from a leased dealership in Southborough, Massachusetts." The arrangement was as follows:

> Once RAD Exotics, through [Mr.] Spencer and/or [Mr.] Sigler, identified a car for purchase that needed funding (in whole or in part), [Mr.] Sigler submitted to [Plaintiff] a written request along with supporting documents (such as the bill of sale, purchase and sale agreement, and title). [Plaintiff] would wire the requested

amount to RAD Exotics, which would acquire the car and submit the new title to [Plaintiff]. Upon sale or trade-in of the car, RAD Exotics would obtain the title back from [Plaintiff] and wire the borrowed amount.

*Id.* ¶ 36.

In addition, RAD Exotics was required to: (1) make weekly payments towards the principal, interest, and fees; (2) keep proper books of records and account of all dealings and transactions; (3) provide Plaintiff with monthly financial statements, consolidated financial statements, and annual tax returns; and (3) permit Plaintiff to review RAD Exotics's financial records. *Id.* ¶¶ 18, 21. Relevant to this action, RAD Exotics was not permitted to "grant [a] security interest in or encumber any of [Plaintiff's] assets." *Id.* ¶ 22. Unless the loan was accelerated, any remaining outstanding principal amount and unpaid interest on the loan were due on March 1, 2023. *Id.*

## 2.    The Pledge Agreement

On March 19, 2021—the same day RAD Exotics executed the Loan Documents—Plaintiff and Mr. Spencer, and Plaintiff and Mr. Sigler, executed "Pledge Agreements." Doc. 26-2 at 75. According to Plaintiff:

> [Mr.] Spencer and [Mr.] Sigler [] executed their respective Pledge Agreements "to secure the repayment of the Indebtedness" and each granted to [Plaintiff] a continuing first priority security interest in all of their outstanding equity interests in RAD Exotics, together with all proceeds therefrom (the "Equity Interest"). [They] each agreed that all such proceeds from the Equity Interest, including any cash proceeds and any property received by them, "shall be held in trust for [Plaintiff] and upon request shall be delivered immediately to [Plaintiff]." [...]

> In addition, in their Pledge Agreements, [Mr.] Spencer and [Mr.] Sigler each covenanted to [Plaintiff] that, "[u]ntil full payment and performance of all of the Indebtedness," each of them shall, among other things:

>> a.    "[P]erform all of its agreements herein and in any other agreements between it and [Plaintiff]";

    b.  "[D]efend the [Equity Interest] against all claims and demands of all persons at any time claiming any interest therein adverse to [Plaintiff]" and "keep the [Equity Interest] free from all liens and security interests";

    c.  "[P]ay or cause [RAD Exotics] to pay all costs necessary to obtain, preserve, perfect, defend and enforce the security interest created by this Agreement, and preserve, defend, enforce and collect the [Equity Interest], including but not limited to taxes, assessments, reasonable attorney's fees, legal expenses and expenses of sales"; and

    d.  "[A]ppoint [Plaintiff] and any officer thereof as [Mr. Spencer's or Mr. Sigler's] attorney in-fact with full power in [his] name and on [his] behalf to do every act which [he] is obligated to do or may be required to do hereunder[, including] . . . the right and power to . . . receive, indorse, and collect all checks and other orders for the payment of money made payable to [him] representing any dividend, interest payment or other distribution payable in respect of the [Equity Interest] or any part thereof . . . ."

       [Mr.] Spencer and [Mr.] Sigler further agreed that, if an Event of Default were to occur, [Plaintiff] may, without demand or notice, accelerate the repayment of the $4 million loan, liquidate all or part of the [Equity Interest], and exercise any other rights of a secured creditor. [Plaintiff] also may "take control of proceeds" and "take control of funds generated by the [Equity Interest], such as cash dividends, interest and proceeds, and use same to reduce any part of the Indebtedness."

       In all events, [Mr.] Spencer and [Mr.] Sigler represented that, "[w]ithout the prior written consent of [Plaintiff], [he] will not sell, assign, transfer, exchange, or otherwise dispose of, or grant any option with respect to, the [Equity Interest], nor will [he] create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any of the [Equity Interest], or any interest therein, or any proceeds thereof."

Am. Compl. ¶¶ 32-35 (citing Pledge Agreements).

       3.    <u>Alleged Defaults</u>

       In the spring of 2022, Plaintiff "identified several car titles it had sent to RAD Exotics [for] it to complete a sale, but for which [Plaintiff] had never received back any proceeds." *Id.* ¶ 38. Specifically, Plaintiff contends that "RAD Exotics owes [it] the sum of [12 vehicles, which is $1,326,009,] as well as the accrued interest and default fees owed under the Loan Documents."

*Id.* ¶ 39. In response to Plaintiff's request to review its financial documents, RAD Exotics responded as follows:

- "On October 4, 2022, [Mr.] Sigler represented that 'we'll get an updated inventory list to you shortly;'"
- "On October 17, 2022, [Mr.] Sigler stated: 'Hoping to have reporting done soon for FY 2021. It seems everyone has been sick, delaying basically everything…us included! But, hopefully VERY soon.'"
- "On November 18, 2022, [Mr.] Sigler again stated: 'Yes, I expected everything to be completed imminently! I will forward asap.'"
- "On December 8, 2022, [Mr.] Sigler [stated]: 'We are at the mercy of [Mr. Spencer]'s accountant who is preparing all of our tax documents and financials. The slow pace seems a reflection of the complexities of [Mr. Spencer] having multiple entities, but I understand they are imminent.'"
- "On January 11, 2023, [Mr.] Sigler stated: 'Yes, please know this is a priority for me as well. Unfortunately[, Mr. Spencer's CPA] does not work for me, but I have forwarded this to Justin and asked for him to help pressure/expedite. Your request is reasonable, and I will push to get it done. Thank you again for your patience.'"
- "On February 8, 2023, [Mr.] Sigler stated…, 'We should be able to provide clarity [regarding] all title issues by week's end as that is the immediate priority.'"
- On February 21, 2023, [Mr.] Sigler stated "I was with [Mr. Spencer] much of the evening to review all below. I believe he is talking to [his accountant] this evening (or perhaps tomorrow given the hour). I will revert back to you tomorrow as well as we gain clarity on remaining and outstanding issues/items."

*Id.* ¶¶ 41-43.

On February 23, 2023, Plaintiff, Mr. Spencer, and Mr. Sigler, spoke on the phone. *Id.* ¶ 44. During the phone call, Mr. Sigler informed Plaintiff that the 12 outstanding titles and cars "had been sold off to various buyer," but acknowledged that they owe Plaintiff money. *Id.* Also, according to Plaintiff, "[Mr.] Spencer sought to assure [Plaintiff] of repayment, indicating that RAD Exotics had 15 cars currently in inventory worth approximately $2 million and that he himself owned various properties, but that these assets were not liquid and thus Defendants could not send the amounts owed within a matter of days." *Id.* At some point in 2023, Mr. Spencer took possession of all vehicles in RAD Exotics's inventory and turned the vehicles over to a

dealer in Massachusetts who worked with Plaintiff to sell the cars. *See* Doc. 35-1 at 4 (Spencer Decl. ¶ 4); Doc. 36-1 at 3 (Braak Decl. ¶ 4).

On February 27, 2023, Plaintiff spoke on the phone with Mr. Spencer, wherein he "indicated that he was going to the RAD Exotics office to physically take the corporate checkbook and ensure [Mr. Sigler] would not continue to cut himself his $20,000.00 per month salary or pay expenses subordinate to the amounts owed to [it]." Am. Compl. ¶ 46. Later that same day, Plaintiff sent RAD Exotics a notice of default stating: "(a) RAD Exotics had disposed of cars funded by [Plaintiff] without paying the proceeds to [it] as required under the Loan Documents; and (b) [Plaintiff] had repeatedly requested monthly financial statements, which RAD Exotics had failed to provide in violation of the Loan Documents." *Id.* ¶ 47. "Demand was made that these defaults be cured within fifteen days, i.e., by March 14, 2023." *Id.*

In April 2023, Mr. Spencer sent "copies of the RAD Exotics bank statements between April 2021 and March 2023." *Id.* ¶ 49.

> On May 8, 2023, after reviewing these statements, [Plaintiff] made additional inquiries to [Mr.] Spencer and [Mr.] Sigler, [regarding the following]:
>
> (1) At least 32 external wire transfers in varying amounts, totaling more than $3.2 million, with generic references that made it impossible for [Plaintiff] to determine to whom or where these funds had been sent;
> (2) At least another 32 payments totaling $538,000 to another checking account at Santander, the same bank as for RAD Exotics, but to an account for which [Plaintiff] had not received statements for;
> (3) Numerous payments made to NextGear and TD Auto Finance; and
> (4) Copies of the credit card statements for RAD Exotics, the balances of which were paid through the operating account.

*Id.* ¶ 50. According to Plaintiff, Mr. Spencer sporadically updated it about his efforts to respond to these additional inquiries. *See id.* ¶¶ 51-52. On June 23, 2023, "[Mr.] Spencer sent a spreadsheet that included some information on some of the external wire transfers." *Id.* ¶ 53. The spreadsheet and some of Mr. Spencer's responses revealed that: Mr. Sigler paid himself, on

irregular dates, various amounts between $3,000 to $25,000; Mr. Sigler paid himself various amounts per month as his "salary" which ranged from $20,000 to $63,000 per month; and Rad Exotics obtained additional credit lines for vehicles as early as July 2021 with NextGear and TD Auto Finance. *Id.* ¶¶ 53-56.

On September 26, 2023, Plaintiff sent RAD Exotics an amended notice of default identifying the following defaults:

(1) Failure to cure the defaults stated in the February 27, 2023, notice of default;
(2) The disposition of the Collateral without paying the proceeds to [Plaintiff], as required;
(3) Failure to pay the balance of the Note, when due in full, on March 1, 2023; and
(4) The continuing failure to furnish monthly financial statements, in violation of the Loan Documents.

*Id.* ¶ 56.

### B.  Procedural History

On October 6, 2023, Plaintiff filed its Original Complaint in the 193rd Judicial District Court of Dallas County, Texas, in a case styled *Granting Hands LLC v. RAD Exotics LLC*, Cause No. DC-23-17220. Doc. 2. Plaintiff alleges causes of action against Defendants for: (1) breach of contract; (2) conversion; (3) fraudulent conveyance; (4) declaratory judgment; (5) fraud; (6) concerted action to commit conversion and conspiracy to defraud; (7) restitution; and (8) accounting. *See* Am. Compl. On October 10, 2023, Plaintiff served Mr. Spencer. Doc. 1. Before Plaintiff served RAD Exotics and Mr. Sigler, Mr. Spencer removed this action on October 30, 2023. *Id.*

#### 1.    RAD Exotics

On November 1, 2023, the state clerk of court issued summons for RAD Exotics. Doc. 10. Plaintiff served RAD Exotics on November 2, 2023. Doc. 13. RAD Exotics has not appeared

in this action. On December 8, 2023, Plaintiff filed a Request for Clerk to issue Default (Doc. 17), which the clerk of court entered on December 11, 2023 (Doc. 18). On January 27, 2024, Plaintiff filed a Motion for Default against RAD Exotics seeking for the court to issue judgment for: (1) $1,215,030 in principal; (2) $217,590.79 in interest through January 11, 2024, and interest thereafter at the sum of $427.51 per day; and (3) $80,703.62 in reasonable attorney's fees and $5,469.33 in costs. Doc. 27 at 2-3; Braak Decl. ¶¶ 9-13; Canada Decl. ¶¶ 6-8. On April 16, 2024, Plaintiff filed a Second Combined Request for Clerk's Entry of Default and Motion for Default Judgment against RAD Exotics (Doc. 48). Finally, on April 25, 2024, Plaintiff filed the present Motion, requesting the court enter default judgment against RAD Exotics (Doc. 52).

2.    Mr. Sigler

On November 1, 2023, the clerk of court issued summons for Mr. Sigler (Doc. 10). On January 4, 2024, Plaintiff filed an Unopposed Motion to Extend Deadline (Doc. 21) for service on Mr. Sigler, stating that:

> Plaintiff has not been able to serve [Mr.] Sigler with process due to [its] inability to locate him. In this regard, [Mr.] Sigler's prior business address is the same as that of RAD Exotics, and is now totally vacant. Likewise, [Mr.] Sigler's previous residence address in Massachusetts was vacated by [him] in the middle of the night, substantially in arrears on his rent, leaving no information as to where he might be found. Further, Plaintiff has done extensive internet research looking for the current whereabouts of [Mr.] Sigler, has retained investigators in two different states to locate [Mr.] Sigler, has attempted service and to locate him at a number of his prior addresses, and has informally requested [Mr.] Sigler's address from [Mr.] Spencer, his partner and co-Defendant, thus far unsuccessfully.

Doc. 21 at 2. The court granted this motion and set the deadline for Plaintiff to effect service on Mr. Sigler for April 1, 2024 (Doc. 24). On January 24, 2024, Plaintiff filed its Application seeking a TRO against Mr. Sigler, and on March 20, 2024, Plaintiff served Mr. Sigler (Doc. 44). Mr. Sigler has not appeared in this civil action, so Plaintiff filed a Combined Request for Clerks Entry of Default and Motion for Default Judgment (Doc. 47) on April 15, 2024, and the clerk of

court filed an Entry of Default against Mr. Sigler (Doc. 49) the next day. On April 25, 2024, Plaintiff filed the present Motion, requesting the court enter default judgment against Mr. Sigler (Doc. 52).

        3.    <u>Mr. Spencer</u>

On November 30, 2023, Mr. Spencer moved to dismiss the Petition (Doc. 14). On January 11, 2024, Plaintiff filed an Amended Complaint. On January 24, 2024, Plaintiff filed its Motion and Application against Mr. Spencer. The court denied as moot Mr. Spencer's Motion to Dismiss and set an expedited briefing schedule. On January 25, 2024, Mr. Spencer filed a *second* Motion to Dismiss. On July 31, 2024, United States Magistrate Judge Rebecca Rutherford entered her Findings, Conclusions, and Recommendation ("Report") (Doc. 53)[2] and recommended the court grant in part Mr. Spencer's second Motion to Dismiss and allow Plaintiff to amend its Complaint. The court accepted the magistrate judge's findings, conclusions, and recommendations on August 29, 2024, and ordered Plaintiff to file an amended pleading to correct the deficiencies identified by the magistrate judge (Doc. 54). Instead of filing an amended complaint, Plaintiff filed a Notice of Settlement (Doc. 55) and a Stipulation of Dismissal of Defendant Justin Spencer with Prejudice (Doc. 59) on October 1, 2024, and it dismissed Mr. Spencer with prejudice from this action since he is no longer a party to this action.

## II.    **Legal Standard**

A party is entitled to entry of a default by the clerk of the court if the opposing party fails to plead or otherwise defend as required by law. Fed. R. Civ. P. 55(a). Under Rule 55(a), a default must be entered before the court may enter a default judgment. *Id.*; *New York Life Ins.*

---

[2] In its August 29, 2024 order, the court accepted the magistrate judge's findings and conclusions as those of the court. Because the court has accepted the Report as its own, it will reference the findings of the magistrate judge throughout this Memorandum Opinion and Order as the findings become relevant to the court's analysis. Moreover, when the court refers to Mr. Spencer as a defendant, it refers to the time before he was dismissed with prejudice.

*Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). The clerk of court entered a default against RAD Exotics and Mr. Sigler (Doc. 49) on April 16, 2024. Based upon the pleadings and information in the record and because RAD Exotics is an entity, the court determines that it is not a minor, incompetent person, or member of the United States military. Conversely, Plaintiff has not shown that Mr. Sigler is not a minor, incompetent person, or member of the United States military. RAD Exotics, by failing to answer or otherwise respond to Plaintiff's Complaint, has admitted the well-pleaded allegations of the Complaint and is precluded from contesting the established facts on appeal. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (citations omitted). Stated differently, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citation omitted). Accordingly, RAD Exotics may not contest the "sufficiency of the evidence" on appeal but "is entitled to contest the sufficiency of the complaint and its allegations to support the judgment." *Id.*

As explained later in this Memorandum Opinion and Order, Plaintiff's Complaint does not allege sufficient facts to maintain an action for five of its claims. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 only requires "notice" pleading. Accordingly, it is not necessary that the pleader set forth each and every element or factual allegation of a claim. The "short and plain statement," however, must contain sufficient allegations of fact "that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 168 (1993) (internal quotation marks and citation omitted). A pleading must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). A claim meets the plausibility test when a plaintiff pleads sufficient factual content that permits the court to make the reasonable inference that a defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III.    Analysis

In its Amended Complaint, Plaintiff asserts claims against Defendants for: (1) breach of contract; (2) conversion; (3) fraudulent conveyance; (4) declaratory judgment; (5) fraud; (6) concerted action to commit conversion and conspiracy to defraud; (7) restitution; and (8) accounting. For the reasons herein explained and for the reasons stated in the Report—which the court accepted as that of its own regarding Mr. Spencer—the court determines that Plaintiff fails to allege facts sufficient to state a claim that Defendants are liable for fraudulent conveyance, declaratory judgment, fraud, concerted action to commit conversion and conspiracy to defraud, and restitution.

#### A.  Breach of Contract

In its first claim, Granting Hands contends that "each of the Defendants, as Obligors and/or Obligated Parties, breached the Loan Documents in several ways." Am. Compl. ¶ 69. It contends that Defendants breached the Loan Documents by:

a. Failing to pay the principal and accrued interest owed on vehicles that were financed by Granting Hands and disposed of by RAD Exotics;
b. Failing to pay the outstanding principal balance of the Note, accrued interest and other applicable charges when due;
c. Failing to keep or present for inspection proper books of record and account;
d. Incurring debt that was expressly prohibited under the Loan Documents by opening at least two additional lines of credit;
e. Failing to advise Granting Hands of the incurrence of such other debt;
f. Failing to provide prompt written notice of material adverse changes in Defendants' financial condition;
g. Failing to provide prompt written notice to Granting Hands of the occurrence of any of the Events of Default;

h.  Failing to provide prompt written notice to Granting Hands of the material adverse changes in any of the Obligor's financial condition that materially affected the financial condition of such Obligor;

i.  Failing to maintain good and indefeasible title to the Collateral and free and clear of all liens, security interests, encumbrances or adverse claims;

j.  Making material changes in the nature of RAD Exotics' business, including by disposing of the Collateral and closing down the Southborough facility;

k.  Paying dividends or distributions to the Individual Defendants without obtaining the prior written consent of Granting Hands;

l.  Failing to convey the Collateral to Granting Hands; and

m.  Impairing the enforceability of Granting Hands's security interest in the Collateral.

*Id.* Moreover, it contends that Mr. Sigler and Mr. Spencer breached their respective Pledge

Agreements by:

a.  Failing to perform all of their agreements under the Loan Documents, including the LSA;

b.  Failing to defend the Collateral against all claims and demands of all persons at any time claiming any interest adverse to Plaintiff and failing to keep the Collateral free from all liens and other security interests;

c.  Selling, assigning, transferring, exchanging or otherwise disposing of the Collateral without obtaining written consent from Granting Hands;

d.  Creating, incurring or permitting to exist other pledges, liens, mortgages, hypothecations, security interests, charges, options or other encumbrances with respect to the Collateral and any proceeds thereof without obtaining written consent from Granting Hands;

e.  Failing to convey to Granting Hands a security interest in their respective membership interests in RAD; and

f.  Failing to hold in trust and deliver immediately to Granting Hands their respective Equity Interests and all property received by them for the Collateral.

*Id.* ¶ 70.

To prevail on a breach of contract claim, Plaintiff must sufficiently plead allegations from which the court can reasonably infer the following elements: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170 (5th Cir. 2018) (internal quotation marks and citations omitted). "A breach occurs when a party fails to

perform a duty required by the contract." *Id.* "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.— Houston [14th Dist.] 1996, writ denied)).

Plaintiff contends that RAD Exotics executed the Loan Documents, which are a valid contract between it as the lender and both Defendants as obligors. Am. Compl. ¶ 66. Further, it contends that RAD Exotics was a party to the Loan Documents as the debtor and Messrs. Sigler and Spencer were grantors. *Id.* Defendants were required to: (1) make weekly payments towards the principal, interest, and fees; (2) keep proper books of records and account of all dealings and transactions; (3) provide Plaintiff with monthly financial statements, consolidated financial statements, and annual tax returns; and (4) permit Plaintiff to review its financial records. *Id.* ¶¶ 18, 21.

### 1. Breach of the Loan Documents

The court determines that Granting Hands plausibly alleged facts from which the court can infer a breach of contract on the Loan Documents by both Defendants. "Plaintiff alleges that the parties entered the Loan Documents and the Pledge Agreement contemporaneously and that all the documents concern the same credit facility transaction." Report at 12 (citations omitted). Further, "[t]he Loan Documents and the Pledge Agreement, which are attached to the Amended Complaint, use the same defined terms to explain the parties' financing arrangement, and those documents include [Mr. Sigler] within the broad definition of who is an 'Obligor.'" *Id.* (citing Ex. 1 ¶ 1 ("defining"'Obligors' to mean '[RAD Exotics], Grantor or any other Person who guaranteed the Indebtedness, has pledged assets securing the Indebtedness, or is otherwise obligated to pay or perform all or any portion of the Indebtedness' and defining 'Grantor' as 'a

Person that pledges assets to secure the Indebtedness, including but not limited to the Debtor.'");

*see also* Ex. 8 ("[Mr. Sigler] has agreed to execute this [Pledge Agreement] to secure the

repayment of the Indebtedness (as defined in the [Loan and Security Agreement].")). "Each

document is subject to the terms of the other Loan Documents, and all of the Loan Documents

include the same merger clause" *Id.* at 13.

> Moreover, as the magistrate judge previously determined,

> Throughout the Loan Documents, [Mr. Sigler] makes representations, warranties, and covenants to Plaintiff as an Obligor. For example, in the Loan and Security Agreement, "each Obligor agrees and covenants" that RAD Exotics will "pay its obligations . . . that, if not paid, could become a lien"; "keep, maintain and preserve all property . . . material to the conduct of its business"; "do or cause to be done all things necessary to preserve . . its legal existence"; "keep proper books of record and account"; "promptly inform" Plaintiff of the "creation, incurrence or assumption" of any debt; "furnish to Lender prompt written notice of" material events such as "the occurrence of any Default" or "any and all material adverse changes in any Obligor's financial condition"; and "maintain good and indefeasible title to the Collateral[.]" *Id.* at Ex. 1 ¶ 7. In [Mr. Sigler's] Pledge Agreement, he reaffirmed the warranties and covenants made as an Obligor in the other Loan Documents. *See id.* at Ex. [8] ¶ 3 ("Grantor shall perform all of its agreements herein and in any other agreements between it and Lender[.]"). [Mr. Sigler] also made additional covenants within his Pledge Agreement, including that he will defend the Equity Interest against all claims adverse to Plaintiff; he will "keep the Collateral free from all liens and security interests"; he will pay or cause RAD Exotics to pay "all costs necessary" to preserve, defend and enforce the Equity Interest; and he will not dispose of, or create any encumbrance whatsoever with respect to the Equity Interest or any proceeds thereof. *Id.* ¶¶ 3, 6.

Report 13-14.

For the same reasons previously stated by the magistrate judge as it relates to Mr.

Spencer, the court determines that Plaintiff has sufficiently pleaded facts from which the court

can reasonably infer that the parties entered into one contract to which Mr. Sigler and RAD

Exotics are parties to and that these Defendants breached that contract, and therefore, they could

be liable to Plaintiff on this claim.

2.  Breach of the Pledge Agreements by Mr. Sigler

As it relates to Plaintiff's contention that Mr. Sigler breached the Pledge Agreement, the court determines that Granting Hands plausibly alleged facts from which the court can infer he breached the Pledge Agreement. "Plaintiff alleges that [Mr. Sigler] breached the Pledge Agreement by, among other things, '[c]reating, incurring or permitting to exist other pledges, liens, mortgages, hypothecations, security interests, charges, options or other encumbrances with respect to the Collateral and any proceeds thereof without obtaining written consent from [Plaintiff].'" Report 15 (citing Doc. 22 at 27). Further, Granting Hands "provides sufficient allegations to plausibly allege that [Mr. Sigler] breached his obligations under the Pledge Agreement by permitting additional lines of credit to be taken out on the collateral securing RAD Exotics's repayment of the loan proceeds." *Id.* (citations omitted). "The Amended Complaint includes various allegations raising the reasonable inference that [Mr.] Spencer had the authority as a manager to allow RAD Exotics to take on additional credit." *Id.* (citing Doc 22. ¶ 14).

Plaintiff has sufficiently pleaded facts from which the court can reasonably infer that Mr. Sigler breached his obligation under the Pledge Agreement, and, therefore, he could be liable to Plaintiff on this claim.

### B.  Conversion

Plaintiff contends that "[u]nder the Loan Documents, Plaintiff was entitled to the Collateral, including the Equity Interest, in satisfaction of the amounts due under the LSA and Note." Am. Compl. ¶ 76. Further, Granting Hands contends that "Defendants were in possession of, or had the right to possession or the benefit of, the Collateral, including the Equity Interests," and "Defendants unlawfully and without authority assumed and exercised dominion and control

over the Collateral, including the assets and business operations of RAD Exotics, to the exclusion of, and inconsistent with, Plaintiff's rights." *Id.* ¶¶ 77-78.

Under Texas law, the elements of conversion law are: "(1) [the plaintiff] legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 392 (5th Cir. 2012), *cert. denied, PlainsCapital Corp. v. United States*, 570 U.S. 917 (2013) (quoting *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009)).

Plaintiff alleges sufficient facts for the court to determine that all of the elements necessary to establish a claim for conversion against Mr. Sigler and RAD Exotics are met. *See* Am. Compl. ¶¶ 75-81. In its Amended Complaint, Plaintiff states that Defendants were in possession of the Collateral—which includes the automobiles, RAD Exotics operating account, and Messrs. Spencer and Sigler's 100% equity interest in RAD Exotics—it also sufficiently alleges that by using RAD Exotic funds to pay other creditors, Defendants wrongfully exercised dominion and control over the Collateral. *Id.* Third, Plaintiff sufficiently alleges that it demanded payment or return of the Collateral. *Id.* ¶ 79. Fourth, as evidenced by the Collateral not being returned and payment not being rendered, Plaintiff sufficiently alleges facts to establish that Defendants refused to return the property. *Id.* ¶ 80.

The court determines that Plaintiff has sufficiently alleged facts necessary to establish a claim for conversion, and, therefore, these Defendants could be liable to Plaintiff on this claim.

### C. Fraudulent Conveyance

Granting Hands contends that "[a]t times and to persons unknown, RAD Exotics, directly and/or indirectly, including through [Mr.] Spencer and [Mr.] Sigler, sold, transferred or

otherwise conveyed all or substantially all of its assets to [Mr.] Spencer, [Mr.] Sigler and/or other unknown persons or entities." Am. Compl. ¶ 83. It further contends that the "transfers were made with actual intent to hinder, delay or defraud creditors, including Plaintiff, and therefore constitute fraudulent transfers under Texas Business & Commercial Code §§ 24.005 and 24.006." *Id.* ¶ 84.

The applicable state law is the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code § 24.001 et seq. "The purpose of TUFTA is to prevent debtors from defrauding creditors by placing assets beyond their reach." *GE Capital Commercial Inc. v. Worthington Nat'l Bank*, 754 F.3d 297, 302 (5th Cir. 2014). To have a successful TUFTA claim Plaintiff must prove: "(1) [Plaintiff] is a 'creditor' with a claim against a 'debtor'; (2) the debtor transferred assets after, or a short time before, the plaintiff's claim arose; and (3) the debtor made the transfer with the intent to hinder, delay, or defraud the plaintiff." *In re Galaz*, 765 F.3d 426, 433 (5th Cir. 2014) (citations omitted).

TUFTA first requires that a "transfer [is] made or [an] obligation [is] incurred by a debtor." Tex. Bus. & Com. Code § 24.005(a). TUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset. . . ." *Id*. § 24.002(12). Thus, for a transfer to occur, it must include an "asset." TUFTA defines "asset" as all property of the debtor but expressly excludes "property to the extent it is encumbered by a valid lien." Id. § 24.002(2)(A). "A lien includes a security interest." Id. § 24.002(8).

Further, Federal Rule of Civil Procedure 9(b) requires that fraud pleadings "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). Plaintiff must state with particularity "the circumstance constituting the fraud." *Id.* This means that the "who, what,

when, where, and how' [are] to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing *Benchmark Electronics, Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir.2003)). Plaintiff's allegation that "Defendants directly and/or indirectly, including through [Mr.] Spencer and [Mr.] Sigler, sold, transferred or otherwise conveyed all or substantially all of its assets to [Mr.] Spencer, [Mr.] Sigler and/or other unknown persons or entities" are woefully insufficient to satisfy the particularity requirement of Rule 9(b). Am. Compl. ¶ 83. Plaintiff only generally alleges that there were funds fraudulently transferred, it does not specify which of the various transfers it mentions in its Amended Complaint were fraudulent pursuant to TUFTA.

Accordingly, the court concludes that Plaintiff fails to adequately state a claim for fraudulent transfer under Texas Business & Commercial Code §§ 24.005 and 24.006, and Plaintiff is not entitled to default judgment on this claim.

### D. Declaratory Judgment

Plaintiff requests that the court enter a declaratory judgment stating the following: (1) "Plaintiff has a valid, binding, subsisting and enforceable security interest in and to all of the Collateral and the proceeds thereof," (2) "RAD Exotics is the alter ego of [Mr.] Spencer and [Mr.] Sigler, and thus, [Mr.] Spencer and [Mr.] Sigler are individually liable for any and all claims adjudged against RAD Exotics," and (3) "[e]ven if RAD Exotics were not declared the alter ego of [Mr.] Spencer and [Mr.] Sigler, [Mr.] Spencer and [Mr.] Sigler are individually liable for the repayment of the Note as they each are an Obligor under the Loan Documents." Am. Compl. ¶¶ 87-89.

The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A declaration may issue only to resolve an actual controversy between the parties. *United Transp. Union v. Foster*, 205 F.3d 851, 855 (5th Cir. 2000) (citation omitted). Further, an actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests. *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007) (cleaned up).

Also, "[t]he controversy must be such that it can presently be litigated and decided and not hypothetical, conjectural, conditional or based upon the possibility of a factual situation that may never develop." *Id.* at 395-96 (citations omitted). Further, the "plaintiff[ ] ha[s] the burden of establishing the existence of an actual controversy under the Act." *Id.* at 396 (citations omitted). The Act "confers discretion on the courts [to grant declaratory relief] rather than an absolute right on a litigant [to such relief]." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

This court has previously declined in its discretion to adjudicate declaratory judgment actions that are duplicative of other claims in the same case. *See Federal Nat'l Mortg. Ass'n v. K.O. Realty, Inc.,* No. 3:13-CV-2781-L, 2014 WL 3900619, at *8 (N.D. Tex. Aug. 8, 2014); *see also Great American Ins. Co. v. Goin,* No. 3:15-CV-75-L, 2017 WL 4238698, at *4 (N.D. Tex. Sept. 25, 2017). Here, Plaintiff's declaratory judgment claims are duplicative of Plaintiff's other claims in this action and do not introduce any new facts or issues.

Therefore, as to Plaintiff's declaratory judgment claims, it has failed to state a claim under the Declaratory Judgment Act upon which relief can be granted, and Plaintiff is not entitled to default judgment on this claim.

### E. Fraud

"Plaintiff claims each Defendant committed fraud based on representations made before execution of the Loan Documents, representations made within the Loan Documents themselves, and representations made after execution of the Loan Documents." Report 20 (citing Am. Compl. ¶¶ 91-94).

In Texas, the elements of common-law fraud are: (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation, the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032-33 (5th Cir. 2010) (citation omitted).

As stated earlier, Federal Rule of Civil Procedure 9(b) requires that fraud pleadings "state with particularity the circumstances constituting the fraud." Fed. R. Civ. P. 9(b). Plaintiff must state with particularity "the circumstance constituting the fraud." *Id.* This means that the "who, what, when, where, and how' [are] to be laid out." *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd.,* 607 F.3d at 1032 (citation omitted).

#### A. Pre-contractual Representations

Plaintiff contends that "[i]n or about March 1, 2021, [Mr.] Spencer and [Mr.] Sigler represented to [Plaintiff] that they would establish RAD Exotics for legitimate business purposes in order to induce Plaintiff to enter into the Loan Documents, when in fact, they intended to, and did in fact, use their newly formed entity to obtain loan proceeds they could divert to their personal accounts or use." Am. Compl. ¶ 92.

As the magistrate judge has already determined, "[t]he Amended Complaint does not explain the circumstances of the alleged representation or how the representation was made. Plaintiff's allegations refer to [Mr.] Spencer and [Mr.] Sigler jointly rather than detailing what representations were made by each individual Defendant." Report at 21 (citation omitted). Further, Plaintiff's contention that "RAD Exotics's default on the loan shows that the business was not legitimate, 'failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made.'" *Id.* at 22 (citations omitted).

    B.  Contractual Representations

As stated in the Report:

> Granting Hands contends Defendants made fraudulent representations on March 19, 2021, through execution of the Loan Documents. Specifically, Plaintiff alleges that "in the Loan Documents, RAD Exotics, Spencer and Sigler represented that RAD Exotics did not have and would not obtain other lines of credit" and that "each and all of them as Obligors would repay the Note, including by repaying the proceeds of sold vehicles to Plaintiff[.]" Am. Compl. ¶ 92. The Complaint further alleges that, despite these representations, "RAD Exotics shortly thereafter opened other lines of credit with NextGear and TD Auto Finance" and "deliberately did not [repay the Note] and thereafter evaded inquiries[.]" *Id.*
>
> Plaintiff fails to allege the elements of fraud with the particularity required under Rule 9(b). Regarding both promises made within the Loan Documents and promises [Mr. Sigler] made in the Pledge Agreement, the Amended Complaint does not present plausible allegations regarding intent at the time the promises were made. *See Shandong*, 607 F.3d at 1033 (citing *Spoljaric*, 708 S.W.2d at 434). And again, the ultimate failure to perform a promise does not, by itself, show fraudulent intent at the time the promise was made. *See id*. The Amended Complaint's allegation of loss pursuant to its fraud claims are directly related to the credit facility arrangement created by the Loan Documents and arise solely from Plaintiff's contractual relationship with Defendants. Thus, the economic loss rule precludes Plaintiff's fraud claim based upon contractual representations because Plaintiff has not alleged any suffered loss independent of the Loan Documents.

Report 22-24 (citations omitted).

Therefore, as to Plaintiff's fraud claim, it has failed to state a claim upon which relief can be granted and is not entitled to default judgment on this claim.

**Memorandum Opinion and Order – Page 21**

### F.  Concerted Action to Commit Conversion and Conspiracy to Defraud

In its Amended Complaint, Plaintiff contends that Defendants jointly participated in concerted action to commit the tort of conversion of property, assets, and business operations. Am. Compl. ¶ 96. It argues that should the court not find that RAD Exotics is the alter ego of Messrs. Spencer and Sigler, it requests in the alternative that the court find that "Defendants entered [into] an agreement among themselves to divert loan proceeds to purposes other than 'financ[ing] floor plan inventory' and for the unlawful purpose of converting the Collateral and/or the proceeds of such property, including the assets and business operations of RAD Exotics." *Id.*

Under Texas law, a civil conspiracy requires:

> (1) a combination of two or more persons; (2) the persons seek to accomplish an object or course of action; (3) the persons reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts are taken in pursuance of the object or course of action; and (5) damages occur as a proximate result.

*Adams v. Alcolac, Inc.*, 974 F.3d 540, 544 (5th Cir. 2020) (citations omitted). Civil conspiracy is not an independent tort; instead, it is a derivative tort, and the plaintiff must prove a tortious act by the co-conspirator pursuant to the conspiracy. *Agar Corp. v. Electro Circuits Int'l, LLC,* 580 S.W.3d 136, 142 (Tex. 2019) (citation omitted).

Whether Texas law recognizes a concert of action theory of liability is questionable. *See Juhl v. Airington*, 936 S.W.2d 640, 643 (Tex. 1996). The court held that concert of action "requires at least a tacit agreement to participate in some tortious act, done in furtherance of a common goal or plan, and which causes injury. . . . This has common elements with common law civil conspiracy, long a recognized tort in this state." *Id.* at 643-44.

In the Report, the magistrate judge held that the Amended Complaint "fails to plausibly allege any underlying fraud by Sigler or RAD Exotics." Report 28. Because "Plaintiff refers to Defendants jointly rather than detailing [which] representations were made by each individual Defendant, [it] does not sufficiently allege fraudulent intent at the time relevant contractual representations were made, and does not plausibly allege reliance on any post-contractual representations." *Id.* For the reasons previously stated and herein explained, Plaintiff fails to sufficiently allege facts that support a claim for conspiracy to defraud.

Second, as stated in the Report, Plaintiff does not allege a concert-of-liability action against Defendants. *Id.* at 29. Plaintiff's concert-of-action theory is based on its underlying conversion claim, but its contention that "Defendants entered an agreement among themselves to divert loan proceeds to purposes other than 'financ[ing] floor plan inventory' and for the unlawful purpose of converting the Collateral and/or the proceeds of such property, including the assets and business operations of RAD Exotics," is conclusory. Am. Compl. ¶ 96. Plaintiff's statements are conclusory statements couched as factual allegations, and the court cannot accept their allegations as well-pleaded factual allegations. Plaintiff's allegations as they relate to its concert-of-liability claim are insufficient, and it has failed to state a claim upon which relieg can be granted.

Accordingly, Plaintiff is not entitled to default judgment on these claims.

### G. Restitution

Plaintiff contends that if the court does not find that RAD Exotics is the alter ego of Messrs. Spencer and Sigler, it requests that the court find that "as a result of the conduct described [in the Amended Complaint], the Individual Defendants have been unjustly enriched." Am. Compl. ¶¶ 100-02**.**

In Texas, restitution is not a stand-alone cause of action. *City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) (holding that "[r]estitution involves restoring property or money taken from the plaintiff. It is a measure of damages, not a cause of action."); *see also Chapman v. Commonwealth Land Title Ins. Co.,* 814 F. Supp. 2d 716, 725 (N.D. Tex. 2011) (Lindsay, J.). Because restitution is not a stand-alone cause of action plaintiff is not entitled to default judgment on this claim.

### H. Accounting

Plaintiff "demands an accounting of all sales, transfers, and other dispositions of its Collateral, and of any resulting proceeds or profits, by any of the Defendants." Am. Compl. ¶ 104. Plaintiff states in a conclusory manner that the facts in this case "are so complex that adequate relief may not be obtained by law and the use of standard discovery procedures may be inadequate to trace all the sales, transfers, and dispositions of Plaintiff's Collateral and of any resulting proceeds." *Id.*

Requests for accounting are generally equitable in nature, and the discretion to grant an accounting is within the trial court's discretion. *Southwest Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied). To be entitled to an accounting, a party usually must have a contractual or fiduciary relationship with the one from whom the party seeks the accounting. *T.F. W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). An accounting is "proper when the facts and accounts presented are so complex adequate relief may not be obtained at law." *Id*. If the party seeking an accounting "can obtain similar relief through standard discovery, the trial court may decline to order an accounting." *Id*.

Because Defendants have failed to appear or answer in this action, the court determines that the ordinary discovery process would not have produced the requested accounting. Because of this, Plaintiff has plausibly alleged facts sufficient to state a claim upon which relief can be granted.

### IV.    Conclusion

Plaintiff's allegations for five of its eight claims are not well-pleaded, and even though Defendants did not answer or otherwise respond to the Amended Complaint, the allegations are not well-pleaded. Therefore, entry of default judgment is not warranted as to these five claims; however, Plaintiff is entitled to default judgment on the remaining three claims.  For these reasons, the court **grants in part and denies in part** Plaintiff's Motion (Doc. 52). For the reasons herein stated, the court **grants in part and denies in part** the Motion (Doc. 52). The Motion is **denied** with respect to the following claims: (1) fraudulent transfer ; (2) declaratory judgment; (3) fraud; (4) concerted action to commit conversion and conspiracy to defraud; and (5) restitution. The Motion is **granted** with respect to Plaintiff's claims for breach of contract, conversion, and accounting. The court will **set** a hearing to determine the amount of damages to which Plaintiff is entitled on these claims. Moreover, the court will issue judgment by a separate document, as required by Federal Rule of Civil Procedure 58, after it conducts the hearing on damages, in favor of Plaintiff in accordance with this Memorandum Opinion and Order. Any request to recover a particular amount of attorney's fees must be filed postjudgment in accordance with Federal Rule of Civil Procedure 54(d)(2). The amount of the costs of court to be awarded will also be addressed postjudgment upon request by Plaintiff.

**It is so ordered** this 31st day of March, 2025.

Sam A. Lindsay
United States District Judge